SHIRLI F. WEISS (Bar No. 79225)
shirli.weiss@dlapiper.com
KATHERINE J. PAGE (Bar No. 259556)
katherine.page@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

KEARA M. GORDON *(pro hac vice application to be filed)*
keara.gordon@dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
Tel:  212.335.4500
Fax:  212.335.4501

Attorneys for Defendant
SoulCycle Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL CODY, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>SOULCYCLE INC.,<br><br>   Defendant. | CASE NO.  2:15-CV-06457-GHK-JEM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT SOULCYCLE INC. TO DISMISS COMPLAINT**<br><br>**Fed. R. Civ. Proc. 12(b)(6) and 9(b)**<br><br>Date:   November 2, 2015<br>Time:   9:30 a.m.<br>Judge:  Hon. George H. King<br>Ctrm:  650 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   STATEMENT OF FACTS ............................................................. 2

      A.   SoulCycle's Sales of Gift Cards Is Distinct from its Sale of Classes ........................................................................................ 2

      B.   Plaintiff's Superimpositions on SoulCycle's Webpages ...................... 4

      C.   Reserving a Bike Once a Class Is Purchased ........................................ 5

      D.   The Plaintiff's Purchase of a Single Class—For Herself .................... 7

III.  LEGAL STANDARD ................................................................... 7

IV.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE ELECTRONIC FUNDS TRANSFER ACT AS AMENDED BY THE FEDERAL CREDIT ACCOUNTABILITY RESPONSIBILITY AND DISCLOSURE ACT ..................................................................... 8

      A.   A Class Is Not A "Gift Certificate" under the EFTA; It Is Not an Electronic Promise in a "Specified Dollar Amount." .......................... 9

      B.   SoulCycle Does Not Market Its Classes as Gift Certificates and SoulCycle's Electronic Promise to Redeem Classes Is Reloadable ......................................................................................... 12

      C.   Classes Are Redeemable For Admission to an Event ........................ 13

      D.   Cody Lacks Standing To Sue .............................................................. 14

V.    CODY FAILS TO STATE A CLAIM UNDER any STATE LAW ........... 15

      A.   New York Law Applies and Cody Does Not Attempt to State Any Claim Under New York Law ........................................................ 15

      B.   Cody Cannot Avail Herself of State Statutes That have No Applicability or Relevance to Her ...................................................... 16

      C.   The Complaint Fails to State a Claim for Violation of California's Gift Certificate Statute ................................................... 17

-i-

### TABLE OF CONTENTS
**(continued)**

Page

D.  The Complaint Fails to State a Claim for Violation of the Gift Certificate Laws of Any Other State .......................................................... 19

    1.  The Complaint Fails to State a Claim for Violation of Maryland Gift Certificate Law .................................................. 19

    2.  The Complaint Fails to State a Claim for Violation of Illinois and Connecticut Gift Certificate Law .......................... 19

    3.  The Complaint Fails to State a Claim for Violation of New Jersey Gift Certificate Law ................................................ 20

    4.  The Complaint Fails to State a Claim for Violation of Massachusetts Gift Certificate Law ........................................... 21

    5.  The Complaint Fails to State a Claim for Violation of Florida Gift Certificate Law ...................................................... 21

E.  The Complaint Fails to State a Claim for Violations of California's Consumer Protection Laws ............................................. 22

F.  The Complaint Fails to State a Claim for Declaratory Relief ............ 24

G.  The Complaint Fails to State a Claim for Unjust Enrichment ............ 24

H.  The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing .......................................... 24

VI.  CONCLUSION ........................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Page**

3 CASES

4
*Alfi v. Nordstrom, Inc.*
5    2010 WL 5093434 (S.D. Cal. Dec. 8, 2010) ........................................ 14

6 *Ashcroft v. Iqbal*,
7    556 U.S. 662 (2009) ................................................................................ 7

8 *Avery v. State Farm Mut. Auto. Ins. Co.*,
9    835 N.E.2d 801 (Ill. 2005) .................................................................... 16

10 *Baguer v. Spanish Broad. Sys., Inc.*,
   2007 WL 2780390 (S.D.N.Y. Sept. 20, 2007) .................................... 25
11

12 *Balvage v. Ryderwood Improvement and Serv. Ass'n, Inc.*,
   642 F.3d 765 (9th Cir. 2011) .................................................................. 9
13

14 *Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 7

15
*Bohn v. Pharmavite, LLC*,
16    2012 WL 8898669 (C.D. Cal. May 16, 2012) .................................... 17

17 *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
18    20 Cal. 4th 163 (1999) .......................................................................... 23

19 *Commonwealth v. Simon Property Group*,
20    24 Mass. L. Rptr. 645, 2008 WL 4965853 (2008) .............................. 21

21 *Consumer Advocates v. Echostar Satellite Corp.*,
22    113 Cal. App. 4th 1351 (2003) ............................................................ 23

23 *Cooper v. Twentieth Century Fox Home Ent., LLC*,
   2012 WL 1021140 (C.D. Cal. Mar. 16, 2012) .................................... 15
24

25 *Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ................................................................ 3

26
*Fed. Express Corp. v. Holowecki*,
27    552 U.S. 389 (2008) ................................................................................ 9

28

1

2

<u>**TABLE OF AUTHORITIES**</u>
**(continued)**

<u>**Page**</u>

3

4

*Forcellati v. Hyland's, Inc.*,
　　876 F. Supp. 2d 1155 (C.D. Cal. 2012)....................................7, 17, 24

5

6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
　　528 U.S. 167 (2000) ........................................................14

7

8

*Goldman v. Metro. Life Ins. Co.*,
　　5 N.Y.3d 561 (2005)........................................................24

9

*Gonzalez v. Planned Parenthood of Los Angeles*,
　　759 F.3d 1112 (9th Cir. 2014) ..........................................4, 7

10

11

*Hatfield v. Halifax PLC*,
　　564 F.3d 1177 (9th Cir. 2009) ............................................15

12

13

*Hughes Elecs. Corp. v. Citibank Del.*,
　　120 Cal. App. 4th 251 (2004)..............................................15

14

15

*Hughes v. CorePower Yoga*,
　　2013 WL 1314456 (D. Minn. Mar. 28, 2013)...........................passim

16

17

*In re Apple & AT & TM Antitrust Litig.*,
　　596 F. Supp. 2d 1288 (N.D. Cal. 2008).................................17

18

19

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
　　802 F. Supp. 2d 1070 (N.D. Cal. 2011)................................23

20

*In re Firearm Cases*,
　　126 Cal. App. 4th 959 (2005)............................................23

21

22

*In re GlenFed, Inc. Sec. Litig.*,
　　42 F.3d 1541 (9th Cir. 1994) *superseded by statute on other grounds*...............8

23

24

*In re Graphics Processing Units Antitrust Litig.*,
　　527 F. Supp. 2d 1011 (N.D. Cal. 2007).................................17

25

26

*In re Insurance Installment Fee Cases*,
　　211 Cal. App. 4th 1395 (2012)............................................22

27

28

*Jurgensen v. Felix Storch, Inc.*,
　　2012 WL 2354247 (S.D.N.Y. June 14, 2012)...........................16

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002).........................................................................22

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)........................................................8, 22

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005).............................................23

*Matter of Ideal Mut. Ins. Co.*,
  174 A.D.2d 420 (1991)........................................................................24

*Montana Envtl. Info. Center v. Stone-Manning*,
  766 F.3d 1184 (9th Cir. 2014)...........................................................14

*Morales v. Unilever U.S., Inc.*,
  2014 WL 1389613 (E.D. Cal. Apr. 9, 2014).....................................17

*Mosely v. Vitalize Labs, LLC*,
  2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015)...................................16

*Nedlloyd Lines B.V. v. Super. Ct.*,
  3 Cal. 4th 459 (1992)...........................................................................15

*Pardini v. Unilever U.S., Inc.*,
  961 F. Supp. 2d 1048 (N.D. Cal. 2013)........................................16, 17

