1  SHIRLI F. WEISS (Bar No. 79225)
   shirli.weiss@dlapiper.com
2  KATHERINE J. PAGE (Bar No. 259556)
   katherine.page@dlapiper.com
3  **DLA PIPER LLP (US)**
   401 B Street, Suite 1700
4  San Diego, CA  92101-4297
   Tel:  619.699.2700
5  Fax:  619.699.2701

6  KEARA M. GORDON *(pro hac vice)*
   keara.gordon@dlapiper.com
7  LAUREN F. GIZZI *(pro hac vice)*
   lauren.gizzigerard@dlapiper.com
8  **DLA PIPER LLP (US)**
   1251 Avenue of the Americas, 27th Floor
9  New York, NY  10020-1104
   Tel:  212.335.4500
10 Fax:  212.335.4501

11 Attorneys for Defendant
   SoulCycle Inc.
12

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15

16 RACHEL CODY and LINDSEY          CASE NO.  2:15-CV-06457-GHK-JEM
   KNOWLES, INDIVIDUALLY AND
17 ON BEHALF OF ALL OTHERS          **MEMORANDUM OF POINTS AND**
   SIMILARLY SITUATED,             **AUTHORITIES IN SUPPORT OF**
18                                  **MOTION OF DEFENDANT**
            Plaintiffs,            **SOULCYCLE INC. TO DISMISS**
19                                  **SECOND AMENDED CLASS**
        v.                        **ACTION COMPLAINT**
20
   SOULCYCLE INC.,                 **Fed. R. Civ. Proc. 12(b)(6) and 9(b)**
21
            Defendant.            Date:      April 11, 2016
22                                 Time:      9:30 a.m.
                                   Judge:     Hon. George H. King
23                                 Ctrm:      650

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ..................................................................................1

II.     STATEMENT OF FACTS ....................................................................4

        A.    SoulCycle's Sale of Gift Cards Is Distinct from its Sale of
              Classes ...........................................................................................4

        B.    Each Plaintiff Purchased a Single Class—For Her Own Use;
              There is No Allegation They Purchased the Class as a Gift or
              From Which to Infer that Classes are "Usually Gifted." ................5

        C.    "Series Certificates" Do Not Exist .................................................6

        D.    Classes Cannot be "Applied Toward" a Later "Purchase." ..............7

        E.    Classes Are Not Issued in a "Specified Amount." ..........................8

        F.    Expiration Dates are Clearly Stated ................................................8

III.    LEGAL STANDARD .............................................................................9

IV.     THE SAC FAILS TO STATE A CLAIM UNDER THE EFTA.................11

        A.    A Class Is Not an Electronic Promise in a "Specified Dollar
              Amount that Can Be Applied Toward [a] Purchase." ....................12

              1.    The "Purchase" Occurs When Money is Paid for the
                    Class; Classes Cannot be Used for a Second Later
                    "Purchase." ...........................................................................12

              2.    Classes/"Series Certificates" Cannot be "Applied Toward
                    the Purchase" of Anything, Including Rides ...........................13

        B.    SoulCycle Does Not Market Its Classes as Gift Certificates and
              SoulCycle's Electronic Promise to Redeem Classes Is
              Reloadable ....................................................................................16

V.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW..........18

        A.    The SAC Fails to State a Claim for Violation of California's
              Gift Certificate Statute ................................................................18

        B.    The SAC Fails to State a Claim for Violations of the UCL .............22

        C.    The FAC Fails to State a Claim for Declaratory Relief ...................25

VI.     DISMISSAL SHOULD BE WITH PREJUDICE ......................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*Alfi v. Nordstrom, Inc.*,
    2010 WL 5093434 (S.D. Cal. Dec. 8, 2010)..................................................18

*Am. Zurich Ins. Co. v. Country Villa Service Corp.*,
    2015 WL 4163008 (C.D. Cal. July 9, 2015).........................................19, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................10, 22

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999)............................................................................24, 25

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990)........................................................................25

*Cooper v. Twentieth Century Fox Home Entm't, LLC*,
    2012 WL 1021140 (C.D. Cal. Mar. 16, 2012).............................................18

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .......................................................................4

*Ferdik v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992) ....................................................................1, 9

*Genesis Healthcare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013)..................................................................................18

*Gonzalez v. Planned Parenthood of L.A.*,
    759 F.3d 1112 (9th Cir. 2014) ................................................................10, 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) .......................................................................9

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) .................................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page

*Hughes v. CorePower Yoga*,
2013 WL 1314456 (D. Minn. Mar. 28, 2103) ........................................ 13, 14, 15, 18

*In re Firearm Cases*,
126 Cal. App. 4th 959 (2005) ............................................................................ 24

*In re Ins. Installment Fee Cases*,
211 Cal. App. 4th 1395 (2012) ............................................................................ 23

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV*
*Television Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................ 2, 9

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012) ............................................................ 2, 10

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002) ...................................................................................... 23

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................................ 10

*Khatib v. Cnty. of Orange*,
639 F.3d 898 (9th Cir. 2011) ............................................................................ 15

*McCartney v. Gymboree Corp.*,
No. CGC-11-509314, 2013 WL 9745485 (Cal. Sup. Ct. Sept. 30, 2013) ..... 19, 25

*Migliaccio v. Midland Nat'l Life Ins. Co.*,
2007 WL 316873 (C.D. Cal. Jan. 30, 2007) ...................................................... 1, 10

*Moradi-Shalal v. Fireman's Fund Ins. Cos.*,
46 Cal. 3d 287 (1988) ...................................................................................... 19

*Moskal v. United States*,
498 U.S. 103 (1990) .......................................................................................... 15

*Ochs v. PacifiCare of Cal.*,
115 Cal. App. 4th 782 (2004) ............................................................................ 25

# TABLE OF AUTHORITIES
## (continued)

Page

*Reynolds v. Philip Morris USA, Inc.*,
  332 F. App'x 397 (9th Cir. 2009) .................................................3, 20, 21

*Sperling v. White*,
  30 F. Supp. 2d 1246 (C.D. Cal. 1998).................................................. 16

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001).............................................................. 17

*Stamas v. Cnty. of Madera*,
  2010 WL 289310 (E.D. Cal. Jan. 15, 2010).......................................... 2, 9

*Stanford Hosp. & Clinics v. Humana, Inc.*,
  2015 WL 5590793 (N.D. Cal. Sept. 23, 2015) ....................................... 19

*Synagogue v. United States*,
  482 F.3d 1058 (9th Cir. 2007) ............................................................ 20

*Turner v. Tierney*,
  2013 WL 2156264 (N.D. Cal. May 17, 2013).......................................... 2, 9

*United States v. Menasche*,
  348 U.S. 528 (1955)......................................................................... 15

*United States v. Milovanovic*,
  627 F.3d 405 (9th Cir. 2010)............................................................... 16

*Valadez-Lopez v. Chertoff*,
  656 F.3d 851 (9th Cir. 2011)................................................................ 1, 9

*Waul v. Circuit City Stores, Inc.*,
  Nos. A101414, A101792, 2004 WL 1535825 (Cal. Ct. App. 2004) ................... 20

*Wersal v. LivingSocial, Inc.*,
  2013 WL 3871434 (D. Minn. July 26, 2013)............................................ 18

*Williams v. Ralston*,
  2014 WL 3926990 (C.D. Cal. Aug. 12, 2014)............................................ 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

