SHIRLI F. WEISS (Bar No. 79225)
shirli.weiss@dlapiper.com
KATHERINE J. PAGE (Bar No. 259556)
katherine.page@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

KEARA M. GORDON *(pro hac vice)*
keara.gordon@dlapiper.com
LAUREN F. GIZZI *(pro hac vice)*
lauren.gizzigerard@dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501


Attorneys for Defendant
SoulCycle Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL CODY and LINDSEY KNOWLES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOULCYCLE INC.,<br><br>Defendant. | CASE NO. 2:15-CV-06457-GHK-JEM<br><br>**DEFENDANT SOULCYCLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: February 13, 2017<br>Time: 9:30 a.m.<br>Judge: Hon. George H. King<br>Ctrm: 650 |

## [REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL.]

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF RELEVANT FACTS ................................................... 1

    A. SoulCycle's Distinct Sales of Classes and Gift Cards ........................ 1

    B. SoulCycle Uses Expiration Dates to Encourage Customers to Commit to Their Health, Not to "Maximize its Profits." ..................... 3

    C. SoulCycle Regularly Extends Expiration Dates ................................ 3

III. LEGAL STANDARD ............................................................................... 3

IV. PLAINTIFFS ARE INADEQUATE CLASS REPRESENTATIVES AND NOT TYPICAL .............................................................................. 4

    A. Plaintiffs Are Inadequate Class Representatives and Atypical............ 4

        1. Cody's and Knowles' Testimony Contradicts the SAC ........... 6

        2. Plaintiffs' Testimony Contradicts Their Sworn Interrogatory Answers ................................................................. 9

        3. Cody and Knowles Lack of Knowledge of Their Claims ........ 10

        4. Cody And Knowles Are Friends With Class Counsel ............. 11

    B. Plaintiffs Lack Article III Standing...................................................... 12

V. A CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(3) ................ 14

    A. Plaintiffs' Proposed Classes Are Fatally Overbroad .......................... 14

    B. Individualized Issues Predominate Over Common Issues................... 15

        1. Individualized Issues as to Whether Proposed Class Members Purchased Their Class Primarily for Personal, Family or Household Purposes Predominate ........................... 16

        2. Individual Analysis is Required to Determine Whether Members of the Proposed UCL Class Were in California ...... 17

        3. To the Extent Plaintiffs Allege Deceptive Conduct, They Are Not Typical and Exposure is an Individualized Issue ...... 18

        4. To the Extent Plaintiffs Allege Unfair Conduct Under the UCL, Individualized Issues Predominate ................................. 19

        5. Plaintiffs Cannot Predicate a Class on the California Gift Card Law; To the Extent They Do, They Are Not Typical and Individualized Issues Predominate ................................... 20

DLA Piper LLP (US)

1

## TABLE OF CONTENTS
### (continued)

**Page**

6.    Individual Issues Predominate on Affirmative Defenses ......... 21

C.    A Class Action Is Not Superior ........................................... 24

VI.    A CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(2) ............... 24

VII.    CONCLUSION ............................................................. 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# **TABLE OF AUTHORITIES**

2

**Page**

3   CASES

4
5   *Alcantar v. Hobart Serv.*,
       800 F.3d 1047 (9th Cir. 2015)..........................................................................4

6
7   *Alfi v. Nordstrom, Inc.*,
       2010 WL 5093434 (S.D. Cal. Dec. 8, 2010) ...............................................13

8
9   *Allen v. Hyland's Inc.*,
       300 F.R.D. 643 (C.D. Cal. 2014) ....................................................................7

10  *Amchem Prods., Inc. v. Windsor*,
       521 U.S. 591 (1997) ......................................................................................16

11
12  *Ballard v. Branch Banking & Trust Co.*,
       284 F.R.D. 9 (D.D.C. 2012) ..........................................................................17

13
14  *Bartashnik v. Bridgeview Bancorp, Inc.*,
       2005 WL 3470315 (N.D. Ill. Dec. 15, 2005) ...............................................23

15
16  *Bates v. United Parcel Serv., Inc.*,
       511 F.3d 974 (9th Cir. 2007) (en banc) .........................................................25

17
18  *Berger v. Home Depot USA, Inc.*,
       741 F.3d 1061 (9th Cir. 2014)........................................................................19

19
20  *Bohn v. Pharmavite, LLC*,
       2013 WL 4517895 (C.D. Cal. Aug. 7, 2013) (King, J.) ......................... passim

21
22  *Boulton v. U.S. Tax Lien Assoc. LLC*,
       2016 WL 1461771 (E.D. Cal. Apr. 4, 2016) .................................................18

23  *Brandon v. Nat'l R.R. Passenger Corp. Amtrak*,
       2013 WL 800265 (C.D. Cal. Mar. 1, 2013).................................................14

24
25  *Brown v. Wells Fargo & Co.*,
       2013 WL 6851068 (D. Minn. Dec. 30, 2013)..........................................17, 24

26
27  *Burns v. First Am. Bank*,
       2006 WL 3754820 (N.D. Ill. Dec. 19, 2006) ....................................10, 22, 23

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Caldera v. J.M. Smucker Co.*,
2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) (King, J.)........................................ 14

*Camafel Bldg. Inspections, Inc. v. Bellsouth Adver. & Publ'g Corp.*,
2008 WL 649778 (N.D. Ga. Mar. 7, 2008) ................................................ 24

*CLN Props., Inc. v. Republic Servs., Inc.*,
2010 WL 5146734 (D. Ariz. Dec. 13, 2010)........................................ 24

*Cochran v. The Bank of N.Y. Mellon Trust Co. N.A.*,
2015 WL 4573890 (C.D. Cal. July 29, 2015) ........................................ 20

*Colapinto v. Esquire Deposition Servs., LLC*,
2011 WL 913251 (C.D. Cal. Mar. 8, 2011)........................................ 22

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ........................................ 13

*Cooper v. Twentieth Century Fox Home Ent., LLC*,
2012 WL 1021140 (C.D. Cal. Mar. 16, 2012) ........................................ 13

*Davis v. Nationstar Mortg., LLC*,
2016 WL 6822017 (N.D. Cal. Nov. 18, 2016) ........................................ 26

*Day v. AT&T Corp.*,
63 Cal. App. 4th 325 (1998) ........................................ 14

*Dean v. United of Omaha Life Ins. Co*,
2008 WL 7611369 (C.D. Cal. Oct. 14, 2008) ........................................ 4

*Dioquino v. Sempris, LLC*
2012 WL 6742528 (C.D. Cal. Apr. 9, 2012)........................................ 15, 22

*Dominic Corea LP v. ILD Telecommc'ns, Inc.*,
2013 WL 821193 (C.D. Cal. Jan. 23, 2013)........................................ 19

*Dzieciolowski v. DMAX Ltd.*,
2016 WL 6237889 (C.D. Cal. Apr. 27, 2016) ........................................ 15

*Endres v. Wells Fargo Bank*,
2008 WL 344204 (N.D. Cal. Feb. 6, 2008) ........................................ 24

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Evans v. IAC/Interactive Corp.*,
  244 F.R.D. 568 (C.D. Cal. 2007) ..................................................................... 4

*Farrell v. OpenTable, Inc.*,
  2012 WL 1379661 (N.D. Cal. Jan. 30, 2012) ................................................ 16

*Forcellati v. Hyland's, Inc.*
  2014 WL 1410264 (C. D. Cal. Apr. 9, 2014) .......................................... 25, 26

*Fradis v. Savebig.com*,
  2011 WL 7637785 (C.D. Cal. Dec. 2, 2011) .................................................. 23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ....................................................................................... 12

*Gawry v. Countrywide Home Loans, Inc.*,
  640 F. Supp. 2d 942 (N.D. Ohio 2009) .......................................................... 24

*Gonzales v. Comcast Corp.*,
  2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ....................................................... 15

*Gossoo v. Microsoft Corp.*,
  2013 WL 5651271 (C.D. Cal. Oct. 9, 2013) ................................................... 22