*Reynolds v. Philip Morris USA, Inc.*,
  332 F. App'x 397 (9th Cir. 2009).......................................................17

*Rosas v. Carnegie Mortg., LLC*,
  2013 WL 791024 (C.D. Cal. Feb. 25, 2013)......................................25

*S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*,
  641 F.2d 746 (9th Cir. 1981)..............................................................15

*Simington v. Lease Fin. Grp., LLC*,
  2012 WL 651130 (S.D.N.Y. Feb. 28, 2012).......................................16

*Smith v. Ford Motor Co.*,
  462 F. App'x 660 (9th Cir. 2011)........................................................24

1

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

2

<u>Page</u>

3

*SPGGC, LLC v. Blumenthal*,

4

    505 F.3d 183 (2d Cir. 2007) ................................................................. 16

5

*Synagogue v. United States*,

6

    482 F.3d 1058 (9th Cir. 2007) ............................................................. 17

7

*W. Min. Council v. Watt*,

8

    643 F.2d 618 (9th Cir. 1981) ............................................................... 24

9

*Wersal v. LivingSocial, Inc.*,

    2013 WL 3871434 (D. Minn. July 26, 2013) ...................................... 14

10

11

S<span style="font-size:smaller">TATUTES</span>

12

815 Ill. Comp. Stat. 505/2SS(a) ................................................................. 19

13

15 U.S.C. § 1683l-1(A)(2)(D)(vi) ............................................................... 13

14

15 U.S.C. § 1693, *et seq.* ............................................................................. 8

15

15 U.S.C. § 1693l-1 ...................................................................................... 8

16

15 U.S.C. § 1693l-1(a)(2)(B) ................................................................... 8, 9

17

15 U.S.C. § 1693l-1(a)(2)(D)(ii) ......................................................... 12, 13

18

19

15 U.S.C. § 1693l-1(c)(1)–(2) ..................................................................... 8

20

Cal. Bus. & Prof. Code § 17200 ....................................................... 8, 22, 23

21

Cal. Civ. Code § 1749.5 ......................................................................... 17, 18

22

Cal. Civ. Code § 1750 ...................................................................... 8, 22, 23, 24

23

Cal. Civ. Code § 1770(a) ........................................................................... 23

24

Cal. Civ. Code § 1782(a) ........................................................................... 23

25

Conn. Gen. Stat. Ann. § 3-56a .................................................................. 19

26

Conn. Gen. Stat. Ann. § 42-460(a) ........................................................... 16

27

28

Fla. Stat. Ann. § 501.95 ....................................................................... 16, 22

# TABLE OF AUTHORITIES
### (continued)

**Page**

Mass. Gen. Laws ch. 200A § 5D ................................................................ 16

Mass. Gen. Laws ch. 255D, § 1 ........................................................... 16, 21

Md. Code Ann., Com. Law § 14-1319(a)(1) ........................................... 19

N.J. Stat. Ann. § 56:8-110 ...................................................................... 16

N.J. Stat. Ann. § 56:8-110(1)(d) ........................................................ 20, 21

N.Y. Gen. Bus. Law § 396-i(3) ............................................................... 15

**OTHER AUTHORITIES**

12 C.F.R. Pt. 205, Supp. I, § 205.20 ................................................... 9, 10

Am. Heritage Dictionary of the English Language 742 (4th ed. 2000) ......... 17

Fed. R. Civ. P. 9(b) ......................................................................... 7, 8, 22

Fed. R. Civ. P. 12(b)(6) ............................................................................ 3

Fed. R. Evid. 201 ..................................................................................... 3

## I.   INTRODUCTION

SoulCycle Inc. ("SoulCycle") is a rapidly growing fitness company.  It sells, among other things:  (1) SoulCycle "gift cards" ("Gift Cards"); and (2) indoor group cycling classes ("Classes").  Gift Cards are clearly labeled as such on the website and have no expiration date; they can be purchased for a specified dollar amount and then applied toward the purchase of Classes or SoulCycle branded merchandise.

Plaintiff Rachel Cody ("Cody") did not purchase a Gift Card.  She bought a single Class for herself—not for another as a gift—which she then did not use before it expired by its terms.  Cody does not allege any efforts she made to use the Class before expiration and does not allege that she asked SoulCycle to extend the Class past its expiration date, much less that SoulCycle refused any such request.

In an effort to make her single purchase of a Class (bought for her own use) into the basis of a nationwide class action lawsuit, Cody misleadingly characterizes the Class she purchased as a "Series Certificate" (a term that does not appear in any of the SoulCycle website screen shots in the Complaint), which she then equates to "gift certificates" or "gift cards" of a "specified amount" usable toward the purchase of Classes.  Cody alleges that these "Series Certificates" have expiration dates that violate federal and state laws governing gift certificates as well as certain consumer protection laws of California.

Cody's allegations fail.  The website screen shots that Cody herself highlights establish that SoulCycle does not sell "Series Certificates," does not market "Series Certificates," and that SoulCycle's sale of Classes are not, in fact, the sale of "gift certificates," "gift cards," or "Series Certificates" at all.  Classes are just that: classes.  SoulCycle customers use Classes in their account to reserve a bike at a SoulCycle studio for a group ride at a specific time and location and with a specific instructor.  They cannot, for example, use a Class to buy merchandise. Plaintiff's Complaint purposefully conflates and confuses two different SoulCycle

1   products by artful and disingenuous characterizations and by misleadingly
2   superimposing suggestive labels and arrows onto screen shots of SoulCycle's
3   website.  She thus concocts, and then attacks as unlawful, a sale structure that does
4   not exist.

5           In a case directly on point here, a district court recognized the absurdity of
6   Plaintiff's position and dismissed a highly similar lawsuit involving yoga studio
7   classes with expiration dates.  That Court held that finding yoga classes with
8   expiration dates to be equivalent to a gift certificate "would create an absurd result
9   where any prepaid good or service that could not be immediately handed to, given
10  to, or performed contemporaneously at the time consideration is provided would
11  violate the statute." *Hughes v. CorePower Yoga*, 2013 WL 1314456, at *4 (D.
12  Minn. Mar. 28, 2013).  The Court reiterated:

13          Under Plaintiff's interpretation of the statute, putting time limits on
14          admission passes, codes, vouchers, or tickets, including time
15          restrictions on monthly passes to a parking garage, admission passes to
16          theme parks, physical training packages, music lessons, and bus passes
17          good for a certain number of rides would violate the statute.  It would
18          be absurd to determine that these prepaid, time-limited goods and
19          services are unlawful because they contain expiration dates or
20          temporal restrictions.

21  *Id*.  Classes are not what the gift card statutes were intended to cover, and for all of
22  the reasons stated herein, SoulCycle's sale of Classes are not subject to federal and
23  state gift card laws and do not violate California's consumer laws.  The Complaint
24  should be dismissed in its entirety.

25  **II.    STATEMENT OF FACTS**

26          **A.    SoulCycle's Sales of Gift Cards Is Distinct from its Sale of Classes.**

27          SoulCycle offers an immersive and intense physical fitness experience
28  through group cycling classes led by its trained instructors at its studios.  (Compl.

-2-
MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:15-CV-06457 GHK (JEMx)

¶ 20).  To purchase Classes, a customer must first open an account.  Then, to buy a Class, customers click a bar affirmatively signifying their agreement to abide by SoulCycle's Terms and Conditions ("Terms"), a copy of which is attached as Exhibit 1.[1]  (Ex. 1, www.soul-cycle.com/legal ("This policy governs your use of the SoulCycle website . . . and the SoulCycle Mobile Application (the 'App'). . . . ACCEPTANCE OF TERMS  By using the Website or App, you signify your acceptance of the Terms and Conditions.  If you do not agree to this, please refrain from using the Website or App."); Ex. 2, www.soul.cycle.com (demonstrating that one must agree to the Terms).