STATUTES

15 U.S.C. § 1693 ........................................................................................... 11

15 U.S.C. § 1693l-1 ....................................................................................... 11

15 U.S.C. § 1693l-1(a)(2)(B) ........................................................................ 11

15 U.S.C. § 1693l-1(a)(2)(D) ........................................................................ 12

15 U.S.C. § 1693l-1(a)(2)(D)(ii) ................................................................... 16

15 U.S.C. § 1693l-1(c)(1)–(2) ....................................................................... 11

Cal. Bus. & Prof. Code § 17200 ................................................................... 10

Cal. Civ. Code § 1749.5 .......................................................................... 19, 20

Cal. Civ. Code § 1749.45 .............................................................................. 20

OTHER AUTHORITIES

12 C.F.R. Pt. 205, Supp. I, Section 205.20, 20(a) ....................................... 11

## I.   INTRODUCTION

SoulCycle Inc. ("SoulCycle") is a rapidly growing fitness company that sells, among other things: (1) SoulCycle "gift cards" ("Gift Cards"); and (2) indoor group cycling classes ("Classes"). Gift Cards are clearly labeled as such on SoulCycle's website and have no expiration date; they can be purchased for a specified dollar amount, given as gifts, and then applied toward the purchase of Classes or SoulCycle branded merchandise. Classes, once purchased, allow a customer to reserve a bike in a specific location for a class scheduled at a specific time. Classes expire within a time period from purchase that is clearly disclosed on SoulCycle's website prior to purchase and thereafter.

Plaintiffs Rachel Cody ("Cody") and Lindsey Knowles ("Knowles") did not buy Gift Cards. Each bought a single Class for her personal use—not for another as a gift—which she then did not use before it expired by its terms.

This is Cody's third complaint. In response to SoulCycle's initial motion to dismiss, Cody abandoned various state law claims and filed a First Amended Complaint ("FAC"), in which she amended her allegations in an attempt to address the Complaint's deficiencies. The Court granted in part SoulCycle's motion to dismiss the FAC. Cody then filed the Second Amended Complaint ("SAC"), which eliminated claims the Court dismissed and tweaked and re-asserted her remaining claims. The SAC also asserts claims on behalf of a new plaintiff, Knowles.

The SAC supersedes the prior complaints. As more fully explained in Part III, "it is well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) (citations and internal quotations omitted); *accord Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). As a result, the "amended complaint is considered to be a new complaint, and defendants are entitled to move to dismiss plaintiffs' first amended complaint for failure to state a claim for relief." *Migliaccio v. Midland Nat'l Life Ins. Co.*, 2007 WL 316873, at *3 (C.D. Cal. Jan.

30, 2007)); *accord In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012).  Even where a court has previously ruled on a motion to dismiss, a defendant may move against a subsequent complaint, as a "motion to dismiss the FAC is not a motion for reconsideration of the Court's prior order, but, rather, a new motion addressing a newly filed complaint." *Turner v. Tierney*, 2013 WL 2156264, at *1 (N.D. Cal. May 17, 2013); *accord In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010); *Stamas v. Cnty. of Madera*, 2010 WL 289310, at *4 (E.D. Cal. Jan. 15, 2010)).  Cody's SAC supersedes her prior complaints, and the SAC asserts claims on behalf of a new named plaintiff, Knowles. SoulCycle thus may move to dismiss the SAC.  (*See* Part III.)

The SAC should be dismissed in its entirety.  First, sales of SoulCycle's Classes are not, in fact, the sale of "gift certificates," "gift cards" or "Series Certificates" under federal or California law.  Classes are just that:  Classes, and this Court should not accept as true an alleged system of  "Series Certificates" that judicial notice of the website would establish does not exist, particularly where Cody has, in fact, admitted that SoulCycle does not market "certificates."

Second, to fit within the definition of "gift certificate" in the Electronic Funds Transfer Act ("EFTA"), SoulCycle Classes must be "issued in a specified or denominated amount [of dollars] **that can be applied toward the purchase** of a specific good or service."  Thus, the statute clearly contemplates two purchases: the purchase of a gift certificate, which is then applied toward a second purchase (using the gift certificate) of a good or service.  With the purchase of Classes, there are not two purchases.  The customer purchases a Class; there is no second purchase using the Class as payment.  Classes are not and cannot be **applied toward the purchase** of anything.  Once purchased, Classes merely entitle the purchaser to reserve a bike at a specific SoulCycle studio at a specific time with a specific instructor; no further "purchase" is made, and no additional money changes hands.

1    Not only is there no subsequent "purchase," but Classes do not have a cash
2    value that can be "applied towards" purchases.  As this Court found in its opinion
3    on SoulCycle's Motion to Dismiss the FAC, while Classes may be used in regions
4    where they cost an equal or lesser amount, "classes of less value cannot be
5    redeemed for classes of greater value **or even applied towards the purchase of a**
6    **greater value class**."  (Dkt. No. 30, at 2 (emphasis added).)  The Plaintiffs'
7    Classes, which cost $30 each, cannot be **applied** as a $30 "credit" **towards the**
8    **purchase** of a New York City Class, which costs $34, and cannot be **applied**
9    **toward the purchase** of a lower priced class, or toward the purchase of
10   merchandise.  As such, Classes are not "gift certificates" governed by federal law,
11   and respectfully, the Court's prior opinion erred in focusing upon the language "up
12   to" a stated amount without giving legal effect to the statutory language:  "applied
13   toward the purchase."  (*See* Part IV.A.)

14   Third, even if Classes were "gift certificates" (which they are not), they are
15   exempt from federal law because: (a) Plaintiffs concede that they are not marketed
16   as such, and (b) they are "reloadable."  (*See* Part IV.B.)

17   Fourth, the SAC does not state a claim under California's gift certificate
18   statute because no private right of action exists under that statute.  Even if there
19   were (which there is not), the SAC does not allege that either Plaintiff purchased
20   her Class for the purpose of giving it as a gift, but instead alleges the contrary—that
21   each personally bought the Class, could not personally use it before the expiration
22   date, and then personally tried to use the Class post expiration, but allegedly could
23   not.  In its prior opinion, the Court noted that one has an ability to book up to five
24   bikes on her account, and applied the definition of "gift certificates" from a Ninth
25   Circuit case, *Reynolds v. Philip Morris USA, Inc.*, 332 F. App'x 397, 398 (9th Cir.
26   2009), which quoted from the American Heritage Dictionary of the English
27   Language 742 (4th ed. 2000).  (Dkt. No. 30, at 12–13.)  Specifically, the Court held
28   that "there is at least a reasonable inference that SoulCycle class purchases" are gift

1   certificates because they are "usually gifted." (Dkt. No. 30 at 13.)  As

2   demonstrated in Section V, there are no facts alleged in the SAC to support an

3   inference Classes are "usually gifted."  Rather, the website expressly provides that

4   Classes "cannot be sold or transferred."  (*See* Part V.A.)

5   Fifth, because the federal and California gift card statutes were not intended

6   to cover, and do not cover, Classes, Plaintiffs' remaining claims under California

7   consumer laws fail.  (*See* Part V.B–C.)  As a result, SoulCycle's sale of Classes is

8   not subject to federal and California gift card laws and does not violate California's

9   consumer laws.  The SAC should be dismissed with prejudice.