*Gregurek v. United of Omaha Life Ins. Co.*,
  2009 WL 4723137 (C. D. Cal. Nov. 10, 2009) ............................................... 22

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................................ 4

*Herrera v. LCS Fin. Servs. Corp.*,
  274 F.R.D. 666 (N.D. Cal. 2011) ................................................................... 15

*Herskowitz v. Apple, Inc.*,
  301 F.R.D. 460 (N.D. Cal. Aug. 7, 2014) ...................................................... 20

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919, 980 (C.D. Cal. 2015) ..................................................... 25

*In re LivingSocial Mktg. & Sales Practice Litig.*,
  298 F.R.D. 1 (D.D.C. 2013) ........................................................................... 16

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Jovel v. Boiron Inc.*,
  2014 WL 1027874 (C.D. Cal. Feb. 27, 2014)............................................................ 4

*Kashanchi v. Texas Commerce Med. Bank, N.A.*,
  703 F.2d 936 (5th Cir. 1983)...................................................................................... 16

*Kemply v. Cashcall, Inc.*,
  2016 WL 1055251 (N.D. Cal. Mar. 16, 2016)............................................................ 14

*Kesler v. IKEA U.S., Inc.*
  2008 WL 413268 (C. D. Cal. Feb. 4, 2008) ............................................................... 5

*Khasin v. R. C. Bigelow, Inc.*,
  2016 WL 1213767 (N.D. Cal. Mar. 29, 2016)............................................................ 25

*Kingsbury v. U.S. Greenfiber, LLC*,
  2009 WL 2997389 (C.D. Cal. Sept. 14, 2009) ........................................................... 12

*Kohler v. Inter-Tel Techs.*,
  244 F.3d 1167 (9th Cir. 2001)..................................................................................... 23

*Mark v. Gawker Media LLC*,
  2016 WL 1271064 (S.D.N.Y. Mar. 29, 2016) ........................................................... 21

*Melgar v. CSK Auto, Inc.*,
  2015 WL 9303977 (N.D. Cal. Dec. 22, 2015)............................................................ 15

*Melgar v. Zicam LLC*,
  2016 U.S. Dist. LEXIS 43990 (E.D. Cal. Mar. 30, 2016) ......................................... 5

*Monaco v. Bear Stearns Cos., Inc.*,
  2012 WL 10006987 (C.D. Cal. Dec. 10, 2012).................................................... 22, 23

*Moore v. Apple, Inc.*,
  309 F.R.D. 532 (N.D. Cal. 2015) ............................................................................... 18

*Nadeau v. Wells Fargo Bank*,
  2011 WL 1633131 (D. Minn. Apr. 26, 2011)....................................................... 24, 25

*O'Donovan v. CashCall, Inc.*,
  278 F.R.D. 479 (N.D. Cal. 2011) ............................................................................... 20

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
2016 WL 5920345 (C.D. Cal. June 23, 2016) ............................................................. 7

*Reynolds v. Philip Morris USA, Inc.*,
332 F. App'x 397 (9th Cir. 2009) .................................................................................. 21

*Simon v. Ashworth, Inc.*,
2007 WL 4811932 (C.D. Cal. Sept. 28, 2007) (King, J.) ................................. passim

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .................................................................................................. 13

*Synagogue v. United States*,
482 F.3d 1058 (9th Cir. 2007) ...................................................................................... 21

*Tietsworth v. Sears, Roebuck and Co.*,
2012 WL 1595112 (N.D. Cal. May 4, 2012) ............................................................... 15

*Tourgeman v. Collins Fin. Servs., Inc.*,
2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ................................................................. 4

*Van Hook v. Curry*,
2009 WL 773361 (N.D. Cal. Mar. 23, 2009) ............................................................... 14

*Voeks v. Wal-Mart Stores, Inc.*,
2008 WL 89434 (E.D. Wis. Jan. 7, 2008) ............................................................. 22, 23

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................................ 3

*Wersal v. LivingSocial, Inc.*,
2013 WL 3871434 (D. Minn. July 26, 2013) ............................................................... 13

*Williams v. Pressler & Pressler, LLP*,
2013 WL 5435068 (D.N.J. Sept. 27, 2013) .................................................................. 15

**STATUTES**

15 U.S.C. § 1693a .............................................................................................................. 16

Cal. Civ. Code § 1749.45 .................................................................................................. 21

# TABLE OF AUTHORITIES
## (continued)

**Page**

Pub. L. No. 110-241, 122 Stat. 1565 (June 3, 2008) .......................................................... 5

**OTHER AUTHORITIES**

12 C.F.R. § 1005.20(a)(1)(i) ................................................................................................. 16

12 C.F.R. § 1005, Supp. I ............................................................................................. 16, 17

Fed. R. Civ. P. 23(a)(4) ........................................................................................................ 4

Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 24

## I.     INTRODUCTION.

Named plaintiffs Rachel Cody and Lindsey Knowles' ("Plaintiffs") Motion for Class Certification ("Motion") should be denied.  Class certification is not appropriate here for multiple, independent reasons. First, a class cannot be certified under Rule 23(a) because the class representatives are inadequate and atypical. Plaintiffs' testimony contradicted their Second Amended Complaint ("SAC") in material ways and demonstrated that the SAC was drafted by their friend, putative class counsel, and predicated upon documents Plaintiffs never saw and experiences they did not have.  They also lack standing to sue. (*See* Section IV).

Second, a class cannot be certified under Rule 23(b)(3) because the putative class is overbroad and individualized issues predominate regarding whether a proposed class member has been injured or is subject to affirmative defenses. Ninety-four percent of classes ("Classes") purchased were used; those members of the putative class suffered no economic injury because they bought and used their SoulCycle class.  And, in light of the statutory damages provision of the Electronic Funds Transfer Act ("EFTA"), the class device is not superior.  (*See* Section V).

Third, a class cannot be certified under Rule 23(b)(2).  Plaintiffs lack standing to pursue injunctive relief because there is no real and immediate threat of future injury to them.  Moreover, SoulCycle has approved and is implementing business changes, which will be effective by February 10, 2016, and it will ensure that its sale of Classes have none of the indicia of gift certificates, in accordance with this Court's decisions on the prior motions to dismiss.  (*See* Section VI). Accordingly, the motion for class certification should be denied.

## II.    STATEMENT OF RELEVANT FACTS.

### A.     SoulCycle's Distinct Sales of Classes and Gift Cards.

SoulCycle sells several different products, including: (1) Classes and (2) gift

1   cards ("Gift Cards").  (Declaration of Mary Fields Mote ("Fields Decl.") ¶ 20.)[1]

2   SoulCycle riders can chose to buy only one Class, or a series of five, ten, 20, 30 or

3   50 Classes at a time.  (Ex. 1).[2]  The cost of a Class varies with the number

4   purchased, location and type of series.  (Fields Decl. ¶ 25.)  Riders can buy Classes

5   in various ways, including: (1) visiting SoulCycle's website at www.soul-cycle.com

6   ("Website"); (2) using the SoulCycle App; (3) calling any SoulCycle studio; (4)

7   going to a studio; (5) e-mailing SoulCycle; and (6) contacting the Super Soul

8   concierge service.  (*Id.* ¶ 23.) What a rider sees before making a purchase will

9   depend upon her method of purchase.  (*Id.* ¶ 24.)

10        Separate and apart from its sale of Classes, SoulCycle sells Gift Cards.  (Ex.

11   2.)  To purchase a Gift Card on SoulCycle's Website, a customer clicks on the word

12   "Shop" and is taken to the Company's list of distinct offerings: (1) Gift Card; (2)

13   SoulCycle Bike; (3) Buy Classes; and (4) clothing and accessories.  (Ex. 3.)  Gift

14   Cards have no expiration date and, unlike Classes, can be used toward the purchase

15   of Classes or SoulCycle merchandise.  (Fields Decl. ¶ 23.)