SoulCycle sells Gift Cards, Classes and merchandise (such as bikes and workout clothing).  Unlike gyms where customers buy a membership usable for a limited period of time, SoulCycle has a "pay-per-class model."  (Ex. 3, S-1, at 4, F-8.)  Classes can be purchased individually, or in a series of Classes online at soul-cycle.com, using the SoulCycle web application ("App"), or in a studio.  (Ex. 3 at 70, F-8.)  A series is defined as a "package of classes" or "multiple classes."  (Ex. 3 at F-8; Ex. 1 at Reservation/Changes.)

Separate and apart from its sale of Classes, SoulCycle sells actual Gift Cards.  (Ex. 4, www.soul-cycle.com/shop.)  To purchase a Gift Card on SoulCycle's website, a customer clicks on the word "Shop" and is taken to the Company's list of offerings:  (1) Gift Card; (2) SoulCycle Bike; (3) Buy Classes; and (4) (a list of) SoulCycle clothing and accessories.  (*Id*. at 1–2.)  If the customer clicks on "Gift Card," she sees what is depicted on Exhibit 4 at page 3, and she can then choose the specified amount of the gift card.  Gift Cards have no expiration date and can be used toward the purchase of Classes or SoulCycle merchandise.

---

[1] As discussed more fully in SoulCycle's Request for Judicial Notice, filed with this motion, when considering this motion to dismiss, this Court may, pursuant to the Ninth Circuit's "incorporation by reference" rule and Federal Rule of Evidence 201, take judicial notice of and consider certain documents outside of the pleadings "without converting the Rule 12(b)(6) motion into one for summary judgment." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

In contrast, if a customer wants to buy a Class, she can click on a yellow box on the website's first page that says, "find/buy classes." (Ex. 1 at page 1.)  The customer is then taken to an entirely different screen from the Gift Card screen. (*Compare* Compl. ¶ 22, Fig. 3 *with* Ex. 4 at 3.)  Paragraphs five, 22 and 25 of the Complaint depict the website screen a customer sees when buying a Class in Southern California.  The customer has the options to buy a "first time ride" Class, a single Class or multiple Classes that are offered at a reduced price relative to single rides; the extent of the reduction increases with the number of classes purchased.[2]  The prices of Classes differ depending on the location of the desired class.  For example, the prices of Classes taken in New York City are higher than those in California.  (*Compare, e.g.,* Ex. 5 *with* Compl. ¶ 22, Fig. 3.)

## B.    Plaintiff's Superimpositions on SoulCycle's Webpages.

While the copies of screen shots in paragraphs 25, 26, and 27 all accurately show *underlying* screen shots of SoulCycle's website, Plaintiff has superimposed large, bright yellow arrows of her own creation as an overlay onto those screen shots, containing words that do not exist on SoulCycle's website but rather are Plaintiff's mischaracterizations or argument.[3]  For example, paragraph 25 claims that "After a SoulCycle customer purchases a Series Certificate, SoulCycle sends the customer an email with a link to view the Series Certificate" and it then depicts the screen shots onto which Plaintiff has superimposed a yellow arrow that contains the words "'Select' Series Certificate."  There is, however, no product offering called a "Series Certificate" and SoulCycle does not send any link to view a "Series

---

[2] For example, in Southern California, one first time ride class costs $20, one class (other than a first time class) costs $30, five classes cost $145 (or $29 each), ten classes cost $280 (or $28 each), 20 classes cost $540 (or $27 each), and 30 classes cost $780 (or $26 each).  (Compl. ¶ 5, Fig. 1.)  The exception to this per class cost reduction is SuperSoul.  (*Id.*)

[3] On a motion to dismiss, the Court need not accept as true allegations contradicted by materials of which the Court can take judicial notice.  *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).  *See* Request for Judicial Notice ("RJN"), filed herewith.

1    Certificate."  Indeed, the words "certificate" and the term "Series Certificate" do

2    not appear on soul-cycle.com, the App, or in the Complaint's screen shots.  "Class"

3    or "Classes" however, appears 16 times in the first screen shot shown in paragraph

4    25 and consistently throughout.  Plaintiff's superimposition of the term "Series

5    Certificate" on screen shots of SoulCycle's website transparently is sleight of hand

6    intended to suggest that SoulCycle labels its Classes as "certificates" (suggesting

7    they are gift certificates) when in fact it does not.

8            **C.     Reserving a Bike Once a Class Is Purchased.**

9            The expiration dates for each Class or series of Classes are clearly stated

10   before the purchase is made, right below the number of Classes that the customer is

11   purchasing and the cost, and right above the "select" button that the customer clicks

12   to buy the Class.  (Compl. ¶ 5, Fig. 1.)  For example, a single Class, purchased for

13   use in New York, costs $34, and right under that amount, the website states,

14   "expires in 30 days."  (Ex. 5.)  The fact that the Classes expire is also disclosed in

15   the Terms to which customers agree when opening their accounts, which provide:

16   "You should be aware that classes and series expire . . . ."  (Ex. 1.)  As one might

17   expect, the more Classes a customer buys, the longer she has to use them.  For

18   example, a customer has 30 days to use one Class, but three months to use ten

19   Classes, nine months to use 20, and a year to use 30.  (Compl. ¶ 22, Fig. 3; Ex. 5.)

20           Once a customer buys a Class, she can then reserve a bike within a class

21   (sometimes referred to herein as a "ride" or "rides") at a specific date and time

22   online, with the App, or directly with a SoulCycle studio.  At noon on Mondays,

23   reservations for specific classes open and customers may reserve their rides for the

24   upcoming week.  (Compl. ¶ 35.)

25           As of March 31, 2015, SoulCycle offered Classes at 38 studios across seven

26   metropolitan areas.  (Ex. 3 at 50.)  SoulCycle studios average 72,000 rides per

27   week, with 2.9 million rides per year.  (Ex. 3 at 1, 4.)  The Complaint alleges that

28   30 percent of weekly rides are booked within 15 minutes of the opening of

-5-

reservations on Monday to suggest that there is a "scarcity" of available rides. (Compl. ¶ 35.) While ultimately immaterial to the questions presented in this motion, obviously, that leaves 70 percent or 50,400 weekly rides that are not immediately booked each Monday. In Southern California, where Cody lives, there are numerous studios. (Compl. ¶ 10 n.3.)

The number of Classes purchased, and then remaining to be used over time, are stated in the customer's account, which she can view online. (Compl. ¶ 26, Fig. 5.) The account depicts the total number of Classes remaining, not a dollar figure or dollar credit remaining to be spent. (*Id*.) And, the expiration date is clearly stated in one's account. (*Id.*) Customers can ride at the SoulCycle studios in the region where they bought the Class. Or, SoulCycle allows for "Class Transfer." (Compl. ¶ 42.) Under the Class Transfer option, "classes may be redeemed at any SoulCycle location that has a per class price that is equal to, or lesser than, the class or classes you have purchased." (Ex. 1 at Class Transfer Disclaimer.)

When a customer redeems a Class in a location other than the location for which the purchase was made, SoulCycle deducts the Class from her account. (*Id*.) Transfer is allowed to a location where the cost of a Class is less than that paid, but the customer forfeits any price differential. (*Id*.) So, for example, if the customer buys a Class for use in the Hamptons for $40, but she uses it in New York City where the cost per Class is $34, the customer is not entitled to a credit or refund of the $6 difference. (Ex. 1; Ex. 5.) The Class Transfer feature does not permit a customer to use a Class purchased for use in Chicago or Southern California (at a cost per Class of $30) to reserve a bike in New York City or the Hamptons by paying the difference in cash. (Ex. 1; Ex. 5.) Once a customer reserves a bike, the Class is deducted from her account—regardless of whether she actually attends the Class—unless she cancels the bike before 5 p.m. the prior day. (Ex. 1 at Cancellation Policy.) SoulCycle's Classes cannot be redeemed for cash. (Ex. 6, www.soul-cycle.com/faq, at "How does The Tiered Pricing Program Work.) The

Complaint does not allege that Cody attempted to use the transfer feature.