10  **II.   STATEMENT OF FACTS**

11  **A.   SoulCycle's Sale of Gift Cards Is Distinct from its Sale of Classes.**

12  SoulCycle offers an immersive and intense physical fitness experience

13  through group cycling classes led by its trained instructors at its studios.  (*See* SAC

14  ¶ 34.)  To purchase Classes, a customer must first open an account.  To do so, a

15  customer clicks a bar, affirmatively signifying her agreement to abide by

16  SoulCycle's Terms and Conditions ("Terms").  (*See* Ex. 1, www.soul-

17  cycle.com/legal ("This policy governs your use of the SoulCycle website . . . and

18  the SoulCycle Mobile Application (the 'App'); Ex. 2, www.soul-cycle.com

19  (demonstrating that one must affirmatively agree to the Terms).)[1]

20  SoulCycle sells Gift Cards, Classes, and merchandise (such as bikes and

21  workout clothing).  Unlike gyms where customers buy a membership usable for a

22  limited period of time, SoulCycle has a "pay-per-class model."  (Ex. 3, SoulCycle

23  Form S-1, of which the Court has previously taken judicial notice, at 4, F-8.)

24  Classes can be purchased individually, or in a series of Classes online at

25  _____

26  [1] As discussed more fully in SoulCycle's Request for Judicial Notice, filed with this
    motion, when considering this motion to dismiss, this Court may take judicial notice
27  of and consider certain documents outside of the pleadings without converting the
    Rule 12(b)(6) motion into one for summary judgment.  *Davis v. HSBC Bank Nev.,*
28  *N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

1  soul-cycle.com, using the SoulCycle web application ("App"), or in a studio.  (*Id.* at

2  70, F-8.)  A series is defined as a "package of classes" or "multiple classes."  (*Id.* at

3  F-8; *see also* Ex. 1, www.soul-cycle.com/legal, at Reservation/Changes.)

4        Separate and apart from its sale of Classes, SoulCycle sells actual Gift Cards.

5  (Ex. 4, www.soul-cycle.com/shop.)  To purchase a Gift Card, a customer clicks on

6  the word "Shop" and is taken to a list of offerings:  (1) Gift Card; (2) SoulCycle

7  Bike; (3) Buy Classes; and (4) (a list of) SoulCycle clothing and accessories.  If the

8  customer clicks on "Gift Card," she can choose the specified dollar amount of the

9  gift card, as well as provide the recipient's name and an optional message, and have

10  the Gift Card e-mailed directly to the designated recipient.  (*Id.*)  Gift Cards have no

11  expiration date and can be used toward the purchase of Classes or SoulCycle

12  merchandise.  Once a Gift Card is purchased and e-mailed to the recipient, it

13  becomes the property of the recipient, and the purchaser cannot take it back.

14        In contrast, if a customer wants to buy a Class, she clicks a yellow box in the

15  upper right-hand corner of the website's main page that says, "find/buy classes."

16  (SAC ¶ 5 Fig. 1.)  She then is taken to a different screen from the Gift Card screen.

17  (*Compare* SAC ¶ 5 Fig. 1 *with* Ex. 4.)  Figures 1 and 3 of the SAC depict the web

18  screen a customer sees when buying a Class in Southern California.  The customer

19  has the option to buy a "first time ride" Class, a single Class, or multiple Classes

20  that are offered at a reduced price relative to single rides; the extent of the reduction

21  increases with the number of classes purchased.   The prices of Classes differ

22  depending on the location of the desired class; for example, the prices of Classes

23  taken in New York City are higher than those in California.  (*See* SAC ¶ 56.)

24     **B.     Each Plaintiff Purchased a Single Class—For Her Own Use; There**

25               **is No Allegation They Purchased the Class as a Gift or From**

26               **Which to Infer that Classes are "Usually Gifted."**

27        Neither Plaintiff alleges that she purchased her single Class as a gift or with

28  the intention to book a bike for someone else.  To the contrary, both allege that they

bought a Class, were allegedly unable personally to use it before the expiration date, and allegedly then tried personally to use it after the expiration date, but were unable to do so.  (SAC ¶¶ 8, 13, 14, 16, 17, 23, 24, 27, 28, 30.)  Although the SAC alleges that it is theoretically possible to buy five Classes and use them to book five bikes on one's own account for friends (SAC ¶ 34), there is no allegation in the SAC that Cody and Knowles intended to use their single Class to book a bike for anyone other than themselves, and, indeed, rides "cannot be sold or transferred." (Ex. 5, FAQs at "How does the Tiered Pricing Program Work?".)  While one can book up to five bikes for friends, those Classes remain in the purchaser's account. She cannot transfer them to another rider's account, and she never gives up ownership and control over those Classes.  She is free to cancel the reservations at any time—unlike gifts that, once given, cannot be taken back.  Moreover, there are no allegations regarding the frequency with which Classes are allegedly given as gifts, much less that they are "usually gifted."

**C.    "Series Certificates" Do Not Exist.**

SoulCycle sells "Classes" that cost different amounts depending on where they will be used, not "Series Certificates" with dollar values attached to them. (*See* SAC ¶ 40 Fig. 5 (showing Class available to use to reserve a bike, and that there is 1 "Soul30" Class, not a $30 "Series Certificate" remaining).)  Indeed, the words "certificate" and the term "Series Certificate" do not appear on soul-cycle.com or the App.  The terms "Class" or "Classes" however, appear 16 times in the screen shot shown in Figure 1 of the SAC and consistently throughout.

The SAC includes screen shots of the webpage on which one buys Classes (Figures 1, 3, 4, and 6), the screen shot at purchase (Figure 4), and the page where one's Classes are displayed (Figures 2, 5 and 6).  The actual screen shots—and SoulCycle's website itself—do not contain the words "Series Certificate."  Rather, Plaintiffs superimposed large, bright yellow arrows of their own creation as an overlay onto those screen shots, containing words that do not exist on SoulCycle's

1    website, but are Plaintiffs' mischaracterizations or argument. That Plaintiffs

2    continue to cling to their fabricated terminology is particularly troubling given

3    Cody's concession that she "does not dispute that SoulCycle does not market its

4    gift certificates as 'gifts' or 'certificates.'" (Dkt. No. 25 at 19 n.1.)

5            **D.**      **Classes Cannot be "Applied Toward" a Later "Purchase."**

6        When a customer purchases a Class, this is the point of sale: the "purchase."

7    There is no second purchase using the Class. As Figure 4 demonstrates, one selects

8    the number of classes she wishes to purchase, and she pays the associated cost at

9    that time. Plaintiffs each paid $30 at "checkout" and obtained one Class.

10        Once a customer buys a Class, she can then reserve a bike in a specific class

11    (sometimes referred to as a "ride" or "rides") at a specific date and time. At noon

12    on Mondays, customers may reserve their rides for the upcoming week. (*See* SAC

13    ¶ 50.) To reserve a ride, the customer chooses a location where she wants to ride,

14    and the website shows the schedule of classes for that studio during that week. (Ex.

15    6, screen shot of bike booking page.) One then selects a class at a particular date

16    and time, and clicks on the button "reserve." Then, one sees essentially a map of

17    the studio, with each bike represented as a circle with a bike number. (*Id.*) To

18    reserve a bike, one clicks on the circle indicating the bike she wants, by bike

19    number, and the reservation is complete. At that time, no money is exchanged for

20    the reservation. (*Id.*) Nothing is purchased, as the purchase has already transpired.

21        Customers can ride at any of the SoulCycle studios in the region for which

22    they bought the Class. SoulCycle also allows for "Class Transfer[s]" from one

23    location to another in certain circumstances. (SAC ¶ 56.) Under the Class Transfer

24    option, "classes may be redeemed for rides at any SoulCycle location that has a per

25    class price that is equal to, or lesser than, the class or classes you have purchased."