16        SoulCycle distinguishes between Gift Cards and Classes.  For example, when

17   Plaintiffs purchased their Classes, the webpage they saw twice referenced Gift

18   Cards as distinct from Classes: (1) directly above the yellow box one must click to

19   "checkout," it lists Gift Card as a potential payment method, and (2) right below,

20   there is a question: "using a giftcard?"  (Ex. 4; Cody, 81:4-19.) [3]  Once Plaintiffs

21   clicked "checkout," they advanced to another page, where SoulCycle again asked if

22   they had a "giftcard" and there was a link to obtain a "gift card balance."  (Ex. 8;

23   Cody, 83:23-84:25.)

---

[1] The pertinent facts regarding the individual experiences of Cody and Knowles are set forth in the argument section below.

[2] References to Ex. are references to the exhibits to one of the accompanying declarations, as noted.

[3] References to deposition testimony are in the following form:  deponent's last name; page number: line number.  The testimony cited is attached as Exhibits 5 (Cody), 6 (Knowles) and 7 (Curcuru) to the Declaration of Keara M. Gordon in Support of SoulCycle's Opposition to Plaintiffs' Motion for Class Certification.

DLA PIPER LLP (US)

DEFENDANT'S OPPOSITION TO PLAINTIFFS' CLASS CERTIFICATION MOTION
CASE NO. 2:15-CV-06457 GHK (JEMX)

**B.     SoulCycle Uses Expiration Dates to Encourage Customers to Commit to Their Health, Not to "Maximize its Profits."**

While SoulCycle's Gift Cards never expire, Classes have an associated expiration date, which this Court held is "conspicuously listed above the 'select' button that a user must click to purchase a class" (Dkt. 30 at 14), and which varies depending on the number of Classes purchased.  (Ex. 1.)

Expiration dates are not designed to "maximize profits" (Mot. at 1); rather, SoulCycle decided that its Classes should be used within a particular time to incentivize riders to commit to, and stick with, an exercise routine.  (Declaration of Elizabeth Cutler ("Cutler Decl.") ¶ 2; Exs. 9, 10.)  Expiration dates were not imposed to generate revenue █████████████████████████ ████████████████████████████████████████████ ███████████ (Declaration of Arthur Curcuru ("Curcuru Decl.") ¶ 3.)

**C.     SoulCycle Regularly Extends Expiration Dates.**

While SoulCycle includes expiration dates to motivate its riders, customer service and satisfaction is paramount.  (Cutler Decl. ¶ 5; Fields Decl. ¶ 4.)  As shown in the declarations of Ms. Cutler, a SoulCycle Co-Founder, and Ms. Fields, the Director of SoulCycle's customer service group, YourSoulMatters ("YSM"), during the entire time period at issue, SoulCycle empowered YSM and SoulCycle studio staff to reinstate and/or extend expiration dates either proactively, or in response to a rider's request, on an individual basis and they frequently did.  (Cutler Decl. ¶ 5; Fields Decl. ¶¶ 5-8, 10, 12-18.)

## III.   LEGAL STANDARD.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual names parties only.'"  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011) (internal citations omitted).  "Rule 23 does not set forth a mere pleading standard"; rather, the plaintiffs "must affirmatively demonstrate [their] compliance with the Rule . . ."  *Id.* at 350.  This entails a

"rigorous analysis." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015).

## IV.   PLAINTIFFS ARE INADEQUATE CLASS REPRESENTATIVES AND NOT TYPICAL.

Plaintiffs fail to demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry determines whether the named plaintiffs: (1) have conflicts of interest with the putative class; and (2) will "prosecute the action vigorously on behalf of the class." *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 577 (C.D. Cal. 2007) (denying class certification).  Where a named plaintiff is subject to a unique defense, she is neither typical nor adequate.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (Class certification "should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it") (citations omitted); *Dean v. United of Omaha Life Ins. Co*, 2008 WL 7611369, at *3 (C.D. Cal. Oct. 14, 2008) (disqualifying class representative); *Tourgeman v. Collins Fin. Servs., Inc.*, 2011 WL 5025152, at *12 (S.D. Cal. Oct. 21, 2011) (denying class certification).

### A.   Plaintiffs Are Inadequate Class Representatives and Atypical.

The "honesty and credibility of a class representative is a relevant consideration . . . because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Jovel v. Boiron Inc*., 2014 WL 1027874, at *3-4 (C.D. Cal. Feb. 27, 2014) (plaintiff's "inconsistent deposition testimony" put his "credibility in issue" and "jeopardize[d] the interests of all of the other class members") (citations omitted); *accord Bohn v. Pharmavite, LLC*, 2013 WL 4517895, at *4 (C.D. Cal. Aug. 7, 2013) (King, J.) (finding named plaintiff inadequate); *Simon v. Ashworth, Inc*., 2007 WL 4811932, at *5 (C.D. Cal. Sept. 28, 2007) (King, J.) (same).  "[A] close personal relationship between the named plaintiff and class counsel 'creates a *present* conflict of interest—an incentive for [the named plaintiff] to place the interests of [the counsel] above those of the

class.'" *Bohn,* 2013 WL 4517895, at *3 (internal citation omitted) (alterations in original); *accord Simon*, 2007 WL 4811932, at *4.

In *Bohn*, this Court held that the plaintiff was inadequate because she misremembered many of the details of her purchase and provided inconsistent testimony about her purchases, which "pose[d] a more than probable concern that her credibility will be a significant issue at trial, undermining the interest of the classes." 2013 WL 4517895, at *3. Moreover, the plaintiff "never bothered to conduct any due diligence" on her purchase and provided deposition testimony without "refresh[ing] her memory." *Id.* These issues were "even more troubling" in light of the plaintiff's close personal friendship with class counsel. *Id.* "Such relationship warrants scrutiny because they pose 'the danger of champterty,' especially when the attorney's fees 'will vastly exceed what any of the class members will receive.'" *Id.* (internal citation omitted). The Court concluded:

> That Plaintiff recalled the events in a way that fits the narrative of this lawsuit and failed to conduct basic due diligence, when viewed in light of Plaintiff and [class counsel's] eight-year friendship involving weekly gatherings, become strong indicia of an ongoing conflict. They suggest that Plaintiff may have, at best, unduly relied on her close friend, or, at worst, have no real interest in prosecuting this action other than to assist her close friend in recovering a sizable fee award relative to the small individual recoveries of the class members.

*Id.*[4] Similarly, in *Simon*, this Court found the named plaintiff inadequate where he lacked knowledge about his role as a class representative and the case, and he was "cavalier about signing statements under penalty of perjury," as evidenced by his interrogatory answers. 2007 WL 4811932, at *2-3. Finally, his family had a close

---

[4] Ignoring entirely this Court's decisions, Plaintiffs assert that their friendship "could arguably enhance" the "quality of the representation," relying on *Melgar v. Zicam LLC*, 2016 U.S. Dist. LEXIS 43990 (E.D. Cal. Mar. 30, 2016). *Melgar* did not cite a single case for that proposition nor did it distinguish this Court's opinions to the contrary. *Kesler v. IKEA U.S., Inc.*, also cited by Plaintiffs, is distinguishable. 2008 WL 413268 (C. D. Cal. Feb. 4, 2008) *superseded in part by statute* Pub. L. No. 110-241, 122 Stat. 1565 (June 3, 2008). In *Kesler*, the plaintiff talked to her friend, a lawyer, who referred her to a lawyer in her firm. *Id.* at *6. Here, in contrast, it is Plaintiffs' friend, Mr. Berger, through the firm he owns, who is representing them, not merely other attorneys at a firm where he works.

1    relationship with counsel – his father had worked at the same firm and they

2    socialized together.  As a result, this Court found that the plaintiff's interests

3    appeared "to be more aligned with counsel than with the class members whom he

4    purports to represent."  *Id.* at *4.  The same result follows here.