### D.   The Plaintiff's Purchase of a Single Class—For Herself.

Cody alleges that she bought one Class in June 2015 for $30 for herself. (Compl. ¶ 12.)  She allegedly was "unable to redeem" it before it expired 30 days later but does not explain why.  (*Id.* at ¶ 16.)  Cody does not allege that she was unable to reserve a single Class during those 30 days or that no Class was available. She does not allege whether she was unable to redeem because of personal scheduling conflicts, or if her intention was to purchase the Class and then allow it to expire.  She does not allege whether she reserved a Class and then cancelled it. Nor does she allege that she contacted SoulCycle and asked that the expiration date be extended or to use her expired Class, much less that SoulCycle refused.[4]

## III.   LEGAL STANDARD

"In order to survive dismissal for failure to state a claim, a complaint must set forth 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1158 (C.D. Cal. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The Court also need not accept assertions contradicted by judicially noticed facts.  *Gonzalez*, 759 F.3d at 1115.

Where a claim alleges fraud, Federal Rule of Civil Procedure Rule 9(b)

---

[4] The Complaint selectively quotes a few complaints in various reviews of SoulCycle studios.  (Compl. ¶ 52.)  The reviews cited also relate consumers' experiences of being allowed to use expired classes; for example: "lost classes b/c you didn't use them? Ask the front desk and explain you didn't understand the policy, they are sooo nice they will remedy it!"; and "Yes, SoulCycle is an investment, but honestly this chain does not nickel and dime customers. I can call and explain that I'm stuck in traffic and they will allow a late cancellation; when I purchased a big package I called and was able to extend the expiration date."  (Ex. 7, http://www.yelp.com/biz/soulcycle-palo-alto.)

-7-

1  requires the plaintiff "state with particularity the circumstances constituting fraud."

2  Fed. R. Civ. P. 9(b).  Rule 9(b)'s heightened pleading requirement applies to claims

3  under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et*

4  *seq.* ("UCL") and the Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et*

5  *seq.* ("CLRA") to the extent they allege fraudulent conduct.  *Kearns v. Ford Motor*

6  *Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  To satisfy Rule 9(b), plaintiffs must

7  allege "the who, what, when, where, and how" of the misconduct charged.  *Id.* at

8  1124 (internal citations and quotations omitted).  A plaintiff must "set forth what is

9  false or misleading about a statement, and why it is false."  *In re GlenFed, Inc. Sec.*

10  *Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) *superseded by statute on other grounds*.

11  Any averments of fraud which do not meet Rule 9(b)'s heightened pleading

12  standard should be "disregarded, or stripped from the claim[.]"  *Kearns,* 567 F.3d at

13  1124 (internal citations and quotations omitted).

14  **IV.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE**

15  **ELECTRONIC FUNDS TRANSFER ACT AS AMENDED BY THE**

16  **FEDERAL CREDIT ACCOUNTABILITY RESPONSIBILITY AND**

17  **DISCLOSURE ACT**

18  Plaintiff fails to state a claim for violation of the Electronic Fund Transfer

19  Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, as amended by the Credit Card

20  Accountability Responsibility and Disclosure Act of 2009 (the "CARD Act"), 15

21  U.S.C. § 1693l-1.  The CARD Act prohibits the issuance of any "gift certificate,

22  store gift card, or general-use prepaid card" with an expiration date of less than five

23  years.  15 U.S.C. § 1693l-1(c)(1)–(2).  The EFTA defines "gift certificate" as "an

24  electronic promise that is--(i) redeemable at a single merchant or an affiliated group

25  of merchants that share the same name, mark, or logo; (ii) issued in a *specified*

26  *amount* that may not be increased or reloaded; (iii) purchased on a prepaid basis in

27  exchange for payment; and (iv) honored upon presentation by such single merchant

28  or affiliated group of merchants for goods or services."  15 U.S.C. § 1693l-

-8-

1    1(a)(2)(B) (emphasis added).

2         The EFTA also provides exemptions from its provisions for "gift certificates"

3    that are: " . . . (ii) reloadable and not marketed or labeled as a gift card or gift

4    certificate . . . or (vi) redeemable solely for admission to events or venues at a

5    particular location or group of affiliated locations. . . ." *Id*. at § 1693l-1(a)(2)(D).

6         As explained below, (1) sales of Classes are not "issued in a *specified*

7    *amount*"; (2) customers' accounts reflecting the purchased Classes may be

8    increased or reloaded and are not marketed or labeled as gift cards or gift

9    certificates; and (3) Classes are redeemable solely for admission to an event (a

10   Ride) at specified locations.

11        **A.    A Class Is Not A "Gift Certificate" under the EFTA; It is Not an**

12            **Electronic Promise in a "Specified Dollar Amount."**

13        The sale of a Class is not within the definition of a "gift certificate" because

14   SoulCycle does not issue an "electronic promise in a *specified amount*"—

15   SoulCycle sells classes.  The EFTA does not define the term "specified amount."

16   However, Regulation E promulgated under the EFTA and case law interpreting

17   "specified amount" provide clear guidance that an electronic promise in a

18   "specified amount" means a specified *dollar* amount, not an electronic promise to

19   provide the goods, services, or experiences, even if the goods, services or

20   experiences might cost a specified amount.  *See* 12 C.F.R. Pt. 205, Supp. I, Section

21   205.20; *see also Balvage v. Ryderwood Improvement and Serv. Ass'n, Inc*., 642

22   F.3d 765, 775–76 (9th Cir. 2011) (citing *Fed. Express Corp. v. Holowecki*, 552 U.S.

23   389, 397 (2008) (agency's reasonable interpretation of regulations it has put in

24   force are entitled to deference from courts.))

25        The Official Staff Interpretations of Regulation E states:

26        Certain cards, codes, or other devices may be redeemable upon

27        presentation **for a specific good or service, or "experience," such as**

28        **a spa treatment, hotel stay, or airline flight.** . . . Such cards, codes,

-9-

1    or other devices generally are not subject to the requirements of this

2    section because they are not issued to a consumer "in a specified

3    amount" as required under the definitions of "gift certificate," "store

4    gift card," or "general-use prepaid card."  However, if the card, code,

5    or other device is issued in a specified or denominated amount that can

6    be applied toward the purchase of a specific good or service, such as a

7    certificate or card redeemable for a spa treatment up to $50, the card,

8    code, or other device is subject to this section.

9    12 C.F.R. Pt. 205, Supp. I, Section 205.20 Requirements for Gift Cards and Gift

10   Certificates, 20(a) Definitions, ¶ 3 at 183–84 (emphasis added).

11        In *Hughes*, a case that is in all material respects "on all fours" with this case,

12   the Court relied on the statutory language and the Official Staff Interpretations of

13   Regulation E and ruled that yoga "Class Pack cards" were not gift certificates or

14   store gift cards within the meaning of the EFTA (or state law) because they were

15   not issued as a "specified amount."  2013 WL 1314456, at *6–7.

16        In *Hughes*, the defendant sold prepaid yoga classes in packages of five, ten,

17   and 20 that it termed "Class Packs," which had expiration dates.  Class Pack

18   sessions were redeemed by scanning one's card, after which the computer retrieved

19   the records and deducted the class.  *Id.* at *1.  In dismissing the plaintiff's EFTA

20   claim, the Court equated "specified amount" in the definition of "gift certificate" to

21   a *dollar* amount and held that the Class Pack cards were redeemable for a specific

22   good, service, or experience (yoga classes), not for a "specified [dollar] amount"

23   good *toward* the purchase of such good, service or experience.  The Court ruled:

24        The Court finds that Defendant's [yoga] Class Packs are not store gift

25        cards under the EFTA because they are not issued in a "specified

26        amount."  The Official Staff Interpretations of Regulation E

27        specifically provides that cards redeemable for a specific good,

28        service, or experience such as a spa treatment, hotel stay, or airline

-10-

1    flight are not store gift cards under the EFTA.  **Just as the goods,**

2    **services, and experiences listed in the Official Staff Interpretations**

3    **of Regulation E do not constitute store gift cards, Defendant's**

4    **Class Pack cards are not store gift cards because they are**

5    **redeemable for yoga classes and not for a "specific amount," such**

6    **as a $50 spa card.**  Accordingly, the Court finds that Defendant's

7    Class Pack cards are not a store gift card under the EFTA.

8    *Id.* at *6 (emphasis added) (internal citations omitted).