26    (Ex. 1, at Class Transfer Disclaimer.) But as the Court noted in its prior opinion,

27    "classes of lesser value cannot be redeemed for classes of greater value **or even**

28    **applied towards the purchase of a greater value class.**" (Dkt. No. 30, at 2

-7-

(emphasis added).)  So, for example, Plaintiffs cannot apply the Class they purchased for use in Southern California for $30 as a $30 credit towards the purchase of a Class in New York City, where a Class costs $34, and pay the $4 price differential.  (*Id.*)  Conversely, a customer who bought a Class in New York City that cost $34 can use it to reserve a bike in Southern California, where classes cost $30, but she cannot apply the Class toward a new purchase and receive a $4 refund or credit.  Classes cannot be redeemed for cash.  (Ex. 5, FAQs.)  The SAC does not allege that either Plaintiff attempted to use the Class Transfer Feature.

**E.     Classes Are Not Issued in a "Specified Amount."**

Once a Class is purchased, a customer's account tracks both the number of Classes purchased and the Classes remaining to be used over time, which the customer can view.  (SAC ¶ 40 Figs. 5 & 6.)  While the account may reference "1 X Soul30," that 30 does not necessarily indicate what the customer paid for the Class, given the discount applied when a customer is buying 5, 10, 20, or 30 classes at once[2] (SAC ¶ 39 Fig. 4), and it does not denote that the customer has $30 in credit that she may **apply toward the purchase** of anything.  The customer's account depicts the total number of Classes remaining, through a number in a yellow circle at the top of the page—not a dollar figure or dollar credit to be spent.  (*Id.*)  Once a customer books a bike, the number of Classes in the account is simply reduced by one.

**F.     Expiration Dates are Clearly Stated.**

The expiration dates for each Class or series of Classes are clearly stated before the purchase is made, right below the number of Classes that the customer is purchasing and the cost, and right above the "select" button that the customer clicks to buy the Class.  (SAC ¶ 5 Fig. 1.)  For example, a single Class, purchased for use

---

[2] In Southern California, one class is $30, five classes are $145 (or $29 each), ten classes are $280 (or $28 each), 20 classes are $540 (or $27 each) and 30 classes are $780 (or $26 each).  (SAC, Figure 1.)

in Southern California, costs $30, and right under that amount, the website states, "expires in 30 days." (*Id.*)  The fact that the Classes expire is also disclosed in the Terms to which customers agree when opening their accounts, which provide: "You should be aware that classes and series expire . . . ." (Ex. 1.)  As one might expect, the more Classes a customer buys, the longer she has to use them.  For example, a customer has 30 days to use one Class, but three months to use ten Classes, nine months to use 20, and a year to use 30.  (SAC ¶ 36 Fig. 3.)  As is of course undisputed, no one is required to buy any classes; there is no "membership" nor membership obligations, such as minimum purchases, of anything.

## III.   LEGAL STANDARD

This motion to dismiss is proper because "it is well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent."  *Valadez-Lopez*, 656 F.3d at 857; *accord Ferdik*, 963 F.2d at 1262 ("[A]fter amendment the original pleading no longer performs any function and is treated thereafter as non-existent."); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Williams v. Ralston*, 2014 WL 3926990, at *7 (C.D. Cal. Aug. 12, 2014).

Even where, as here, a court has previously ruled on a motion to dismiss, a defendant may move against a subsequent complaint, as a "motion to dismiss the FAC is not a motion for reconsideration of the Court's prior order, but, rather, a new motion addressing a newly filed complaint."  *Turner*, 2013 WL 2156264, at *1 (denying motion for sanctions against defendant for filing a motion to dismiss the amended complaint in which it repeated arguments already presented to the Court because the motion to dismiss was procedurally proper); *accord In re Sony*, 758 F. Supp. 2d at 1098 (amended complaint "superseded their previous complaint, and [defendant] was therefore free to move again for dismissal."); *Stamas*, 2010 WL 289310, at *4 (permitting motion to dismiss amended complaint; "an amended

1  pleading is a new round of pleadings . . . [and] is subject to the same challenges as

2  the original (i.e., motion to dismiss, to strike, for more definite statement).").

3      Indeed, courts in the Ninth Circuit "have permitted defendants moving to

4  dismiss an amended complaint to make arguments previously made and to raise

5  new arguments that were previously available." *In re WellPoint,* 903 F. Supp. 2d at

6  893; *Migliaccio,* 2007 WL 316873, at *2–3. *Migliaccio* specifically rejected the

7  argument that the defendants were "estopped from rehashing earlier arguments

8  presented to and considered by the Court" and held that "the first amended

9  complaint is considered to be a new complaint, and defendants are entitled to move

10  to dismiss plaintiffs' first amended complaint for failure to state a claim for relief."

11  2007 WL 316873, at *2–3. Similarly, in *WellPoint,* the Court found that "[h]aving

12  chosen to amend their complaint in lieu of proceeding with their remaining claims,

13  the [amended complaint] supersedes the original and Defendants are not held to the

14  reconsideration standards." 903 F. Supp. 2d at 894. So too here.

15      "To survive a motion to dismiss, a complaint must contain sufficient factual

16  matter, accepted as true, to state a claim to relief that is plausible on its face."

17  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted). "[A]

18  formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*

19  *v. Twombly,* 550 U.S. 544, 555 (2007). A claim is plausible "when the plaintiff

20  pleads factual content that allows the court to draw the reasonable inference that the

21  defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The Court

22  also need not accept assertions contradicted by judicially noticed facts. *Gonzalez v.*

23  *Planned Parenthood of L.A.,* 759 F.3d 1112, 1115 (9th Cir. 2014).

24      Federal Rule of Civil Procedure Rule 9(b)'s heightened pleading requirement

25  applies to claims under the California Unfair Competition Law, Cal. Bus. & Prof.

26  Code § 17200 *et seq.* ("UCL") to the extent they allege fraudulent conduct. *Kearns*

27  *v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009).

28  /////

## IV.   THE SAC FAILS TO STATE A CLAIM UNDER THE EFTA

Plaintiffs fail to state a claim for violation of the EFTA, 15 U.S.C. § 1693, *et seq.*, as amended by the Credit Card Accountability Responsibility and Disclosure Act of 2009 (the "CARD Act"), 15 U.S.C. § 1693l-1.  The EFTA prohibits the issuance of any gift certificate with an expiration date of less than five years.  15 U.S.C. § 1693l-1(c)(1)–(2).  The EFTA defines "gift certificate" as "an electronic promise that is:  (i) redeemable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo; (ii) issued in a specified amount that may not be increased or reloaded; (iii) purchased on a prepaid basis in exchange for payment; and (iv) honored upon presentation by such single merchant or affiliated group of merchants for goods or services."  15 U.S.C. § 1693l-1(a)(2)(B).  As this Court previously noted, while the EFTA does not define the term "specified amount," it may look to the Official Staff Interpretations of Regulation E for guidance.  (Dkt. No. 30 at 4.)  Those Interpretations state:

> Certain cards, codes, or other devices may be redeemable upon presentation for a specific good or service, or "experience," such as a spa treatment, hotel stay, or airline flight. . . . Such cards, codes, or other devices generally are not subject to the requirements of this section because they are not issued to a consumer "in a specified amount" as required under the definitions of "gift certificate," "store gift card," or "general-use prepaid card."  However, if the card, code, or other device is issued in a specified or denominated amount *that can be applied toward the purchase* of a specific good or service, such as a certificate or card redeemable for a spa treatment up to $50, the card, code, or other device is subject to this section.