5              **1.    Cody's and Knowles' Testimony Contradicts the SAC.**

6        At their depositions, Plaintiffs contradicted the SAC in material respects.  A

7    complete list of inconsistencies is set forth at Exhibit 11, but, for example:

8        •      Although the SAC uses the phrase "Series Certificates" 304 times,

9    Cody admitted that ███████████████████████████████████

10   ██████████████████████████ (Cody, 20:23-21:1; 73:13-19;

11   74:16-20; 78:14-80:4; 82:25-83:2; 89:21-24; 91:9-11; 100:2-6; 130:4-131:3; *see*

12   *also* Ex. 1.)  Knowles admitted that ████████████████████████

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   ██████████ (Exs. 12-15; Knowles, 109:5-113:16.)

18       •      Plaintiffs' allegation that they "reviewed" SoulCycle's Website and

19   were led to believe that they were buying "gift certificates" (SAC ¶¶ 13, 24) is

20   eviscerated by their own testimony: three of the "facts" the SAC alleges they saw

21   and relied upon are found in the "FAQs," but Knowles testified that ██████████

22   ████████████████████████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████

25   ████████████████████████████████████████████████

26   ████████████████████████████████████████████████

27   ██████████████████████████████████████████ (Knowles, 23:4-

28   24:9; 26:13-24; 28:1-30:16; 34:12-35:1; 35:12-36:4; 37:20-41:24; 44:23-46:20;

59:5-61:16; 63:7-64:24; 68:20-25; 70:11-15; 73:17-74:11; 75:23-76:16; 77:12-15; 78:5-80:6; 81:12-15; 82:15-83:7; 98:10-23; 104:9-106:12; 135:4-137:21; 140:15-142:2; 144:23-146:4; 147:1-152:13; 155:10-23; 157:9-24; 168:4-169:12; 175:25-178:20; 236:2-12; 247:25-248:9; Exs. 16-20.)  Cody testified that ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ (Cody, 34:3-35:4; 84:3-85:1; 103:16-18; 104:4-12.)

- Although the SAC alleges that SoulCycle's "pay as you go system" is deceptive (SAC ¶¶ 4, 68), Cody testified that ███████████████████

███████████████████ (Cody, 103:13-104:22)████████████████

████████████████████████████████████████████ (Knowles, 150:1-18.)  Since they were not actually exposed to the allegedly deceptive statement, Plaintiffs are not typical.  *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 662 (C.D. Cal. 2014) (where "a named plaintiff did not read Defendants' statements on the product packaging . . . or explicitly testified that she did not rely on packaging statements," she is atypical); *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *5-6 (C.D. Cal. June 23, 2016) (plaintiff did not rely on defendant's statement prior to purchase and was atypical).

- The SAC relies heavily on SoulCycle's Class Transfer System – which had allowed riders to use Classes in the same or less expensive areas – to claim Classes are gift certificates.  (SAC ¶¶ 13, 24, 56-58.)  But Cody testified that ████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ (Cody, 100:23-101:10; 103:16-104:12; 105:8-10.)  Knowles similarly testified that ███████████████

██████████████████████████████████████████████████████

████████████████████ (Knowles, 41:14-24; 68:7-70:3; 142:19-143:9.)

- Contrary to Plaintiffs' allegations that they were "unable" to use their



1   Classes in the 31 days before they expired (SAC ¶¶ 8, 16, 27), Cody: (1) purchased

2   a Class and immediately used it to book a bike she later cancelled; (2) ████████████

3   ███████████████████████████████████████████████████████████

4   █████████       and (4) ████████████████████████

5   ███████████████████████████████ (Exs. 21-25;

6   Cody, 14:7-19; 35:13-18; 44:24-45:4; 45:9-46:25; 49:17-50:2; 106:21-107:8.)

7   Knowles: (1) purchased the Class discussed in the SAC (of the several she has

8   bought) to ████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████

11  ███████████████████████████████ (Exs. 26-31;

12  Knowles, 135:12-137:21; 153:5-158:5; 158:14-17; 160:25-163:3.)  In the 31-day

13  period that Cody had to use her Class, there were ████ classes offered in the eight

14  Southern California studios then open and an average of ███ classes per day

15  offered in West Hollywood alone, which is one mile from Cody's home.  (Exs. 32-

16  36; Cody, 63:17-65:3; 65:9-66:12.)  Similarly, in the 31-day period that Knowles

17  had to use her Class, there were a total of ████ classes offered in the eight

18  California studios then open and an average of ███ classes per day offered in

19  Beverly Hills alone, which is 1.9 miles from her home.  (Exs. 37-38.)

20        •      Although the SAC alleges that SoulCycle "prevents" customers from

21  extending the expiration period (SAC ¶ 43), Knowles actually asked SoulCycle to

22  replace another expired class in her account (which it did), ████████████████

23  ████████████████████ (Exs. 12, 43-44; Cody, 97:13-98:8; 123:7-124:1;

24  147:20-148:9; Knowles, 97:14-102:13; 169:9-170:21.)  ████████████████████

25  ███████████████████████████████████████████████████████████

26  _____

27  [5] (Cody, 37:5-43:10.)  Although she testified that ██████████████████████████

28  ████████████ SoulCycle's records show that Cody's class was purchased in the studio that day.  (Ex. 21; Cody, 38:5-44:10.)

1    ████████████████████████████████████████████ (*See, e.g.*, Exs. 39-42.)

2    • Cody's Class expired on July 17, 2015. (Ex. 23.) Although the SAC

3    alleges that "[o]n the day that the [Class] expired, SoulCycle removed" it from her

4    account and that Cody attempted to book a bike, SoulCycle's records demonstrate

5    that ██████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████ (SAC ¶ 17; Exs. 45-46.)

### 2. Plaintiffs' Testimony Contradicts Their Sworn Interrogatory Answers.

Also like the named plaintiff in *Simon*, Plaintiffs have been "cavalier about signing statements under penalty of perjury." 2007 WL 4811932, at *3. They signed their interrogatory answers ("Answers") under penalty of perjury (Exs. 47, 48), but many of their Answers were incomplete or inconsistent with their testimony, which demonstrates their complete "lack of due diligence." *Bohn*, 2013 WL 4517895, at *3. A chart of the inconsistencies is attached as Exhibit 87.

For example, their verbatim Answers claim that the Website "made clear" to them, among other things, that: (a) they could buy up to five Classes, and (b) the Class Transfer System allowed them to use their Classes throughout the country. (Ex. 47 at 8-9; Ex. 48 at 8-9.) The Class Transfer feature and the ability to book five bikes, however, are not found on the purchase pages, but in the Terms and Conditions ("Terms") and FAQs. (Ex. 49 at 4-5 and 50 at 3, 6-7.) ██████████

██████████████████████████████████████████ (Curcuru Decl. ¶ 13.) ██

████████████████████████████████████████████████████████████

██████████████████████████ (Knowles, 28:2-29:18; 34:12-36:4; 37:20-40:10; 59:5-61:16; 63:7-64:24; 68:20-25; 104:9-106:12; 129:23-130:1; 135:4-136:15; 140:18-142:2; 147:1-152:13; 168:4-169:8; 175:25-176:5; Cody, 34:3-35:4; 84:3-85:1; 104:4-105:2.) Despite Cody's testimony that ████████████

████████████████████ her supplemental interrogatory answers –served after her

deposition – continue to attest to these statements.  (Ex. 51.)

Knowles performed no investigation before verifying the accuracy of her Answers, which are substantially inaccurate.  For example, her answer to the question how she *first* learned about SoulCycle says that, in "May 2015," she "sought to attend a SoulCycle class."  (Ex. 48.)  This answer ignores that Knowles ██████████████████████ her second Class in 2013, and a SOUL101 series of three Classes in 2014.  (Exs. 27, 52-59; Knowles, 28:1-11; 33:3-36:19; 39:21-41:24; 42:4-43:9; 68:7-69:10; 75:10-78:25.)