9        The same analysis applies here precisely and the same result follows.

10   SoulCycle sells Classes, which are advertised as, and in fact are, the sale of an

11   "experience," (similar to yoga classes), usable at specified SoulCycle studios.

12   Classes are neither advertised nor sold as "certificates" nor "Series Certificates" nor

13   as electronic promises in a "specified [dollar] amounts" that can be applied *toward*

14   the purchase of a specific good, service or experience as the terms are used in the

15   statute.  Rather, the purchase of a Class provides only the ability to reserve a date

16   and time for a ride at a SoulCycle studio.  Unlike a gift certificate or a Gift Card, a

17   Class is *not* a cash equivalent in a "specified amount" and a customer cannot apply

18   it *toward* the purchase of SoulCycle goods or services.

19        As demonstrated by the screen shots shown in paragraphs 26 and 27,[5] when a

20   customer views her account online, SoulCycle shows the number of Classes

21   remaining in the account, *not* a cash equivalent or a "specified amount" of money

22   the customer can use toward the redemption of Classes.  The screen shots in

23   paragraph 27, for example, show the number "1" in the yellow circle next to

24   "find/buy classes," indicating the number of Classes purchased and remaining in

25   the account to be used, not a dollar amount good toward Classes.  Similarly, the

26   _____

27   [5] As previously explained, Cody made up the big, yellow arrows superimposed on
     the screen shots.  They, and the words "Series Gift Certificate," never appear on the
     website or the App.  (*Compare* Compl. ¶ 22, Fig. 3 and *¶* 25, Fig. 4 *with* Ex. 8 and
28   Ex. 9.)

-11-

1   screen shot in paragraph 26 shows that the account has "1 remaining" (and notes

2   the date of expiration) as opposed to a dollar credit that can be used toward Classes.

3   Although the price of Classes can differ among regions, regardless of the price paid

4   for a class, the customer's account shows the number of Classes remaining for use

5   rather than a dollar amount of the purchase price that remains.

6        A Class, once purchased, remains a Class; it never becomes a "certificate" or

7   electronic promise in a "specified amount" that can be gifted to another and then

8   used toward the purchase of a Class.  For example, a Class purchased at a Southern

9   California studio for $30 cannot be gifted to another person to use as $30 towards

10  the purchase of a Class at a New York studio.  Alternatively, if the customer buys a

11  $40 Class, she can use it in locations where Classes cost the same or less, but she

12  cannot transfer it to another for her use, and she does not get a refund of the price

13  differential.

14       **B.    SoulCycle Does Not Market Its Classes as Gift Certificates and**

15             **SoulCycle's Electronic Promise to Redeem Classes Is Reloadable.**

16       Even if Classes could be deemed to be issued in a "specified amount" (which

17  they are not), Classes are exempt from the EFTA's requirements regarding "gift

18  certificates" based on the exception for electronic promises that are "reloadable and

19  not marketed or labeled as a gift card or gift certificate."  15 U.S.C. § 1693l-

20  1(a)(2)(D)(ii).

21       First, SoulCycle's Classes are "not marketed or labeled" as gift cards or gift

22  certificates.  The five screen shots Cody includes supposedly in support of her

23  allegation that SoulCycle markets its Classes as "Series Certificates" unequivocally

24  prove the opposite.  For example, Figure 3 in paragraph 22 depicts a screen capture

25  of SoulCycle's webpage where customers can purchase Classes, which are referred

26  to as *Classes*, not "Series Certificates."  In that figure, the word "class" or "classes"

27  is used 16 times.  (Compl. ¶ 22.)  In sharp contrast, the words "certificate" or

28  "Series Certificate" do not appear once.  (*Id.*)  Indeed, not one of the screen shots

-12-

1  Plaintiff provides shows SoulCycle using the term "certificate" or "Series

2  Certificate."  (Compl. ¶¶ 22, 25, 26, 27.)  While Cody has misleadingly added

3  yellow arrows that use the term "Series Certificate" in an overlay to what actually

4  appears on the website, such obvious gimmickry does not demonstrate that

5  SoulCycle ever marketed its Classes as "gift certificates."  In fact, SoulCycle sells a

6  separate product called a "Gift Card," which can be used toward the purchase of

7  Classes and/or merchandise, and which does not expire.

8       Second, SoulCycle's electronic promise to redeem purchased Classes is

9  "reloadable."  A SoulCycle customer who logs into her SoulCycle account can view

10  the Classes she has purchased, use the Classes to reserve rides, and purchase

11  additional Classes.  (*See* Compl. ¶¶ 22–27.)  In the *Hughes* case, discussed above,

12  the district court found a similar system, where customers purchased yoga classes

13  online and also had electronic accounts to which they could add additional classes

14  and from which classes were debited when a customer checked in at a yoga studio

15  to participate in a class, was a "reloadable" electronic promise.  *See Hughes*, 2013

16  WL 1314456, at *6.  The same is true here.  Accordingly, SoulCycle's Classes are

17  exempted from the EFTA's definition of a gift certificate.  *See* 15 U.S.C. § 1693l-

18  1(a)(2)(D)(ii); *Hughes*, 2013 WL 1314456, at *6–7.

19       **C.    Classes Are Redeemable For Admission to an Event.**

20       Classes also fall under the statutory exclusion for an electronic promise

21  "redeemable solely for admission to events or venues at a particular location or

22  group of affiliated locations, which may also include services or goods obtainable."

23  15 U.S.C. § 1683l-1(A)(2)(D)(vi).  A customer purchases a Class and then reserves

24  a bike at a specific studio at a specific date and time with a specific instructor—

25  essentially reserving admission to a particular event at a particular location.  *See id.*

26  Once a customer reserves a bike, the Class is deducted from her account (unless she

27  cancels the bike by five p.m. the day before).  (Ex. 1 at Cancellation Policy.)  The

28  system is therefore similar to the purchase of a ticket for admission to an event or

-13-

1   other experience—the customer purchases the ticket in advance and does not get a

2   refund if she does not attend.  Thus, Classes fall within this statutory exclusion and

3   are not "gift certificates."  Accordingly, Plaintiff fails to state a claim.

4          **D.     Cody Lacks Standing To Sue.**

5          Even if the Court were to find that Classes are "gift certificates" within the

6   meaning of the EFTA and state gift laws and do not fall under any statutory

7   exception, Cody's claims still should be dismissed because she fails to allege

8   injury-in-fact required to confer standing to sue.  To have standing, a plaintiff must

9   demonstrate:  (1) she suffered an "injury in fact" that is concrete and particularized

10  and actual or imminent, not conjectural or hypothetical; (2) "the injury is fairly

11  traceable to the challenged action of the defendant; and (3) it is likely, as opposed

12  to merely speculative, that the injury will be redressed by a favorable decision."

13  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–

14  81 (2000); *Montana Envtl. Info. Center v. Stone-Manning*, 766 F.3d 1184, 1188

15  (9th Cir. 2014).

16         Each of Plaintiff's claims is based on the allegation that SoulCycle imposed

17  illegal expiration dates.  Plaintiff, however, has not sufficiently pled an injury

18  traceable to the expiration dates.  She does not allege that she ever tried, and was

19  unable, to reserve a bike in a Class after expiration.  She also fails to allege that she

20  asked SoulCycle to extend the expiration date and that it refused.