12 C.F.R. Pt. 205, Supp. I, Section 205.20, 20(a) Definitions, ¶ 3 at 183–84 (emphasis added).  The EFTA provides exemptions from its provisions for "gift certificates" that are "(ii) reloadable and not marketed or labeled as a gift card or

gift certificate . . .” *Id.* at § 1693l-1(a)(2)(D).

As explained below, the EFTA is not applicable because:  (A) Classes are not issued in a specified amount that ***can be applied toward the purchase*** of anything; and (B) customers’ accounts reflecting the purchased Classes may be increased or reloaded and are not marketed or labeled as gift cards or gift certificates.

### A.    A Class Is Not an Electronic Promise in a “Specified Dollar Amount that Can Be Applied Toward [a] Purchase.”

Devices redeemable for a service or experience are “not subject” to the EFTA because “they are not issued to a consumer ‘in a specified amount.’”  *Id.* at Supp. 1.  Where the device “is issued in a specified or denominated amount that can be applied toward the purchase” of a good or service, however, they can be subject to the EFTA.  *Id.*  Here, Classes cannot be “applied toward the purchase” of anything and thus, Classes are not subject to the EFTA.

The statute and Regulation E contemplate two purchase events: the purchase of a gift card, and then a later purchase of a good or service that the gift card can be “applied toward.” An example is where “a spa service up to $50” is applied towards a massage costing $120, and the customer then only pays the differential of $70.

Here, the purchase of a Class is not the initial purchase of a specified dollar amount to be *applied toward* a second later purchase for two reasons:  (1) There is no second purchase; Classes are not used to “purchase” anything—the purchase was complete when Plaintiffs paid for their Classes; and (2) even assuming there is some later “purchase” (which there is not), Classes cannot be “applied toward” the purchase of a more expensive specified good or service, as required by the EFTA.

### 1.    The “Purchase” Occurs When Money is Paid for the Class; Classes Cannot be Used for a Second Later “Purchase.”

Neither Cody nor Knowles can use her Class, or what they erroneously term their “Series Certificates,” toward “the purchase” of anything.  Both allege that they were “required . . . to pay $30.00 in exchange for a Series Certificate . . . .”  (SAC

-12-

¶¶ 12, 23.)  Both specifically allege that they in fact "purchased a Series Certificate from SoulCycle and made payment of $30.00 to SoulCycle through SoulCycle's website."  (SAC ¶¶ 12, 23.)  Indeed, adopting the Plaintiffs' terminology for the sake of argument only, they repeatedly admit that they each "purchased" the "Series Certificate" when they paid their $30.  (*See, e.g.*, SAC ¶¶ 5 (requirement "to purchase" "Series Certificates"); 12, 13 (Cody "purchased" "Series Certificates"); 14–15 (same); 21 (Cody paid money for the "Series Certificate"); 23, 24 (Knowles "purchased" "Series Certificates"); 25–26 (same); 31 (Knowles paid money for the "Series Certificate"); 32 (same); 36 ("Purchasers of SoulCycle exercise sessions are required to purchase a Series Certificate that can then be redeemed for exercise sessions of equal or lesser value"); 37 ("buying" a "Series Certificate" when "the customer gives SoulCycle an amount of money"); 38 ("purchase Series Certificates"); 39 ("purchases a Series Certificate . . . ."); 41 ("purchaser of a Series Certificate"); 44–45 (same); 61 (purchase).)

At the time of purchase, the "Series Certificate" was paid for and placed into Plaintiffs' accounts.  (SAC ¶¶ 39–41 Figs. 4, 5 & 6.)  Plaintiffs could then use the "Series Certificate" to reserve a bike in a particular SoulCycle studio at a specific place and time.  When a customer reserves a bike in a specific class, all she does is click on the circle representing the bike number.  (Ex. 6.)  No prices are displayed when the customer reserves her bike, no money is paid, and Plaintiffs do not allege otherwise.  Because the bike is already paid for, there is no second "purchase." (*Id.*)  Here, as in *Hughes v. CorePower Yoga*, 2013 WL 1314456 (D. Minn. Mar. 28, 2103), discussed below, the Class "reflects a purchase already made."

## 2. Classes/"Series Certificates" Cannot be "Applied Toward the Purchase" of Anything, Including Rides.

For the sale of Classes to be a "gift certificate" under the EFTA, a SoulCycle customer must be able to "**apply**" her $30 class "**toward**" the "purchase" of a "specific good or service."  As the Court noted in its prior opinion, however,

"classes of lesser value cannot be redeemed for classes of greater value **or even applied towards the purchase of a greater value class.**" (Dkt. No. 30, at 2 (emphasis added).)

Here, it is undisputed that Plaintiffs cannot use the Class they purchased for $30 and **apply** it **toward** the **purchase** of a more expensive class.  (SAC ¶ 57 (Classes can only be used to book a ride of "equal or lesser value"); and Fig.7; Dkt. No. 30 at 5 ("purchasers of classes are not entitled to attend classes in a different region of greater value").)  For example, Plaintiffs cannot **apply** their $30 Class **toward** the **purchase** of a $40 class in the Hamptons and pay the additional $10, which they could do if they had bought a gift certificate in the "specified amount" of $30.  Plaintiffs cannot "apply" the Classes to **purchase** rides of equal or lesser value and obtain a refund of any differential.  As a result, Classes are not gift certificates as defined under the EFTA.

While the only claims at issue here pertain to two Classes purchased for $30 in California,[3] if "Series Certificates" did exist, and the system worked as Plaintiffs posit, then a SoulCycle customer who purchased 30 classes in the Hamptons, priced at $40 each, for $1,020 in total, would purportedly have a "Series Certificate" for $1,020 that she could use to *apply towards purchases* of classes in other regions of the country.  If the system worked as Plaintiffs claim, in this hypothetical, the customer would have $1,020 as her account balance to use to apply towards the purchase of 34 Los Angeles classes ($1,020 / $30 = 34).  Plaintiff Cody has conceded, however, that this is not the case.  (Dkt. No. 25, at 15.)  In reality, the

---

[3]  The fact that SoulCycle sells Classes for a specific amount of money does not establish that they are issued in a "specific amount."  In *Hughes*, the plaintiff paid money—$249 for a Class Pack redeemable for 20 yoga classes and $75 for a Class Pack redeemable for five yoga classes.  2103 WL 1314456, at *1.  Nevertheless, the Court held that the "Class Packs" "reflect[] a purchase already made," and are "redeemable for [Classes] and not for a 'specific amount.'"  *Id.* at *4, 6.  Notwithstanding the dollar cost associated with the purchase of classes (which will always be the case), the *Hughes* Court found that the ". . . Class Pack cards are not store gift cards [under the EFTA] because they are redeemable for yoga classes and not for a 'specific amount,' such as a $50 spa card."  *Id.* at *6.  So too here.

customer's money has already been converted into Classes, and the class transfer feature allows her to transfer these 30 Hamptons classes only to classes of "equal or lesser value," which is very different from the gift certificate concept of credit that is "applied toward the purchase" of a good or service.

*Hughes'* reasoning compels a finding that the EFTA is not applicable.  In *Hughes*, the defendant sold prepaid yoga classes in packages of five, ten, and 20 that it termed "Class Packs," which had associated costs and expiration dates.  2013 WL 1314456, at *1.  Class Pack sessions were redeemed by scanning one's card, after which the computer retrieved the records and deducted the class.  *Id.*, at *1.  In dismissing the plaintiff's EFTA claim, the Court reviewed the Interpretation of Regulation E, and held that the Class Pack cards were redeemable for a specific good, service, or experience (yoga classes), not for a "specified [dollar] amount" *applied toward* the purchase of such good, service or experience.  *Id.* at *6 (emphasis added) (internal citations omitted).