In response to a request to identify persons with whom she communicated about SoulCycle or the litigation, Knowles did not identify a single person, but at her deposition, █████████████████████████████████████████████████████████ ████████████████████████████████████████ (Ex. 48, Knowles, 226:8-231:16.)  Cody also failed to disclose certain facts and provide complete Answers.  (Exs. 11, 47.)  And, while Cody declares that she "ha[s] already . . . completed [he]r production of documents" (Mot. at 14), this statement is untrue.  (*See* Exs. 60-64.)  As such, Plaintiffs have shown that they "will, and already [have], recklessly signed documents under penalty without any knowledge of the nature and contents of those documents."  *Simon*, 2007 WL 4811932, at *3.

### 3.   Cody and Knowles Lack of Knowledge of Their Claims.

Like the named plaintiff in *Simon*, Plaintiffs testified to a lack of knowledge about their case, which is detailed in the chart at Exhibit 65.  ████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████ (Cody, 116:11-128:9; 129:3-134:24; 154:10-25.)  Cody also testified that █████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████ (*Id.*, 169:4-170:8.)  As such, Cody "cannot

possibly represent the interests of the class if [s]he is unaware of [her] obligations to the class." *Simon*, 2007 WL 4811932, at *2.

As in *Bohn*, Knowles misremembered, or failed to remember, important facts. ██████████████████████████████████████████████████████████████████████████████████████ (Knowles, 28:2-30:16.) ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ (Exs. 53-59; Knowles, 30:24-31:3; 33:3-36:19; 37:20-38:25; 39:21-41:24; 42:4-43:9; 59:14-62:9; 68:20-25; 69:11-15; 72:5-9; 75:10-78:25.)  In relation to the one Class discussed in the SAC, ████████ ████████████████████████████████████████ ████████████████████████████████████████ (SAC ¶ 22; Exs. 26-29; Knowles, 134:17-137:21; 140:15-142:2; 147:1-153:25.)

Moreover, Knowles selectively remembered a transaction that is critical to SoulCycle's mitigation and voluntary payment defenses. ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████ (Exs. 66-67, 12; Knowles, 77:16-78:25; 80:9-83:7; 97:14-101:19.) SoulCycle reinstated the Class.  (Ex. 12, 68.) ████████████████ ████████████████████████████████████████ ████████████████ (Knowles, 102:8-105:24; 168:1-175:9.)  Her testimony defies credulity and demonstrates that she "tailored aspects of her memory to fit the narrative of this action." *Bohn*, 2013 WL 4517895, at *2.

**4.    Cody And Knowles Are Friends With Class Counsel.**

Finally, as in *Bohn* and *Simon*, Plaintiffs are friends with class counsel. ████████

-11-



(Cody, 47:7-48:23; 180:18-181:24.)

(*Id.*, 117:9-118:22; 155:1-156:9.)

(Knowles, 16:14-18:12.)

(*Id.*, 210:1-212:16.)

Plaintiffs and their counsel apparently desired to conceal their friendship as Cody's deposition approached, because Cody scrubbed her Facebook page to remove any reference to her friendship with Mr. Berger, and Mr. Berger temporarily deactivated his Facebook page around both Plaintiffs' depositions. (*Compare* Exs. 69-70 *with* Ex. 71; *compare* Ex. 72 *with* Exs. 73-74.)

Plaintiffs' many contradictions and inconsistent statements, coupled with their friendship with class counsel, severely undercut their credibility and demonstrate the extent to which this is a lawyer-driven lawsuit.

### B.    Plaintiffs Lack Article III Standing.

"[A] plaintiff's inability to assert a claim makes him an inadequate class representative." *Kingsbury v. U.S. Greenfiber, LLC*, 2009 WL 2997389, at *8 (C.D. Cal. Sept. 14, 2009).  To have standing, a plaintiff must demonstrate: (1) she suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) "the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Although this Court previously found that the SAC pled standing (Dkt. 30), it may revisit this decision now and should do so for two reasons.  First, since the

Court's decision, the U.S. Supreme Court has clarified that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016). As a result, plaintiffs can no longer rely on an alleged procedural statutory violation untethered to any actual harm to establish injury in fact. Here, Plaintiffs have not suffered any monetary harm because they can use their Class at any time. (Exs. 43, 44; Fields Decl. ¶ 19.) Second, on a motion to dismiss, the Court was required to draw all inferences in the plaintiffs' favor; now, in contrast, not only may the Court view the actual record, but Plaintiffs must demonstrate their standing through evidence. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) ("Rule [23] 'does not set forth a mere pleading standard'") (quoting *Wal-Mart*, 564 U.S. at 350).

The fact that SoulCycle has not enforced the expiration date is fatal to Plaintiffs' claims. *See Cooper v. Twentieth Century Fox Home Ent., LLC*, 2012 WL 1021140, at *2 (C.D. Cal. Mar. 16, 2012) (dismissing claims); *Alfi v. Nordstrom, Inc.*, 2010 WL 5093434, at *5 (S.D. Cal. Dec. 8, 2010) (plaintiff lacked standing; failed to allege refusal to honor); *Wersal v. LivingSocial, Inc.*, 2013 WL 3871434, *2 (D. Minn. July 26, 2013) (same). This Court previously distinguished this authority because it viewed SoulCycle's assertion that it would have extended Plaintiffs' expiration dates to be "speculation." (Dkt. 30 at 9-10.) The evidence now demonstrates that SoulCycle regularly extends expiration dates and reinstates expired Classes and, if asked, YSM would have extended the expiration date for Plaintiffs as it did for others at that time. (Fields Decl. ¶¶ 5-10, 12-18.) ███

███████████████████████████████████████████████████████

███  (Knowles, 97:14-101:19.) As such, Plaintiffs have not "lost" the value of their Classes. (Mot. at 12-13.)

Moreover, "standing must exist at all times until judgment is entered . . . ." *Kemply v. Cashcall, Inc.*, 2016 WL 1055251, at *19 (N.D. Cal. Mar. 16, 2016) (internal citation omitted). It is undisputed that, at this moment, Plaintiffs can use

-13-

their Classes.  (Exs. 43, 44; Fields Decl. ¶ 19.)  In the Court's prior opinion, it noted that SoulCycle's offer did not have an express duration.  (Dkt. 30 at 10.)  That offer is of unlimited duration; they may use them at any time.  (Fields Decl. ¶ 19.)  As a result, Plaintiffs have not been injured.  *See Van Hook v. Curry,* 2009 WL 773361, at *2-3 (N.D. Cal. Mar. 23, 2009) (plaintiff lacked standing because he "could have" participated in the activity from which he claimed he was prevented).

Because Plaintiffs could have used their Classes and still can – which is the relief they seek – their claims are moot.  *See Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, 2013 WL 800265, at *4 (C.D. Cal. Mar. 1, 2013) (dismissing UCL claim where defendant had already tendered restitution).  As a result, Plaintiffs fail to demonstrate that they have standing.

## V.     A CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(3).

### A.     Plaintiffs' Proposed Classes Are Fatally Overbroad.

Plaintiffs' proposed class definitions here are fundamentally and fatally overbroad because the overwhelming majority of proposed class members received exactly what they paid for, have not been injured, and are not entitled to restitution. To recover actual damages under the EFTA, Plaintiffs must demonstrate an injury. *See Kemply*, 2016 WL 1055251, at *8 (actual damages "are generally '[a]n amount awarded to a complainant to compensate for a proven injury or loss'") (citation omitted).  Similarly, restitution for a UCL claim "operates only to return to a person those *measurable amounts* which are *wrongfully* taken by means of an unfair business practice." *Day v. AT& T Corp.,* 63 Cal. App. 4th 325, 339 (1998) (emphasis in original); *see also Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) (King, J.).