21         The failure to plead that SoulCycle enforced the allegedly improper term of

22  expiration against Plaintiff is fatal to Plaintiff's claims. *See Wersal v. LivingSocial,*

23  *Inc.*, 2013 WL 3871434, *2 (D. Minn. July 26, 2013) (granting motion to dismiss

24  claims under the EFTA and state gift card law where plaintiff failed to allege he

25  attempted, and was unable, to use voucher after the stated expiration date); *see also*

26  *Alfi v. Nordstrom, Inc.* 2010 WL 5093434, at *5 (S.D. Cal. Dec. 8, 2010) (holding

27  that plaintiff challenging expiration date under California's gift card law lacked

28  standing, in part because plaintiff did not allege he tried to redeem the alleged gift

-14-

certificate); *Cooper v. Twentieth Century Fox Home Ent., LLC*, 2012 WL 1021140, at *2 (C.D. Cal. Mar. 16, 2012) (dismissing claims based on allegedly illegal expiration dates where plaintiff failed to allege defendant enforced expiration date).  Accordingly, the Complaint should be dismissed in its entirety.

## V.    CODY FAILS TO STATE A CLAIM UNDER ANY STATE LAW.

### A.    New York Law Applies and Cody Does Not Attempt to State Any Claim Under New York Law.

SoulCycle's Terms, to which Cody agreed when she opened her account, provide for the application of New York law to the use of the website.  (Ex. 1 at Choice of Law ("The Website, App, and your use hereof, is governed by the laws of the State of New York."); Ex. 2.)  Courts enforce such choice of law provisions. *See, e.g.*, *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).

SoulCycle's principal place of business is New York—a fact acknowledged in the Complaint.  (Compl. ¶ 19.)  In California, "[t]his fact alone is sufficient to establish a 'substantial relationship' between [the state of] New York and the parties." *Hughes Elecs. Corp. v. Citibank Del.*, 120 Cal. App. 4th 251, 258 (2004) (internal citations omitted); *see also Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 467 (1992) ("If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice.") (internal citations omitted).  New York also "has an interest in seeing that the legitimate expectations of the parties to the contract are not frustrated." *See S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 753 (9th Cir. 1981).

This renders the laws of any other state irrelevant, and Cody does not attempt to plead any claim under New York law.  Nonetheless, the Court need not resolve the choice of law issue because Cody fails to state a claim under New York[6] or

---

[6] New York law does not prohibit expiration dates on gift cards, but requires them to be conspicuously disclosed to the purchaser, which SoulCycle does.  N.Y. Gen. Bus. Law § 396-i(3).

-15-

1  California law.

2  **B.   Cody Cannot Avail Herself of State Statutes That have No**

3  **Applicability or Relevance to Her.**

4  Cody, a California resident, purchased a Class in California for use at a

5  California SoulCycle studio.  Her purchase of a single Class in California, from a

6  Delaware company headquartered in New York, pursuant to a contract that

7  provided for the application of New York law, does not permit her to invoke the

8  laws of six other states to which she alleges absolutely no connection. Neither New

9  York courts applying New York law nor California courts applying California law

10 recognize extraterritorial application of other states' consumer protection laws

11 where those laws have no connection to a plaintiff or her transaction.[7]  *Mosely v.*

12 *Vitalize Labs, LLC*, 2015 WL 5022635, at *8 (E.D.N.Y. Aug. 24, 2015) (dismissing

13 claims under the consumer protection laws of New Jersey and New York where the

14 plaintiff purchased the product only in his home state of California).  New York

15 courts frame the issue as one of standing implicating the Court's jurisdiction and

16 thus address at the motion to dismiss stage, rather than waiting until class

17 certification.  *Id*.; *Simington v. Lease Fin. Grp., LLC*, 2012 WL 651130, at *9

18 (S.D.N.Y. Feb. 28, 2012) (dismissing claims); *Jurgensen v. Felix Storch, Inc.*, 2012

19 WL 2354247, at *10, 12 (S.D.N.Y. June 14, 2012) (same).

20 Similarly, California courts applying California law refuse to apply other

21 states' consumer protection laws extraterritorially where the plaintiff has no

22 connection to those states.  *See, e.g.*, *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d

23 

24 _____

[7] Moreover, several of the state gift certificate laws Plaintiff claims SoulCycle has
violated do not allow for extraterritorial application.  *See, e.g.*, *SPGGC, LLC v.
Blumenthal*, 505 F.3d 183, 194 (2d Cir. 2007) ("The Attorney General has
stipulated that the [Connecticut gift card] law applies only to sales of gift cards in
Connecticut."); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill.
2005) (Illinois Consumer Fraud Act does not apply where the circumstances
relating to the disputed transaction do not "occur primarily and substantially in
Illinois")  Many of the state gift certificate statutes also do not expressly permit a
private right of action.  *See* Fla. Stat. Ann. § 501.95; N.J. Stat. Ann. § 56:8-110;
Mass. Gen. Laws ch. 200A § 5D, ch. 255D § 1; Conn. Gen. Stat. Ann. § 42-460(a).

-16-

1    1048, 1061 (N.D. Cal. 2013).  In *Pardini*, the Court dismissed the plaintiff's claims

2    for violation of consumer protection laws of various states in which she did not

3    reside or purchase the defendant's products.  The Court found that this was a

4    "pleading defect amenable to determination prior to a motion for class

5    certification."  *Id.*; *see also Morales v. Unilever U.S., Inc.*, 2014 WL 1389613, at

6    \*4–6 (E.D. Cal. Apr. 9, 2014) (dismissing class action claims brought under

7    consumer protection laws of states other than the ones in which named plaintiffs

8    resided ); *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309

9    (N.D. Cal. 2008) (same); *In re Graphics Processing Units Antitrust Litig.*, 527 F.

10    Supp. 2d 1011, 1026–27 (N.D. Cal. 2007) (same).[8]  Thus, regardless whether this

11    Court applies New York or California law, Cody's claims under other states' gift

12    certificate laws should be dismissed.

13          **C.**    **The Complaint Fails to State a Claim for Violation of California's**

14               **Gift Certificate Statute.**

15        Even if California law applied—which it does not—Cody fails to state a

16    claim for violation of California's gift certificate statute because Classes are not gift

17    certificates.  While the California statute prohibiting expiration of gift certificates,

18    Cal. Civ. Code § 1749.5, does not define gift certificates, when interpreting a

19    statute, undefined terms are given their ordinary meanings.  *See Synagogue v.*

20    *United States*, 482 F.3d 1058, 1061–62 (9th Cir. 2007).

21        The ordinary meaning of "gift certificate" is a "certificate, usually presented

22    as a gift, that entitles the recipient to select merchandise of an indicated cash value

23    at a commercial establishment." *See Reynolds v. Philip Morris USA, Inc.*, 332 F.

24    App'x 397, 398 (9th Cir. 2009) (quoting Am. Heritage Dictionary of the English

25    Language 742 (4th ed. 2000)).  This definition is not applicable to Classes because

26

27    ———————————

    [8] On a motion to dismiss brought in a putative class action, the court will consider

only the named plaintiff's individual claims. *Bohn v. Pharmavite, LLC*, 2012 WL

28    8898669, at \*3 (C.D. Cal. May 16, 2012); *Forcellati*, 876 F. Supp. 2d at 1161.

1   (1) Cody did not buy her Class as a gift and Classes are not presented to others as

2   gifts, (2) Classes do not entitle consumers to select merchandize of an indicated

3   cash value, and (3) Cody lacks standing, as explained in Section IV.D., *supra*.

4      First, Plaintiff alleges that she purchased one Class for herself.  (Compl.

5   ¶¶ 11, 12, 16.)  There is no allegation she purchased the Class as a "gift."  Any such

6   allegation would not make sense; SoulCycle sells Gift Cards, which one can give to

7   others.  In contrast, when a customer buys a Class, it appears in her own account.