The same analysis applies here and the same conclusion follows.  SoulCycle sells Classes, which are advertised as, and in fact are, the sale of an "experience" (similar to yoga classes), usable at specified SoulCycle studios.  Classes are neither advertised nor sold as "certificates" nor "Series Certificates" and cannot be **applied toward the purchase** of a specific good, service, or experience.

Defendant respectfully submits that the Court, in discussing the *Hughes* Court's holding in its prior opinion, erroneously focused upon the phrase "up to" to the exclusion of the statutory language "applied toward the purchase of" a specific good or service.  It is a well-established tenet of statutory construction that every word, clause, and sentence of a statute must be given effect.  *Moskal v. United States*, 498 U.S. 103, 104 (1990); *United States v. Menasche*, 348 U.S. 528, 538–39 (1955); *Khatib v. Cnty. of Orange*, 639 F.3d 898, 904 (9th Cir. 2011).  When interpreting a statute, courts must assume that every word or part is significant and placed with intent; thus, all words must be considered in the context of the statute

-15-

as a whole.  *See United States v. Milovanovic*, 627 F.3d 405, 412 (9th Cir. 2010) ("every word should be accorded meaning"), *on reh'g en banc*, 678 F.3d 713 (9th Cir. 2012); *Sperling v. White*, 30 F. Supp. 2d 1246, 1249 (C.D. Cal. 1998) (courts must "constru[e] the provisions of the entire law, including its object and policy") (citations and internal quotations omitted).

Respectfully, the Court erred in finding that Classes were within the EFTA's reach because they "can only be used for classes equal to or less than" or "up to a certain class value."  Rather, Classes do not fit within the statute because they cannot be "**applied toward the purchase**" of anything; less expensive classes cannot be "**applied toward the purchase**" of more expensive classes, and more expensive classes cannot be **applied toward the purchase** of less expensive classes, with a resulting credit or refund.  (Dkt. No. 30 at 5.)  Under the EFTA, what is determinative is whether SoulCycle's classes are issued in a "specified amount . . . that can be **applied toward the purchase** of a specific good or service" (emphasis added) and the Court's prior decision does not give weight to that statutory language.  As this Court noted in it prior opinion, "classes of lesser value cannot be redeemed for classes of greater value or even **applied toward the purchase of a greater value class.**"  (*Id.* at 2.)  Because each Plaintiff cannot "apply" her Class "toward" a "purchase" of a SoulCycle class, but can only redeem it for a bike in certain locations, the Class is not a "gift certificate" under the EFTA.

**B.     SoulCycle Does Not Market Its Classes as Gift Certificates and SoulCycle's Electronic Promise to Redeem Classes Is Reloadable.**

Even if Classes were "gift certificates" under the EFTA (which they are not), Classes are exempt from the EFTA based on the exception for electronic promises that are "reloadable and not marketed or labeled as a gift card or gift certificate." 15 U.S.C. § 1693l-1(a)(2)(D)(ii).

First, Cody "expressly concede[d]" that SoulCycle's Classes are "not marketed or labeled" as gift cards or gift certificates.  (Dkt. No. 30, citing Dkt. No.

-16-

25, at 19 n.1 ("Plaintiff does not dispute that SoulCycle does not market its gift certificates as 'gifts' or 'certificates'"; presumably, Cody meant to reference Classes).)

Second, SoulCycle's electronic promise to redeem purchased Classes is "reloadable."  In the Court's prior opinion, it found that the "Series Certificates," as pleaded in the FAC, were the "electronic promise" rather than the customer account.  SoulCycle respectfully requests that the Court reconsider that conclusion because there is no such thing as a "Series Certificate."  There are only Classes, and Cody conceded that "SoulCycle does not market [Classes] as . . . certificates." (Dkt. No. 30 at 5.)  This Court is not required to accept as true the "Series Certificate" concept (which Plaintiffs use to suggest a second purchase is necessary), because the SAC itself and judicially noticeable evidence demonstrate it does not exist.  *See, e.g.*, *Gonzalez*, 759 F.3d at 1115 (affirming dismissal where judicially noticed letters contradicted allegations of the complaint); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (affirming dismissal of claim where arbitration award attached to the complaint undercut the plaintiff's claims by demonstrating that disciplinary action was taken as a result of his misconduct, rather than his race).

The SAC itself establishes that SoulCycle does not sell "Series Certificates"—in each of the screen shots of SoulCycle's website included in the SAC, the words "Series Certificate" do not appear—other than where Plaintiffs misleadingly superimposed the words.  The Court can also take judicial notice of "clean" versions of those web pages, which are attached as Exhibit 7, and which demonstrate that there is no such thing as a "Series Certificate."

Here, it is the customer's *account* showing the Classes that is the electronic promise reloadable with additional *Classes*—not a fictitious "Series Certificate."  A SoulCycle customer who logs into her SoulCycle account can: view the Classes she has purchased—for example, the "1" Class in the yellow circle on Figure 6 of the

DLA PIPER LLP (US)

1    SAC; use the Class to reserve a ride; review her account history; and purchase

2    additional Classes.  (*See* SAC ¶¶ 36–41.)

3          Even if the Court views the "Series Certificates" as the "electronic promise,"

4    they are reloadable in the same manner as the Class Packs at issue in *Hughes*.  In

5    *Hughes*, while the complaint conceded that the Class Packs were reloadable, at the

6    hearing on the motion to dismiss in that case, the plaintiff argued that they were

7    not.  2013 WL 1314456, at *1, *6 n. 7.  As a result, the Court was required to

8    decide the issue.  There, the plaintiff bought two yoga packages, "Class Packs."

9    His "Class Packs" were stored on a physical card, which recorded his class

10   packages, and how many classes remained in his account.  *Id.*  When the plaintiff

11   purchased the second yoga package, it did not serve to "reload" or extend the

12   expiration date on the first package.  *Id.* at *1.  The Court did not require that the

13   first Class Pack be reloaded.  Instead, it focused on the reloadable nature of the

14   *account* and found that the account was reloadable.  The same is true here.

15         Plaintiffs' EFTA claims must be dismissed.[4]

16   **V.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW**

17         **A.    The SAC Fails to State a Claim for Violation of California's Gift**

18                 **Certificate Statute.**

19         As a threshold matter, California's gift certificate statute does not state that

20   there is a private cause of action.  The one California court that has decided the

21   issue has recognized that no private right of action exists under California's gift

---

23   [4] Moreover, Plaintiffs lack standing to sue.  Article III standing must exist at all times
     throughout the lawsuit.  *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013);
24   *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013).  When Cody
     filed the FAC and the SAC, SoulCycle had already told Cody that it "would be happy
25   to allow [her] to use her expired class," and it offered to book a bike for her.  And,
     despite her knowledge of the offer to Cody, there is no allegation that Knowles asked
26   to use her expired class and was refused.  As a result, Plaintiffs cannot allege that
     SoulCycle enforced the allegedly improper expiration dates, and they lack standing.
27   *See Cooper v. Twentieth Century Fox Home Entm't, LLC*, 2012 WL 1021140, at *1–
     2 (C.D. Cal. Mar. 16, 2012); *Alfi v. Nordstrom, Inc.*, 2010 WL 5093434, at *5 (S.D.
28   Cal. Dec. 8, 2010); *Wersal v. LivingSocial, Inc.*, 2013 WL 3871434, at *2 (D. Minn.
     July 26, 2013).