"[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Melgar v. CSK Auto, Inc.,* 2015 WL 9303977, at *7 (N.D. Cal. Dec. 22, 2015) (citation omitted); *see Dzieciolowski v. DMAX Ltd.*, 2016 WL 6237889, at *4 (C.D. Cal. Apr. 27,

2016).[6]  In *Dzieciolowski*, for example, the Court denied class certification for claims (including a UCL claim), stemming from a defectively designed engine. 2016 WL 6237889, at *2.  The defendant demonstrated that more than 91 percent of customers "ha[d]n't had the alleged injury at the heart of the lawsuit," and thus, the proposed class was defined "too broadly" and could not be certified.  *Id.* at *3. Similarly, in *Dioquino v. Sempris, LLC*, the plaintiffs brought EFTA and UCL claims, among others.  2012 WL 6742528, at *3 (C.D. Cal. Apr. 9, 2012).  The Court refused to certify the EFTA and UCL subclasses because they "naturally include[d] members who were unharmed."  *Id.* at *5 ("Plaintiff's overbroad class definitions sweep harmed and unharmed members into the same group."); *see also Tietsworth v. Sears, Roebuck and Co.*, 2012 WL 1595112, at *14 (N.D. Cal. May 4, 2012) (refusing to certify overbroad UCL class, which included individuals who could not "be deemed to have suffered a compensable injury").

    The same result follows here.  ████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████  (Curcuru Decl. ¶ 8.)[7]  The class cannot be certified.

**B.    Individualized Issues Predominate Over Common Issues.**

    Separately, Plaintiffs fail to demonstrate predominance, which is "far more demanding" than commonality and "tests whether proposed classes are sufficiently

---

[6] SoulCycle's argument here does not turn on whether damages are individualized (Mot. at 19-20); rather, SoulCycle's argument goes to injury. "While determining the *amount* of damages does not defeat the predominance inquiry, a proposed class action requiring the court to determine individualized *fact* of damages does not meet the predominance standards of Rule 23(b)(3)." *Gonzales v. Comcast Corp.*, 2012 WL 10621, at *18 (E.D. Cal. Jan. 3, 2012) (emphasis in original), *report and recommendation adopted*, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012).
[7] The cases Plaintiffs cite under the Fair Debt Collection Practices Act, *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666 (N.D. Cal. 2011) and *Williams v. Pressler & Pressler, LLP*, 2013 WL 5435068 (D.N.J. Sept. 27, 2013), are easily distinguishable.  In *Herrera*, the certified class was defined to exclude people who were not injured. *Id.* at 678 (excluding from the class "borrowers whose real property was not foreclosed").  In *Williams*, the plaintiffs were seeking to certify only a statutory damages class.  *Id.* at *2.  Here, on the other hand, the plaintiffs seek to certify an EFTA class for actual damages as well.  (Mot. at 20.)

cohesive to warrant adjudication by representation."[8]  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

### 1.  Individualized Issues as to Whether Proposed Class Members Purchased Their Class Primarily for Personal, Family or Household Purposes Predominate.

An EFTA claim can only be brought on behalf of consumers, who are defined as "natural person[s]."  15 U.S.C. § 1693a; *see also Kashanchi v. Texas Commerce Med. Bank, N.A.*, 703 F.2d 936, 939-42 (5th Cir. 1983) ("The [EFTA] defines a consumer as 'a natural person.'") (citing 15 U.S.C. § 1693a(5)).  Yet, Plaintiffs seek to certify an overbroad class of "SoulCycle *customers*" (Mot. at 7 (emphasis added)), ████████████████████ (Fields Decl. ¶ 26.)

Moreover, a "gift certificate" is defined by Regulation E as "[i]ssued on a prepaid basis *primarily for personal, family or household purposes* to a *consumer*[.]"  12 C.F.R. § 1005.20(a)(1)(i) (emphasis added).  Whether a gift certificate "is issued . . . primarily for personal, family, or household purposes will depend on the *facts and circumstances*" and includes cards "use[d] to purchase office supplies and other business-related items."  12 C.F.R. § 1005, Supp. I (emphasis added).  Accordingly, to determine whether SoulCycle sold a Class that is a "gift certificate" requires an individualized analysis of each rider as to whether the Class was sold for "primarily personal, family, or household" purposes, based upon the "facts and circumstances" of the purchase.  *Id.*  Here, Plaintiffs have not proffered evidence to make such a determination on a class wide basis.  Instead, the

---

[8] Plaintiffs' argument that courts "routinely" certify claims involving the EFTA gift certificate provisions is disingenuous.  (Mot. at 16.)  The cited cases involved class certification *for settlement purposes only*, so the class issues were not challenged or litigated.  *See In re LivingSocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 8 (D.D.C. 2013); *Farrell v. OpenTable, Inc.*, 2012 WL 1379661, at *1 (N.D. Cal. Jan. 30, 2012).  The Supreme Court has acknowledged that "[w]hen a class is being certified for settlement purposes only, 'a district court *need not inquire* whether the case, if tried, would present intractable management problems for the proposal is that there be no trial.'"  *In re LivingSocial*, 298 F.R.D. at 8-9 (quoting *Amchem Prods., Inc.*, 521 U.S. at 620) (emphasis added) (acknowledging that "[i]f the litigation had progressed, defendants would have also contended that individual issues predominate over common questions").

DEFENDANT'S OPPOSITION TO PLAINTIFFS' CLASS CERTIFICATION MOTION
CASE NO. 2:15-CV-06457 GHK (JEMX)

DLA Piper LLP (US)

evidence demonstrates that some Classes were purchased for reasons *other* than personal, family, or household use, ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████ (Exs. 76-81.)  In light of this evidence, a determination as to whether any given Class was sold for "primarily personal, family, or household" purposes will require individualized analysis and prevents class certification here.

Courts assessing similar EFTA definitions requiring a determination of whether a bank account was "established primarily for personal, family, or household purposes" have denied class certification on this basis.  *See, e.g.*, *Ballard v. Branch Banking & Trust Co.*, 284 F.R.D. 9, 12-13 (D.D.C. 2012); *Brown v. Wells Fargo & Co.*, 2013 WL 6851068, at *5 (D. Minn. Dec. 30, 2013).  In *Ballard*, the Court denied certification because it was "absolutely essential to communicate with" the putative class to determine if the account was "used for personal purposes."  284 F.R.D. at 10.  Similarly, in *Brown*, the Court denied class certification because this determination required the Court to "ask . . . if their use was for non-business purposes."  2013 WL 6851068, at *5.  "[S]uch an imperfect, time-consuming, and labor-intensive process" does not comport with Rule 23.  *Id.*

So too here.  SoulCycle does not ask riders why they are purchasing a Class. (Fields Decl. ¶ 26.)  As such, this determination will require the parties to contact each putative class member and then perform an individualized analysis of whether his or her purchase is within the definition of a gift certificate under the EFTA.

### 2.   Individual Analysis is Required to Determine Whether Members of the Proposed UCL Class Were in California.

Plaintiffs seek to certify a UCL class by defining a proposed class of customers "with a California billing address."  (Mot. at 7, 12.)  The UCL, however, does not apply to transactions involving non-California residents outside California.

*Boulton v. U.S. Tax Lien Assoc. LLC*, 2016 WL 1461771, at *6 (E.D. Cal. Apr. 4, 2016). "[T]he California Supreme Court stated explicitly that 'neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. . .'" *Id.* (*quoting Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)).

Here, Plaintiffs improperly assume – without evidence – that all customers with a California billing address: (a) resided in California at the time of the purchase; and (b) made their purchase in California. But, the evidence suggests that many riders were actually residents elsewhere and purchased Classes while not physically present in California. ███████████████████████████████████████████████████████████████████████████████████████████████ (Curcuru Decl. ¶ 11; Ex. A at rows 2-22.) It would be impossible for those riders to take a class in California at a time when there was no California studio. ██████████████████████████████████ ██████████████████████████████████ (*Id.* ¶ 10.) To determine whether each proposed member of the California class is properly included, the Court will be required to conduct a fact-specific analysis, precluding certification. *See, e.g., Moore v. Apple, Inc.*, 309 F.R.D. 532, 548-49 (N.D. Cal. 2015).