8   To reserve a bike using that account, she must provide her e-mail and password.  As

9   such, only she can use that Class to reserve a bike.

10     Second, Classes, unlike Gift Cards, are not cash-equivalent "certificates"

11  with an "indicated cash value."  Although Plaintiff misleadingly describes the Class

12  she purchased as a "Series Certificate," her own Complaint demonstrates that

13  SoulCycle does not refer to its Classes as "certificates"—it calls them "classes"—

14  and they do not function as she alleges.  (*See* Compl. ¶ 25, Fig. 4.)  When a

15  customer buys a Class, she does not receive a cash equivalent that entitles her to

16  make future purchases "of an indicated cash value" at SoulCycle like a gift

17  certificate would.  As the website makes clear, one's account is credited with a

18  Class or number of Classes, and one can use them only to reserve a bike for a

19  particular Class; a Class cannot be used to purchase SoulCycle merchandise.

20     The legislative history of California's gift certificate statute supports the

21  conclusion that the statute was not intended to cover Classes.  Civil Code section

22  1749.5 was enacted to address a specific problem:  the practice of refusing to honor

23  gift certificates that had expired.  The argument made in favor of the bill was that

24  "[g]ift-givers do not expect their gifts to expire . . . Thus, expired gift certificates

25  dash the expectation of gift-givers and constitute an unfair windfall to retailers."

26  Cal. B. Analysis, S. Comm., 1995-1996 Reg. Sess., Assemb. B. 2466 (June 11,

27  1996).  Here, Classes are not given as gifts and the expiration date is clearly

28  disclosed.  The statute does not apply here.  Cody's claim for violation of the

-18-

California gift certificate law should be dismissed.

### D.     The Complaint Fails to State a Claim for Violation of the Gift Certificate Laws of Any Other State.

Even if Cody could access the laws of states she invokes—which she cannot—she has not alleged a valid claim under those gift cards statutes.

#### 1.     The Complaint Fails to State a Claim for Violation of Maryland Gift Certificate Law.

Maryland Code of Commercial Law section 14-1319 defines a "gift certificate" as a "device constructed of paper, plastic, or any other material that is "Sold or issued by a person *for a cash value* that can be used to purchase goods or services."  Md. Code Ann., Com. Law § 14-1319(a)(1) (emphasis added).  Classes, as just established, are not sold "for a cash value."  They are not constructed of paper, plastic or other material.  Classes are sold singly or as a series and not for a denominated monetary value.  As a result, Classes are not governed by the Maryland gift certificate law and Plaintiff's claim fails.

#### 2.     The Complaint Fails to State a Claim for Violation of Illinois and Connecticut Gift Certificate Law.

Section 2SS of the Illinois Consumer Fraud Act (the "CFA"), 815 Illinois Compiled Statutes 505/1, *et seq*., and the Connecticut Gift Certificate law define a "gift certificate" in the same way—as a "record evidencing a promise, made for consideration, by the seller or issuer of the record that goods or services will be provided to the holder of the record for the value shown in the record and includes, but is not limited to, a record . . . that is prefunded and for which the value is decremented upon each use, a gift card, an electronic gift card . . . ."  815 Ill. Comp. Stat. 505/2SS(a); Conn. Gen. Stat. Ann. § 3-56a.

In *Hughes*, the Minnesota statute at issue contained almost identical text as the Illinois and Connecticut statutes.  2013 WL 1314456, at *2.  The Court, construing that language, held that "[c]onsistent with its common usage, the term

-19-

1  'value' in the gift certificate statute means that the customer can purchase goods or

2  services up to the stated cash amount shown in the tangible record rather than a

3  particular good or service.  In other words, the holder of a gift certificate is entitled

4  to goods or services *of a certain cash value* rather than any particular good or

5  service." *Id*. at *4. (emphasis added).  Any other definition, the Court found, would

6  lead to an absurd result.  The Class Pack could "only be redeemed for yoga services

7  and not for some monetary value." *Id.*  As a result, the Court dismissed the claim.

8      Logic compels the same conclusion here.[9]  Here, a customer pays a certain

9  amount of money for a "class," and the "record"—the customer's online account—

10  then reflects that the customer will be provided with that number of classes.  The

11  "record" does not state a monetary "value" later redeemable for classes or

12  merchandise.  The Class can only be used to reserve a bike in a selected class at a

13  particular date and time; it is not a stored amount of cash value for later use.  As

14  such, Classes are not gift certificates within the meaning of the Illinois and

15  Connecticut gift certificate statutes and Plaintiff thus fails to state a claim for relief.

16         **3.**      **The Complaint Fails to State a Claim for Violation of New**

17                **Jersey Gift Certificate Law.**

18      Under New Jersey law, a "gift card" is a "tangible device, whereon is

19  embedded or encoded in an electronic or other format a value issued in exchange

20  for payment, which promises to provide to the bearer merchandise of equal value to

21  the remaining balance of the device," and a "gift certificate" is "a written promise

22  given in exchange for payment to provide merchandise in a specified amount or of

23  equal value to the bearer of the certificate."  N.J. Stat. Ann. § 56:8-110(1)(d).

24  _____

25  [9] Oddly, Plaintiff alleges that SoulCycle's co-founder "confirms" that SoulCycle classes have "value," implying that this is an admission of "value" as defined in the gift certificate laws.  (Compl. ¶ 44.)  The quote, however, does not support the

26  allegation; in it, one of the co-founders makes the unremarkable observation that "People value what they pay for. . . . If someone pays to take that class, they are

27  going to come in and work so hard . . . ."  Such a statement does not equate Classes with gift certificates of a cash equivalent value and indeed, confirms that people

28  buy Classes for themselves, not as gifts for others.

1    A Class is not a "gift card" under the New Jersey statute because (1) it is

2  electronically issued to the customer's online account when purchased and is

3  therefore not a "tangible device" and (2) as previously established (*see* Sections

4  IV.A. and IV.D.1., *supra*), Classes are not given "in a specified amount or of equal

5  value" as required by section 56:8-110(1)(d).  When Plaintiff purchased her Class

6  online, she had, in her account, one Class to use, not a specific cash value to be

7  applied towards "merchandise."  Accordingly, her claim under the New Jersey gift

8  certificate statute must be dismissed.

9         **4.      The Complaint Fails to State a Claim for Violation of**

10                  **Massachusetts Gift Certificate Law.**

11    The Massachusetts gift certificate statute defines a "gift certificate" as "a

12  writing identified as a gift certificate purchased by a buyer for use by a person other

13  than the buyer not redeemable in cash and usable in its face amount in lieu of cash

14  in exchange for goods or services supplied by the seller."  Mass. Gen. Laws ch.

15  255D, § 1.  In *Commonwealth v. Simon Property Group*, the Court interpreted the

16  statute "as establishing four required elements" which "an item must meet . . . to be

17  within the definition":  (1) "a writing identified as a gift certificate"; (2) purchased

18  by one person for use by another; (3) "not redeemable in cash" but instead "usable

19  in its face amount in lieu of cash"; <u>and</u> (4) used "in exchange for goods or services

20  supplied by the seller." 24 Mass. L. Rptr. 645, 2008 WL 4965853, at *3 (2008).

21    Here, (1) Classes are not identified as a gift certificate, but as "classes," (2)

22  Cody does not allege she bought Classes for use by another, and (3) Classes are not

23  "usable in [their] face amount in lieu of cash."  Accordingly, the statute does not

24  apply to Classes.  Plaintiff fails to state a claim under Massachusetts law.

25         **5.      The Complaint Fails to State a Claim for Violation of**

26                  **Florida Gift Certificate Law.**

27    Florida law defines a gift certificate as a "certificate, gift card, stored value

28  card, or similar instrument purchased for monetary consideration . . . redeemable

1   for merchandise, food, or services regardless of whether any cash may be paid to

2   the owner of the certificate, card, or instrument as part of the redemption

3   transaction . . . ." Fla. Stat. Ann. § 501.95. The sale of a Class is not the sale of a

4   "certificate, gift card, stored value card or similar instrument" (which clearly

5   denotes a tangible object). Instead, a customer's purchase is represented by an

6   electronic entry in her online account. The Florida gift certificate law was not

7   meant to encompass a purchase of a Class or similar experiences such as the

8   Classes, as opposed to goods or services. SoulCycle's Classes are not "gift

9   certificates" as used in section 501.95. Plaintiff's claim should be dismissed.