card law.  (*See* Ex. 8, *McCartney v. Gymboree Corp.*, No. CGC-11-509314, 2013 WL 9745485, at * 11 (Cal. Sup. Ct. Sept. 30, 2013) (finding no private right of action under Cal. Civ. Code § 1749.5)).[5]  "A violation of a state statute does not necessarily give rise to a private cause of action." *Stanford Hosp. & Clinics v. Humana, Inc.*, 2015 WL 5590793, at *8 (N.D. Cal. Sept. 23, 2015) (quoting *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (2010)).  Instead, whether a party has a right to sue depends on whether the legislature has manifested an intent to create such a private cause of action under the statute. *Id.*  Where the legislature has expressed no intent on whether a statute contains a private right of action, there is no private right of action.  *See Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 305 (1988).  Neither the language of the California gift card statute nor the legislative history manifest an intent to create a private right of action to enforce the statute.  *See* Cal. Civ. Code § 1749.5; Ex. 8, *McCartney v. Gymboree Corp.*, 2013 WL 9745485, at * 11.  As a result, there is no private right of action under Section 1749.5 and the claim should be dismissed.

Even assuming Plaintiffs have a right to pursue a claim, the SAC fails to state one because Classes are not gift certificates.  California's gift certificate statute does not define the term "gift certificate" except to state that it "includes gift cards" and excludes "any gift card usable with multiple sellers of goods and services," provided disclosures are made. *See* Cal. Civ. Code § 1749.45.  When interpreting a

---

[5] While district courts in California "generally decline to consider an unpublished California decision when there is other published persuasive or binding authority on which to rely[,] . . . when there is no other binding authority on which to rely, federal courts may consider unpublished California opinions as persuasive authority." *Am. Zurich Ins. Co. v. Country Villa Service Corp.*, 2015 WL 4163008, at *12 n.24 (C.D. Cal. July 9, 2015) (citing *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003)) (stating that the Court "may consider unpublished state decisions, even though such opinions have no precedential value" and that unpublished opinions, "while certainly not dispositive of how the California Supreme Court would rule," may still "lend[ ] support" to a certain position regarding California law).)  Because our research has not located any other authority deciding this issue, it is proper for the Court to consider this unpublished decision in its analysis.

1    statute, undefined terms are given their ordinary meanings.  *See Synagogue v.*

2    *United States*, 482 F.3d 1058, 1061–62 (9th Cir. 2007).

3        In an unpublished opinion, the California Court of Appeal held that

4    merchandise cards issued to its customers who made certain purchases were not

5    "gift certificates" under California law.[6]  (Ex. 9, *Waul v. Circuit City Stores, Inc.*,

6    Nos. A101414, A101792, 2004 WL 1535825 (Cal. Ct. App. 2004) (unpublished).)

7    In interpreting Section 1749.5, the Court held that "it is clear that the section

8    contemplates a 'gift'; i.e., **a certificate or card purchased or obtained by**

9    **someone for the purpose of giving [them] to someone else**."  *Id.* at *3; *accord*

10   *Reynolds*, 332 F. App'x at 398 (9th Cir. 2009) (quoting Am. Heritage Dictionary of

11   the English Language 742 (4th ed. 2000) (defining "gift certificate" as a

12   "certificate, usually presented as a gift, that entitles the recipient to select

13   merchandise of an indicated cash value at a commercial establishment."));

14   www.oxforddictionaries.com (defining "gift certificate" as "[a] voucher given as a

15   present that is exchangeable for a specified cash value of goods or services from a

16   particular place of business"); www.thefreedictionary.com (defining "gift

17   certificate" as "[a] certificate worth a specified amount of money, given as a gift to

18   be redeemed at a particular store or business").  Applying the plain meaning of

19   these words, the *Waul* court found that the merchandise cards were not gift

20   certificates because "[a]lthough a particular customer might choose to give the

21   product or card as a gift to someone else, the store does not provide the item or card

22   for the purposes of gift-giving by the customer."  2004 WL 1535825, at *3.

23       Here, there is no allegation in the SAC that Plaintiffs purchased their Classes

24   "for the purpose of giving them to someone else."  Quite the contrary, each Plaintiff

25   alleges that she bought a Class, that she personally was unable to use before it

26

27   _____

     [6] As previously discussed, "when there is no other binding authority on which to rely,

28   federal courts may consider unpublished California opinions as persuasive authority."
     *Am. Zurich Ins. Co.*, 2015 WL 4163008, at *12 n. 24.

1    expired by its stated terms, and that she personally tried to use it after its stated

2    expiration date, but that she personally could not do so.  (SAC ¶¶ 8, 13, 14, 16, 17,

3    23, 24, 27, 28, 30.)  While Plaintiffs allege that they understood that they could use

4    their one Class "to purchase up to five exercise sessions for friends" (which is

5    impossible), there is no allegation that either Plaintiff ever intended to gift her one

6    Class, nor that either ever tried to so do.

7         In its prior opinion, the Court found that Classes were gift certificates in

8    reliance upon the definition set forth in *Reynolds* defining "gift certificate" as a

9    "certificate, usually presented as a gift."  (Dkt. No. 30, at 12–13 (citing *Reynolds*,

10   332 F. at 398).)  Specifically, the Court held that "there is at least a reasonable

11   inference" that Classes are gift certificates because they are "usually gifted."  (Dkt.

12   No. 30 at 13.)  Respectfully, the SAC does not support that inference for three

13   reasons.

14        First, while the SAC alleges that "a holder of a SoulCycle Certificate can

15   purchase up to five concurrent exercise sessions for friends and give those sessions

16   as gifts," SoulCycle's website clarifies that a customer who has purchased a Class

17   "can book up to five bikes on one single account."  (SAC ¶ 34 n.14 (quoting

18   *SoulCycle FAQ*, Soul-Cycle.com, https://www.soul-cycle.com/faq/).)  When a

19   customer buys a Class, a Class is placed in that customer's account.  (SAC ¶¶ 17,

20   28.)  That Class "cannot be sold or transferred."  (Ex. 5).  Classes purchased "are

21   not transferrable to another person nor can they be redeemed for cash."  (*Id*.)

22        To reserve a bike using Classes in one's account, one must log-in to her

23   account by providing her e-mail address and password.  (*Id*.)  As a result, only the

24   customer who purchased the Class maintains ownership and control over the

25   Class—only she can use that Class to reserve (or cancel) a bike.  Because the

26   purchaser maintains ownership and control over the Class, she is free to cancel a

27   reservation (including one made for a friend) and to use that Class to reserve a bike

28   for a completely different person, including herself at any time—unlike a gift that,

1  once given, cannot be taken back.  Therefore, unlike a gift certificate, which is

2  intended to be given as a gift, the ownership and control over a Class cannot be

3  legally conveyed or "gifted" to another and placed in another person's account.

4        Second, there is no allegation in the SAC that either named plaintiff

5  purchased her one Class with the intent to give it as a gift and, indeed, the SAC's

6  allegations establish the opposite: the single class that each named plaintiff

7  purchased is alleged to have been purchased for her personal use.