### 3. To the Extent Plaintiffs Allege Deceptive Conduct, They Are Not Typical and Exposure is an Individualized Issue.

The SAC alleges that SoulCycle violated the UCL by engaging in "fraudulent" business practices. (SAC, ¶¶ 110-120.) The only specific statement alleged to be deceptive is that "SoulCycle offers a pay-as-you-go system – that way you're only purchasing classes that you actually use." (*Id.*, ¶ 68.) The Ninth Circuit has "held that class certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (affirming

1    denial of class certification) (internal citation omitted).

2         Here, Plaintiffs were not "actually exposed" to the allegedly deceptive

3    statement; Cody testified that ████████████████████████████████████

4    ████████████████████████████████████████████ (Ex. 50;

5    Cody, 83:20-22; 84:11-13; 103:16-104:22.) ████████████████████████

6    ██████ (Knowles, 150:1-18.) ████████████████████████████

7    ██████████████ (Cody, 35:1-12; Knowles, 29:4-15, 175:25-176:5.)  As such, they

8    cannot pursue this UCL claim.

9         Plaintiffs have not attempted to demonstrate that all of the putative class

10   members were exposed to the statement. ████████████████████████

11   ██████████████ (Curcuru Decl. ¶ 13.)  As a result, no UCL claim exists prior to

12   January 2014. ████████████████████████████████████████████████

13   ████████████████████████████████ (*Id.*)  It is thus likely that, like

14   Plaintiffs, other putative class members were not exposed to the statement. ████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████ (Exs. 82-

17   83; Curcuru, 35:5-38:20; 101:4-104:3; Fields Decl. ¶ 21.)  As a result, this Court

18   would have to conduct an individualized analysis to see whether a putative class

19   member actually saw the statement.  *See, e.g., Dominic Corea LP v. ILD*

20   *Telecommc'ns, Inc.*, 2013 WL 821193, at *4 (C.D. Cal. Jan. 23, 2013) (King. J.).

21              **4.     To the Extent Plaintiffs Allege Unfair Conduct Under the**
             **UCL, Individualized Issues Predominate.**
22

23        Plaintiffs' claims that SoulCycle engaged in "unfair" business practices are

     based essentially on the same allegations as their EFTA claim.  (*See* SAC ¶ 115.)
24
     The "proper definition" of unfair "'is currently in flux[,]' . . . with courts applying
25
     at least two possible definitions."  *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 476
26
     (N.D. Cal. Aug. 7, 2014) (quoting *Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152,
27
     1169 (9th Cir. 2012)).  One definition of "unfair" asks whether the challenged
28

conduct is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 503 (N.D. Cal. 2011) (citation omitted).  The other defines "unfair" conduct as conduct "that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cochran v. The Bank of N.Y. Mellon Trust Co. N.A.*, 2015 WL 4573890, at *5 (C.D. Cal. July 29, 2015) (citing *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)).

Under either test, individualized issues predominate.  For the first test, because a determination of the utility of SoulCycle's conduct and its impact on the proposed class requires examination of individual customers' experiences, class certification should be denied.  *See O'Donovan*, 278 F.R.D. at 503; *Herskowitz*, 301 F.R.D. at 476-77 (denying certification).  Similarly, because the second test requires examination of the "effects" of SoulCycle's business practices on putative class members, it also requires individualized inquiry into each putative class member's interactions with SoulCycle.

**5.   Plaintiffs Cannot Predicate a Class on the California Gift Card Law; To the Extent They Do, They Are Not Typical and Individualized Issues Predominate.**

Plaintiffs' proposed class of customers "under . . . California Gift Certificate Law" cannot be certified because the Court dismissed Plaintiffs' claim under that statute, which does not have a private right of action.  (*See* Dkt. 37 at 25; Dkt. 40 at 7.)  The Court then declined to address whether Plaintiffs sufficiently alleged a UCL claim based on California's gift certificate law, stating that "[t]o the extent a determination . . . later becomes necessary, we will determine it at that time."  (Dkt. 40 at 7, n.8.)  Because Plaintiffs' UCL claim is not currently predicated on this claim, the Court cannot certify a class to pursue this claim.  *See Mark v. Gawker*

-20-

*Media LLC*, 2016 WL 1271064, at \*14 (S.D.N.Y. Mar. 29, 2016) (denying class
certification as moot where underlying claims were dismissed).

     If Plaintiffs still had an active UCL claim based on California's gift
certificate law (which they do not), class certification would still be inappropriate as
individualized issues would predominate.  That law does not define the term "gift
certificate," and undefined terms are given their ordinary meanings.  Cal. Civ. Code
§ 1749.45; *Synagogue v. United States*, 482 F.3d 1058, 1061-62 (9th Cir. 2007).
The ordinary meaning of "gift certificate" contemplates something purchased for
the purpose of giving it to someone else.  *See, e.g.*, *Reynolds v. Philip Morris USA,
Inc.*, 332 F. App'x 397, 398 (9th Cir. 2009) (*quoting* Am. Heritage Dictionary of
the English Language 742 (4th ed. 2000) ("gift certificate" is a "certificate, usually
presented as a gift, that entitles the recipient to select merchandise of an indicated
cash value at a commercial establishment")).

     To determine whether Classes are "gift certificates" as defined by
California's gift card statute, the Court will need to determine whether Classes are
"usually presented as a gift."  Plaintiffs testified that ███████████████████
██████████████████████████████████████████████████████████████████
███████████████████████████ (Cody, 88:19-24; 83:7-84:13;
103:16-104:12; Knowles, 218:7-14; 149:14-151:7.)  As a result, if it were the case
that customers predominantly purchased SoulCycle Classes as gifts (which it is
not), Plaintiffs would be atypical.  *See Dioquino*, 2012 WL 6742528, at \*9.

     Moreover, because this determination requires inquiry into whether each
rider bought the Class as a gift, individualized issues will predominate.  *See Gossoo
v. Microsoft Corp.*, 2013 WL 5651271, at \*4 (C.D. Cal. Oct. 9, 2013) (denying
class certification); *Colapinto v. Esquire Deposition Servs., LLC*, 2011 WL 913251,
at \*8 (C.D. Cal. Mar. 8, 2011) (same).

### 6.    Individual Issues Predominate on Affirmative Defenses.

     Affirmative defenses, whose "application will likely involve individualized

-21-

determinations, weigh[] against the certification" and defeat predominance. *Monaco v. Bear Stearns Cos., Inc.,* 2012 WL 10006987, at *9-10 (C.D. Cal. Dec. 10, 2012); *accord Gregurek v. United of Omaha Life Ins. Co.*, 2009 WL 4723137, at *8 (C. D. Cal. Nov. 10, 2009) (King. J.) (decertifying class where individual inquiries on affirmative defenses frustrated ability to adjudicate case).  Here, SoulCycle's affirmative defenses will bar some putative class members' claims and require individualized inquiries precluding predominance.

### a.      Affirmative Defenses Apply.

Plaintiffs are wrong that "equitable defenses neither preclude liability nor defeat predominance as the 'EFTA is a strict liability statute.'" (Mot. at 10 (quoting *Burns v. First Am. Bank*, 2006 WL 3754820, at *6 (N.D. Ill. Dec. 19, 2006)).)  In *Burns*, the Court notes that the EFTA is a strict liability statute, but then clarifies:

> A statute can provide a defense to liability but still allow a plaintiff to make out his claim based upon strict liability. *See Nat'l Accident Ins. Underwriters, Inc. v. Citibank F.S.B.*, 243 F.Supp.2d 769, 771 (N.D. Ill. 2003) ("[A]ll 'strict liability' means is 'liability without fault.' ... There is nothing to suggest that it means an absence or elimination of any possible affirmative defenses").