10      **E.    The Complaint Fails to State a Claim for Violations of California's**

11              **Consumer Protection Laws.**

12          Even if Cody could invoke California law, she fails to state a claim for

13   violation of the UCL or the CLRA, counts three and four. To state a claim under

14   the "unlawful" prong of the UCL, a plaintiff must allege violation of some other

15   law. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). Here, Cody predicates her

16   claim that SoulCycle acted "unlawfully" upon alleged violations of the EFTA,

17   California's gift card law, and the CLRA. (Compl. ¶¶ 99–100.) But, the EFTA and

18   California's gift card laws do not apply to SoulCycle's sale of Classes, so any claim

19   of "unlawful" conduct based on violation of those laws fails. (*See* Section IV and

20   VI.C). And, as discussed below, Plaintiff fails to state a claim under the CLRA.

21          To prove "fraudulent" conduct under the UCL, a plaintiff must prove that the

22   challenged conduct is "likely to deceive" members of the public. *In re Insurance*

23   *Installment Fee Cases*, 211 Cal. App. 4th 1395, 1417 (2012). Cody alleges

24   SoulCycle acted fraudulently by disseminating "misleading, and partial statements

25   about [Classes] that have a tendency to mislead the public." (Compl. ¶ 104.) Cody

26   fails, however, to identify with the particularity required by Rule 9(b), what

27   misrepresentations or misleading omissions SoulCycle supposedly made, or when

28   or how SoulCycle made them. *See Kearns*, 567 F.3d at 1124–25. Quite the

1   contrary, SoulCycle clearly displays applicable expiration dates on its website prior

2   to purchase (*see* Compl. ¶ 22, Figs. 3 and ¶ 25, Fig. 4), in a link sent to a customer

3   after purchase (Compl. ¶ 26, Fig. 5 and  ¶ 27, Fig. 6), in a customer's SoulCycle

4   account (Compl. ¶ 27, Fig. 6), and in SoulCycle's Terms, which provide: "You

5   should be aware that classes and series expire . . . ."  (Ex. 1.)

6          To state a claim for violation of the "unfair" prong of the UCL, a plaintiff

7   must allege conduct in violation of a public policy that is "tethered" to a

8   constitutional or statutory provision or regulation carrying out statutory policy.

9   *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185

10  (1999); *In re Firearm Cases*, 126 Cal. App. 4th 959, 978 (2005).  Because Cody's

11  claim of "unfair" conduct is based on alleged violations of gift card laws (*see*

12  Compl. ¶ 101), and those laws are inapplicable, her claim fails.

13         Cody fails to state a claim for violation of the CLRA.  As an initial matter,

14  the CLRA claims should be dismissed because Cody did not provide SoulCycle

15  with 30 days' notice of the alleged violation before filing a CLRA claim for

16  damages as required by Cal. Civ. Code § 1782(a).  "Federal courts have required

17  '[s]trict adherence to the statute's notice provision … to accomplish the [CLRA's]

18  goals of expeditious remediation before litigation.'"  *In re Apple & AT&T iPad*

19  *Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (quoting

20  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005)).

21         Even if she had provided timely notice, her claim fails. The CLRA prohibits

22  certain "unfair methods of competition and unfair or deceptive acts or practices" in

23  transactions with consumers.  Cal. Civ. Code § 1770(a).  Generally, the standard for

24  deceptive practices under the "fraudulent" prong of the UCL—conduct "likely to

25  mislead"—also applies to claims for misrepresentation under the CLRA.  *See*

26  *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360

27  (2003).  Since Cody's CLRA claim is predicated on the allegation that SoulCycle's

28  Classes have illegal expiration dates (*see* Compl. ¶ 113), it fails because (1)

1   SoulCycle's Classes are not gift certificates and (2) as explained above, Cody has

2   not alleged with particularity conduct "likely to mislead" consumers.  To the extent

3   Cody's CLRA claim is based on "imposition of other deceptive sales terms"

4   (Compl. ¶ 113), she fails to articulate those terms, and as such, fails to state a claim.

5          **F.**     **The Complaint Fails to State a Claim for Declaratory Relief.**

6        Under New York or California law, Cody's declaratory judgment claim,

7   count five, fails.  A party pursuing a declaratory judgment action "must have

8   standing, *i.e.*, a 'legally protectible [sic] interest, that is in direct issue or jeopardy,

9   in order to invoke the remedy of declaratory judgment.'"  *Matter of Ideal Mut. Ins.*

10   *Co.*, 174 A.D.2d 420, 421 (1991) (internal citations omitted); *accord W. Min.*

11   *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Here, Cody has not alleged an

12   injury-in-fact in that she has not alleged she has tried to redeem her expired Class.

13   And, because she has not pleaded a claim under the federal or state gift card laws,

14   no actual controversy exists.  Cody's declaratory relief claim should be dismissed.

15         **G.**     **The Complaint Fails to State a Claim for Unjust Enrichment.**

16        Plaintiff's sixth claim for unjust enrichment is simply a regurgitation of her

17   other claims, and should be dismissed whether the Court applies California or New

18   York law.  In California, "unjust enrichment is not an independent cause of action."

19   *Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011); *see Forcellati*,

20   876 F. Supp. at 1166 (collecting cases; dismissing unjust enrichment claim with

21   prejudice).  Similarly, the New York Court of Appeals has held that "[t]he theory of

22   unjust enrichment lies as a quasi-contract claim.  It is an obligation the law creates

23   in the absence of any agreement."  *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561,

24   572 (2005).  Here, Cody entered into a contract to purchase her SoulCycle class.

25   (*See* Compl. at ¶¶ 113, 126.)  Her "unjust enrichment" claim should be dismissed.

26        **H.**     **The Complaint Fails to State a Claim for Breach of the Implied**

27                **Covenant of Good Faith and Fair Dealing.**

28        A claim for breach of the implied covenant of good faith and fair dealing

-24-

should be dismissed where, as here, the challenged action is expressly permitted under the contract.  *See, e.g.*, *Baguer v. Spanish Broad. Sys., Inc.*, 2007 WL 2780390, at *11 (S.D.N.Y. Sept. 20, 2007) ("a defendant does not breach its duty of good faith and fair dealing by exercising its rights under the contract[].") (internal citations omitted); *Rosas v. Carnegie Mortg., LLC*, 2013 WL 791024, at *6 (C.D. Cal. Feb. 25, 2013) (claim for breach of the implied covenant of good faith and fair dealing dismissed where "defendants' conduct was expressly permitted by their contracts with the plaintiffs").  Here, the agreement between Cody and SoulCycle clearly disclosed its Classes' expiration dates—in the Terms, and on the website. SoulCycle did not breach an implied covenant of good faith and fair dealing by allowing the Class to expire per the Terms.

## VI.   CONCLUSION

This case is not about gift certificates.  Cody did not buy one.  Instead, she purchased a Class, for herself.  That Class entitled her to reserve a bike in a particular class at a specific place and time within a period of time.  Respectfully, this Court should reject her attempt to transform her purchase of a single Class, which Plaintiff obliquely alleges she was "unable" to take, into global violations of the federal gift certificate law, the gift certificate laws of seven states, California consumer protection laws, and various common law claims.  Her Complaint should be dismissed in its entirety.

Dated:  September 28, 2015          Respectfully submitted,

*/s/ Shirli F. Weiss*
_____
SHIRLI F. WEISS
KEARA M. GORDON
KATHERINE J. PAGE

Attorneys for Defendant
SoulCycle, Inc.