8        Third, there is no allegation in the SAC that establishes how often Classes are

9  given as gifts, much less ones demonstrating that they are "usually gifted," as

10  opposed to being purchased for personal use.  There is no allegation in the SAC

11  discussing how frequently or infrequently customers book bikes using Classes in

12  their account for others—only that it is possible.  The conclusion that Classes are

13  "usually gifted" is not a reasonable (or plausible) inference that may be drawn in

14  the absence of any supporting factual allegations.  *See Iqbal*, 556 U.S. at 678.  This

15  is particularly true when one considers that, in fact, SoulCycle sells actual Gift

16  Cards, which are separate from Classes and sold for the express purpose of giving

17  as gifts to others.  Gift Cards belong to the recipient and there is no expiration date

18  imposed.  While it is possible to pay for and book rides for friends on one's

19  account, why would one use a Class (over which the purchaser maintains control in

20  her account and which has a stated expiration date) for the purpose of giving a gift,

21  instead of buying a Gift Card, which never expires?

22        As a result, the Classes at issue are not "**a certificate or card purchased or**

23  **obtained by someone for the purpose of giving [them] to someone else**" and thus

24  not gift certificates under the California statute, and the SAC does not contain

25  allegations to plausibly establish that Classes are "usually gifted."

26        **B.**    **The SAC Fails to State a Claim for Violations of the UCL.**

27        To state a claim under the "unlawful" prong of the UCL, a plaintiff must

28  allege a violation of some other law.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949

(2002).  Here, Plaintiffs predicate their claims that SoulCycle acted "unlawfully" upon alleged violations of the EFTA and California's gift card law.  (SAC ¶¶ 113, 114.)  Because those laws do not apply, any claim of "unlawful" conduct based on violation of those laws fails.  (*See supra* Parts IV, V.A.)  To prove "fraudulent" conduct under the UCL, a plaintiff must prove that the challenged conduct is "likely to deceive" members of the public.  *In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1417 (2012).  Plaintiffs allege that SoulCycle "deceptively markets its [Classes] as 'pay-as-you-go,'" which, they claim, "misleads customers into thinking they will only pay for what classes they use."  (SAC ¶ 68.)  This allegation fails to allege any deception, much less with the particularity required by Rule 9(b), and is implausible on its face.  As an initial matter, no one is "forced" to buy a SoulCycle Class.  If a customer wants to ride with SoulCycle, she has a choice to buy just one, or five, or ten, or more Classes.  Indeed, either Plaintiff could have walked into a studio ten minutes before class, opened the SoulCycle app on her smartphone, purchased a single Class and reserved a bike with the front desk right then.

Moreover, payment takes place at the time that a Class is purchased, not at the time of its use.  Once a customer purchases her Class, it is entirely up to her when she will use it, and only she—not SoulCycle—has control over that decision.  Stated otherwise, whether or not a customer uses her Class during the period within the stated expiration date is within customers', not SoulCycle's, control.

And, Plaintiffs cannot reasonably allege that they were unaware that they needed to use the Classes they purchased within the period proscribed by the expiration dates.  As the Court found, SoulCycle discloses the existence and terms of the expiration dates.  (Dkt. No. 30 at 14.)  Specifically, this Court previously held that: (1) "the FAC clearly provides that 'the Series Certificate . . . displays the unlawful expiration date'"; (2) "the FAC includes a screen shot of SoulCycle's class purchase page, which shows that expiration dates of class purchases are conspicuously listed above the 'select' button that a user must click to purchase the

class"; and (3) these "allegations contradict any argument that SoulCycle misrepresented the existence or terms of these expiration dates to consumers." (*Id.* at 14 (citing FAC ¶ 29, which is repeated at SAC ¶ 40, and FAC ¶ 5, Fig. 1, which is repeated at SAC ¶ 5, Fig. 1); *see also* Ex. 1 at 4 ("You should be aware that classes and series expire . . . .").)

     To state a claim for violation of the "unfair" prong of the UCL, a plaintiff must allege conduct in violation of a public policy that is "tethered" to a constitutional or statutory provision or regulation carrying out statutory policy. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999); *In re Firearm Cases*, 126 Cal. App. 4th 959, 978 (2005). To the extent Plaintiffs' claim of "unfair" conduct is based on alleged violations of gift card laws (*see* SAC ¶ 115–16), those laws are inapplicable, and her claim fails. To the extent not based on gift card laws, Plaintiffs' allegations are not "tethered" to any constitutional or statutory provision or regulation and fail for that reason.

     To the extent that Plaintiffs' claims of "unfair" conduct are based on the allegation that "most classes are booked almost immediately after the classes open" (SAC ¶ 45), those claims fail for four reasons. First, as an initial matter, both Plaintiffs were able to book bikes. (Ex. 10; Ex. 11.)

     Second, the SAC alleges that 30 percent of "sessions" are reserved within 15 minutes of becoming available. (SAC ¶ 50.) SoulCycle's Registration Statement discusses the reservation of "rides" (i.e., bikes), not Classes.[7] In any event, this means that 70 percent—the vast majority—of rides do *not* fill up that quickly. Moreover, this Court has found that the fact that SoulCycle included this figure in its publicly filed S-1, "strongly suggests Defendant has not concealed from

---

[7] SoulCycle filed an amended S-1 with the U.S. Securities and Exchange Commission on December 9, 2015. At the time of that filing, SoulCycle's "studios currently average 79,000 rides per week and 25% of our weekly rides are reserved within the first 15 minutes of availability." (Ex. 12 at 4 (Amended S-1).)

1 | consumers any purported difficulty in obtaining a class." (Dkt. No. 30 at 15.)

2 |      Third, SoulCycle has 10 studios in Southern California and offers multiple

3 | Classes at each studio daily. (*See* SAC ¶ 10 n.4.) Even if a particular Class

4 | becomes full, other options remain open to a customer who wants to take a Class.

5 |      Even if "most" SoulCycle Classes filled up quickly, Plaintiffs fail to tie this

6 | allegation to a violation of a public policy " tethered" to a constitutional or statutory

7 | provision or regulation carrying out statutory policy, as required to state a claim.

8 | *See Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 185. Unsurprisingly, Plaintiffs do not

9 | identify any constitutional or statutory provision or regulation that requires

10 | SoulCycle to offer any particular number of Classes or to guarantee availability in

11 | every Class. Obviously, such a law would be unworkable.

12 |      **C.**    **The FAC Fails to State a Claim for Declaratory Relief.**

13 |      Plaintiffs' declaratory relief cause of action fails because it is wholly

14 | derivative of their other causes of action, each of which fails. *See Ochs v.*

15 | *PacifiCare of Cal.*, 115 Cal. App. 4th 782, 794 (2004). Moreover, to the extent the

16 | declaratory relief claim is predicated on alleged violations of the California gift

17 | card statute, it fails because there is no private right of action under that statute. *See*

18 | Ex. 8, *McCartney v. Gymboree Corp.*, 2013 WL 9745485, at *11. Plaintiffs'

19 | declaratory relief claim should be dismissed.

20 | **VI.**   **DISMISSAL SHOULD BE WITH PREJUDICE**

21 |      SoulCycle's Classes are only that: Classes. Plaintiffs' efforts misleadingly to

22 | contort them into gift certificates should be rejected by the Court. This is Cody's

23 | third pleading attempt. Plaintiffs cannot cure the SAC's deficiencies by alleging

24 | additional facts, and it should be dismissed with prejudice. *See Cook, Perkiss &*

25 | *Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

26 | Dated: March 11, 2016     Respectfully submitted,

27 |      /s/ Shirli F. Weiss

28 | EAST\122266796   SHIRLI F. WEISS
Attorneys for Defendant SoulCycle Inc.

DLA Piper LLP (US)

-25-

MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SAC
CASE NO. 2:15-CV-06457 GHK (JEMx)