2006 WL 3754820, at *6; *accord Voeks v. Wal-Mart Stores, Inc.*, 2008 WL 89434, at *2 (E.D. Wis. Jan. 7, 2008) ("[E]ven assuming that the EFTA is a strict liability statute . . . other common law affirmative defenses are potentially viable defenses . . . [if] they impact the degree of liability."); *Bartashnik v. Bridgeview Bancorp, Inc.*, 2005 WL 3470315, at *3 (N.D. Ill. Dec. 15, 2005) (same); *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1178 (9th Cir. 2001) (affirmative defenses not incompatible with strict liability).  *Burns* did not hold that an equitable defense was insufficient to preclude predominance; rather, the Court found that in a claim for *statutory damages only*, the plaintiff did not need to demonstrate reliance.  2006 WL 3754820, at *6.  Here, in contrast, Plaintiffs seek actual damages. (SAC ¶ 78(e).)

### (1)      Mitigation of Damages.

A plaintiff's failure to mitigate damages is an affirmative defense to a claim

-22-

for actual damages under the EFTA.  *Voeks*, 2008 WL 89434, at \*3; *Bartashnik*, 2005 WL 3470315, at \*3.  If a putative class member was aware that SoulCycle extends expiration dates, she is not eligible to recover actual damages for any later Class that expired where she failed to mitigate damages by asking for an extension. For example, when a Class was no longer in Knowles' account in 2014, she e-mailed SoulCycle and they reinstated the Class, yet in 2015 ████████████ ████████████ (Ex. 12; Knowles, 168:4-172:5; 183:19-184:11.)  Instead, she bought another Class.  (Exs. 84-85; Knowles, 167:17-168:3; 179:5-180:9.)  As such, the Court will need to conduct individualized inquiries, which destroy predominance.

<b>(2)   Voluntary Payment Doctrine.</b>

The "voluntary payment doctrine bars the recovery of money that was voluntarily paid with full knowledge of the facts." *Fradis v. Savebig.com*, 2011 WL 7637785, at \*6 (C.D. Cal. Dec. 2, 2011).  Under this doctrine, putative class members who paid for their Classes with the full knowledge that they expire should not be permitted to recover the cost of Classes later purchased. *See id.*  Courts have repeatedly held that the voluntary payment doctrine requires individualized analyses that preclude predominance. *See Monaco*, 2012 WL 10006987, at \*9-10 (denying certification); *Endres v. Wells Fargo Bank*, 2008 WL 344204, at \*11-12 (N.D. Cal. Feb. 6, 2008); *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 957 (N.D. Ohio 2009); *Camafel Bldg. Inspections, Inc. v. Bellsouth Adver. & Publ'g Corp.*, 2008 WL 649778, at \*11 (N.D. Ga. Mar. 7, 2008)*;CLN Props., Inc. v. Republic Servs., Inc.,* 2010 WL 5146734, at \*10 (D. Ariz. Dec. 13, 2010).

So too here.  SoulCycle discloses Classes' expiration dates, and the fact that it then extends them is publicly discussed.  (Dkt. 30 at 14-15; Fields Decl. ¶ 15; Ex. 86.)  While SoulCycle does not track when it extends expiration dates, it granted more than ████ extensions during the relevant time period.  (Fields Decl. ¶ 8; Exs. A-K.)  ████████████████████████████████████████████████████

1 ██████████████████████████████████ (Curcuru Decl. ¶ 12.)  As a result,

2 individualized inquiries as to whether each putative class member's claim is barred

3 by the voluntary payment doctrine destroys predominance.

### C.    A Class Action Is Not Superior.

5 Rule 23(b)(3) requires proof that a class action is "superior to other available

6 methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

7 23(b)(3).  Here, individual class members' "maximum recovery is likely to be

8 minimal compared to the damages available in an individual action."  *Brown*, 2013

9 WL 6851068, at *6; *see also Nadeau v. Wells Fargo Bank*, 2011 WL 1633131, at

10 *5 (D. Minn. Apr. 26, 2011).  "When an individual brings an EFTA claim, the

11 plaintiff is entitled to between $100 and $1,000 dollars in statutory damages.

12 [However,] [i]n a class action EFTA claim, the total recovery is capped at

13 $500,000."  *Brown*, 2013 WL 6851068, at *6.

14 In *Brown*, approximately 9,000 people would have shared a recovery of

15 $500,000, which equated to $55 each.  The pursuit of an EFTA claim as a class

16 action was not superior because "potential class members could recover more by

17 proceeding individually than as part of a class."  *Id.*  Here, if Plaintiffs' estimate

18 that there are more than 100,000 people in the putative class (Mot. at 8) is true, each

19 member's share of statutory damages could not exceed $5.00, far less than the $100

20 to $1,000 individual award.  This small potential recovery precludes a finding that a

21 class action is superior.  *Nadeau*, 2011 WL 1633131, at *5 (finding no superiority).

## VI.    A CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(2).

23 In a class action, "[u]nless the named plaintiffs are themselves entitled to

24 seek injunctive relief, they may not represent a class seeking that relief."  *Khasin v.*

25 *R. C. Bigelow, Inc.*, 2016 WL 1213767, at *4 (N.D. Cal. Mar. 29, 2016) (quoting

26 *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)).  A plaintiff

27 must establish a concrete injury "coupled with 'a sufficient likelihood that he will

28 again be wronged in a similar way'" and must show that the claimed threat of injury

-24-

1   is likely to be redressed by the prospective injunctive relief.  *Bates v. United Parcel*

2   *Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (internal citation omitted).

3   In *Forcellati v. Hyland's, Inc.*, this Court held that the plaintiffs lacked standing to

4   pursue injunctive relief where they did "not suggest that they are likely to purchase

5   Defendants' products in the future" because a "plaintiff only has standing to sue for

6   injunctive relief if 'there is a real and immediate threat of repeated injury.'"  2014

7   WL 1410264, at *12 (C. D. Cal. Apr. 9, 2014) (King, J.) (citation omitted).

8       Here too, there is no threat of repeated injury. ███████████████

9   ████████████████████ (Cody, 10:14-18;124:16-25.) ████████████

10  ███████████████████████████████████████████████████████████

11  █████████████ (Knowles, 207:6-12.)  To the extent Knowles ████████

12  ██████████████████████████████████████████ is insufficient.  *See In re*

13  *ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 980 (C.D. Cal. 2015); *Khasin v. R C*

14  *Bigelow, Inc.*, 2016 WL 1213767 at *4-5 (N.D. Cal. Mar. 29, 2016).

15      While SoulCycle respectfully disagrees with the Court's reasoning on the

16  motions to dismiss, and reserves all rights of appeal, ██████████████

17  ███████████████████████████████████████████████████████████

18  ███████████████████████████████████████,[9] as described in the

19  attached declaration of Arthur Curcuru.  As such, Plaintiffs cannot establish a "real

20  and immediate threat of repeated injury" necessary for standing.  *Forcellati*, 2014

21  WL 1410264, at *12; *see also Davis v. Nationstar Mortg., LLC*, 2016 WL 6822017,

22  at *5 (N.D. Cal. Nov. 18, 2016).

23  **VII.   CONCLUSION.**

24      For all of the foregoing reasons, SoulCycle respectfully requests that the

25  Court deny Plaintiffs' Motion.

26  ────────────────

27  [9] Contrary to Plaintiffs' assertion, whether Classes are "gift certificates" under the
    EFTA has not already been decided.  (Mot. at 2.)  On a motion to dismiss, the Court

28  was required to accept the complaint's allegations as true.  Now, however, the
    Court may view the record, which belies many of the assertions in the SAC.

-25-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  December 23, 2016              Respectfully submitted,


**DLA PIPER LLP (US)**


By: */s/ Shirli F. Weiss*_____
    SHIRLI F. WEISS
    KEARA M. GORDON

    Attorneys for Defendant
    SoulCycle Inc.

EAST\138412201

DLA PIPER LLP (US)

-26-
DEFENDANT'S OPPOSITION TO PLAINTIFFS' CLASS CERTIFICATION MOTION
CASE NO. 2:15-CV-06457 GHK (JEMX)