BERGER & HIPSKIND LLP
Daniel P. Hipskind, CA State Bar No. 266763
Dorian S. Berger, CA State Bar No. 264424
1880 Century Park East, Ste. 815
Los Angeles, California 90025
Telephone: 323-886-3430
Facsimile: 323-978-5508
Email: dph@bergerhipskind.com
Email: dsb@bergerhipskind.com

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson St, 8th Flr.
New York, NY 10013
Tel: 212-355-9500
Fax: 212-355-9592
Email: ndiamand@lchb.com

*Class Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL CODY AND LINDSEY KNOWLES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOULCYCLE INC.,<br><br>Defendant. | Case No. 15-cv-6457-MWF-JEM<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**<br><br>Date:       October 2, 2017<br>Time:      11:30 a.m.<br>Judge:     Hon. Michael W. Fitzgerald<br>Ctrm:      5A |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................... 1

II.    BACKGROUND ...................................................................................... 2

       A.    The Conduct At Issue ................................................................... 2

       B.    Economic Consideration For The Class ....................................... 3

       C.    The Prospective Changes Benefitting the Class ........................... 4

       D.    Class Counsel Undertook Considerable Risk in Prosecuting
             this Action ................................................................................... 5

III.   ARGUMENT ........................................................................................... 7

       A.    The Requested Fee is Reasonable and Appropriate...................... 7

             1.    Class Counsel are Entitled to a Fee .................................... 8

             2.    The Requested Fees Are Reasonable Under The Percentage
                   Method ............................................................................... 9

                   a.    Class Counsel Achieved Excellent Results For Class
                         Members ................................................................. 10

                   b.    The Risk Of Litigation Is High ................................ 12

                   c.    The Issues In This Case Were Complex And Required
                         Significant Skill To Prosecute ................................ 14

                   d.    The Fee Was 100% Contingent ............................... 15

                   e.    A Comparison to Fee Awards in Other Cases
                         Demonstrates the Reasonableness of the Fee
                         Requested ............................................................... 16

       B.    A Lodestar-Multiplier "Cross-Check" Further Confirms the
             Reasonableness of the Fee ......................................................... 16

             1.    The Lodestar Reflects Efficient Prosecution of This Action ... 18

             2.    Class Counsel's Lodestar is Reasonable ........................... 18

       C.    The Requested Service Awards are Reasonable and Appropriate ..... 20

IV.    CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson*,
465 U.S. 886 (1984) ........................................................................... 18, 20

*Boyd v. Bank of Am. Corp.*,
2014 U.S. Dist. LEXIS 162880 (C.D. Cal. Nov. 18, 2014) .............................. 11

*Bravo v. Gale Triangle, Inc.*,
2017 U.S. Dist. LEXIS 77714 (C.D. Cal. Feb. 16, 2017) ........................... 8, 14

*Brown v. Bank of Am., N.A.*,
457 F. Supp. 2d 82 (D. Mass. 2006) .................................................. 5, 13

*Chambers v. Whirlpool Corp.*,
214 F. Supp. 3d 877 (C.D. Cal. 2016) ....................................................... 18

*Craft v. Cty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...................................................... 9

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
213 F.3d 454 (9th Cir. 2000) .................................................................. 16

*Fernandez v. Vict. Secret Stores, LLC*,
2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ...................... 16, 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................... 8, 9

*Hawthorne v. Umpqua Bank*,
2015 U.S. Dist. LEXIS 56370 (N.D. Cal. 2015) ........................................ 20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................. 10

*Hughes v. CorePower Yoga*,
No. 12-cv-00905, 2013 WL 1314456 (D. Minn. Mar. 28, 2013) ...................... 5

*In re Activision Secs. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ......................................................... 17

*In re Amgen Sec. Litig.*,
2016 U.S. Dist. LEXIS 148577 (C.D. Cal. Oct. 25, 2016) ............................. 10

*In re Apple iPhone/iPod Warranty Litig.*,
2014 U.S. Dist. LEXIS 52050 (N.D. Cal. Apr. 14, 2014) ............................. 17

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005) ................................ 10, 15, 16

*In re High-Tech Employee Antitrust Litig.*,
2015 U.S. Dist. LEXIS 118052 (N.D. Cal. Sept. 2, 2015) ............................. 18

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................ 12, 14, 16

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ............................................................. 20

*Jones v. Bath & Body Works, Inc.*,
2016 U.S. Dist. LEXIS 89681 (C.D. Cal. July 11, 2016) ............................... 10

*Kashanchi v. Texas Commerce Med. Bank, N.A.*,
703 F.2d 936 (5th Cir. 1983) ................................................................... 6

# TABLE OF AUTHORITIES

*McNeal v. RCM Techs. (USA), Inc.*,
2017 U.S. Dist. LEXIS 112137 (C.D. Cal. July 12, 2017) ................................20

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
2017 U.S. Dist. LEXIS 116361 (C.D. Cal. July 25, 2017) ...............................17

*Perkins v. LinkedIn Corp.*,
2016 U.S. Dist. LEXIS 18649 (N.D. Cal. Feb. 16, 2016)...............10, 11, 12, 18

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
779 F.3d 934 (9th Cir. 2015) ......................................................................20, 21

*Reynolds v. Philip Morris USA, Inc.*,
332 F. App'x 397 (9th Cir. 2009) ........................................................................6

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016) ..........................................11, 12, 14, 16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................8, 11, 20, 21

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................8

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ............................................................................10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .................................................................*passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .................................................................................9

*Wininger v. SI Mgmt. L.P.*,
301 F.3d 1115 (9th Cir. 2002) ..........................................................................10

*Young v. Polo Retail, LLC (Young II)*,
2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ...............................18

**Statutes**

15 U.S.C. § 1693a ................................................................................................6

15 U.S.C. § 1693a(5) ...........................................................................................6

15 U.S.C. § 1693m(a)(1) ................................................................................5, 13

California Business and Professions Code § 17200 ............................................2

California Civil Code § 1749.5............................................................................2

**Rules**

12 C.F.R. § 1005, Supp. I ..............................................................................6, 13

12 C.F.R. § 1005.20(a)(1)(i) ..........................................................................6, 13

Fed. R. Civ. P. 23(b)(3) ......................................................................................6

Fed. R. Civ. P. 23(h)(1) ......................................................................................1

Fed. R. Civ. P. 54(d)(2) ......................................................................................1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 2, 2017 at 11:30 a.m., or as soon thereafter as this matter may be heard, before the Honorable Michael W. Fitzgerald, United States District Court for the Central District of California, located at the First Street Courthouse, 350 West First Street, Courtroom 5A, Los Angeles, California 90012, Class Counsel will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23(h)(1) and 54(d)(2) for an order awarding:  (1) attorneys' fees and costs to Class Counsel in the amount of $1,790,000 (with no additional payment for Class Counsel's costs, which total $141,342.51); and (2) Incentive Awards to the two Class Representatives of $5,000 each.

As discussed in the accompanying memorandum, the requested awards are fair, reasonable and justified under applicable law.  This motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities; the Declaration of Nicholas Diamand; the Declaration of Daniel P. Hipskind; papers filed in support of preliminary and final approval; any oral argument by counsel at the hearing before this Court; any papers filed in reply; and all papers and records in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Class Counsel respectfully move the Court for an award of attorneys' fees and costs[1] in the total amount of $1,790,000, *inclusive of* costs.  Class Counsel also respectfully move the Court for an award of Service Awards to each of the two Class Representatives in the amount of $5,000 each, for a total $10,000.

Class Counsel's fee request is well within the range commonly awarded in comparable cases and is justified here, particularly taking into account the economic benefits to the class, the value of the prospective practice changes undertaken by SoulCycle, and that the requested award includes all costs, even though costs may properly be recovered separately.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).  As discussed below, the prospective relief includes both economic benefits to the class valued between $6.9 and $9.2 million, as well as important changes to SoulCycle's business practices, including selling classes by geographic region instead of dollar value and revising its Terms and Conditions and Frequently Asked Questions – all of which were central to the allegations in this litigation.  The Ninth Circuit has held that the value of settlement should be enhanced for purposes of fee analyses where there are significant "nonmonetary benefits conferred by the litigation." *Id.*  Class Counsel seek no such additional valuation here; the requested award of attorneys' fees and costs is warranted solely in light of the economic consideration delivered to the Class. Class Counsel's request is also supported by a lodestar plus multiplier cross-check. That cross-check reveals that the fee amount requested by Class Counsel would result in a multiplier of 1.05, which is well within the range for such multipliers established by the Ninth Circuit when costs are not included within the attorneys'

---

[1] In accordance with the Court's Order Granting Preliminary Approval of Proposed Settlement, Directing Notice to Class and Setting Final Approval Hearing, (the Preliminary Approval Order"), a copy of this brief will be uploaded to the settlement website, www.cycleclassaction.com/, upon filing.

1  fee award, as here.  *Id.* at 1051 & n.6.

2      Class Counsel respectfully submit that their fee request is appropriate in light

3  of the result achieved for the Class, which includes prospective practice changes

4  designed to eliminate any confusion by SoulCycle customers about how its classes

5  are offered and when and if they expire.  The Settlement also requires SoulCycle to

6  reinstate up to two expired classes (valued between $30-$40 per class) per Class

7  Member for a total of 229,646 reimbursed classes, unless the Class Member elects a

8  cash option, which provides $25 per class up to two classes, with a maximum of

9  $500,000 paid under this option.  Consequently, Class Members are, collectively,

10 receiving between $6.9-$9.2 million in economic value.  In light of this strong

11 result, and for the reasons discussed below, Class Counsel respectfully request that

12 the Court grant their fee request in full, and approve the requested Class

13 Representative service awards.

14 **II.   BACKGROUND**

15     **A.   The Conduct At Issue**

16     The conduct at issue in this litigation is the sale of SoulCycle classes, which

17 prior to February 2017 were marketed as being issued in specified dollar amounts.

18 For example, classes were sold in "Series" (*i.e.*, groupings) from a single class up to

19 a series of 50 classes, which were sold using phrases such as "SOUL30" and

20 "SOUL34."  SoulCycle customers provided an amount of money for each Series

21 that Plaintiffs alleged was then debited from the customer's balance each time she

22 or he booked a class, such that SoulCycle's business practices violated various gift

23 card laws.  During the course of this litigation, specifically upon consideration of

24 two motions to dismiss, the Court dismissed Plaintiff's claim pursuant to California

25 Civil Code § 1749.5, and allowed Plaintiffs' claims to proceed under the Electronic

26 Funds Transfer Act and California Business and Professions Code § 17200 *et seq.*,

27 reserving the question whether the Complaint sufficiently alleged a UCL violation

28 based on the California Gift Certificate Law.  Plaintiffs moved for certification of a

CLASS COUNSEL'S MOTION FOR ATTORNEYS FEES
CASE NO. 15-CV-6457-MWF-JEM

national and California class on October 31, 2016.  Dkt. 71.  Plaintiffs' class claims
against SoulCycle are on behalf of (i) SoulCycle customers nationwide who
purchased SoulCycle classes on or after August 25, 2014, whose classes expired
unused; and (ii) SoulCycle customers with a California billing address who
purchased a SoulCycle class on or after August 25, 2011 whose class expired
unused. (Second Amended Complaint ("SAC"), Dkt. 33, ¶ 74).  SoulCycle opposed
Plaintiffs' class certification motion.  Dkt. 105.  The parties mediated twice, and on
April 21, 2017, filed a Joint Report of Mediation and Notice of Settlement in
Principle.  Dkt. 217.

## B.    Economic Consideration For The Class

In addition to the prospective relief for the Class, the Settlement also
provides economic consideration to Class Members.  SoulCycle will reinstate up to
two expired classes, unless the Settlement Class Member elects a Cash Option.
Specifically, each Settlement Class Member who purchased one SoulCycle class
that expired unused during the Class Period will receive one new class
automatically placed in his or her electronic SoulCycle account ("Reinstated
Class").  Those Settlement Class Members who purchased more than one
SoulCycle class that expired unused during the Class Period will automatically
receive two Reinstated Classes.  The settlement provides the Class, in the aggregate
with 229,646 Reinstated Classes, Dkt. 221-2 at 10, which are valued between $30
and $40 each.  The economic consideration Class Members receive is frictionless in
that Class Members need not take any action such as filing a claim form before
receiving the benefit of the Reinstated Class(es).

However, should a Class Member prefer cash instead of a Reinstated Class,
each Settlement Class Member can elect a Cash Option, which is a payment of a
maximum of $25 per Reinstated Class to which the Settlement Class Member
would otherwise be entitled (the "Cash Option") up to a maximum of $50 per
Settlement Class Member.  Settlement Class Members can elect the Cash Option by

1    submitting a Cash Claim Form.

2        **C.    The Prospective Changes Benefitting the Class**

3        As a result of the Settlement, SoulCycle has revised its marketing practices

4    and its Terms and Conditions and Frequently Asked Questions.  These changes

5    provide important non-economic consideration from SoulCycle regarding its

6    business practices.  This relief is designed to ensure that consumers fully

7    understand that purchasing a class or series of SoulCycle classes does not constitute

8    the purchase of a gift certificate or gift card.

9        Specifically, SoulCycle has clarified that its classes are not sold in specified

10   values, and will no longer refer to classes as "SOUL30" or "SOUL34."  Instead,

11   classes will be denoted by geographical region, as follows: SOUL-NYC (usable in

12   New York City); SOUL-DC (Washington, D.C.); SOUL-CT (Connecticut); SOUL-

13   WA (Washington); SOUL-NORCAL (Northern California); SOUL-HAMPTONS

14   (The Hamptons); SOUL-NYS-NJ (NON-NYC) (New York and New Jersey,

15   excluding New York City); and SOUL-FL-IL-TX-MA-MD-PA-SOCAL (Florida,

16   Illinois, Texas, Massachusetts, Maryland, Pennsylvania and Southern California).

17   SoulCycle also eliminated its class transfer feature to further clarify to customers

18   that SoulCycle classes are not gift certificates that can be redeemed services "up to"

19   a specified dollar amount.

20       SoulCycle has also revised its Terms and Conditions and Frequently Asked

21   Questions on its Website and smartphone App, among other things, to reinforce

22   that: (i) SoulCycle classes and SoulCycle gift cards are not the same product; (ii) its

23   gift cards never expire, though classes do; and (iii) although its classes have an

24   expiration date, if a rider cannot make the class in time and needs an extension, she

25   may contact SoulCycle to address having the class reinstated.  Attached as Exhibit

26   2 to the Declaration of Daniel P. Hipskind In Support Of Plaintiffs' Motion For

27   Preliminary Approval Of Class Action Settlement (Dkt. 221-1) is the full text of the

28   revised Terms and Condition and FAQs.

These changes were implemented as a result of this Settlement.

**D.    Class Counsel Undertook Considerable Risk in Prosecuting this Action**

This matter required Class Counsel to spend time on this litigation that could have been spent on other matters.  Moreover, because Class Counsel undertook representation of this matter on a pure contingency-fee basis, they carried the risk of expending substantial costs and time in litigating this action without any monetary gain in the event of an adverse judgment.

Risks abounded in this case, which involved litigating a claim with little legal precedent; there is not a vast body of EFTA law.  That many of the issues here lacked significant precedent made the outcome of the case less certain.  For example, in its Motion to Dismiss, SoulCycle relied heavily on *Hughes v. CorePower Yoga*, No. 12-cv-00905, 2013 WL 1314456 (D. Minn. Mar. 28, 2013).  In *Hughes*, the Court held that yoga classes were not covered by the EFTA because, in part, they were "not issued in a 'specified amount.'"  Dkt. 40 at 12.  Further, "[t]he Official Staff Interpretations of Regulation E specifically provides that cards redeemable for a specific good, service, or experience such as a spa treatment, hotel stay, or airline flight are not store gift cards under the EFTA." *Id* at 12-13.  Here, the Court initially found that "Defendant's class purchases are sold for a specified value, and can only be used for classes equal to or less than that value," (Dkt. 30 at 5) thereby falling under the EFTA.  However, had this litigation progressed, there was significant risk that the Court or a jury would determine that SoulCycle's classes were akin to those in *Hughes*, resulting in no benefits at all to the Settlement Class.

SoulCycle advanced other strong counter-arguments and defenses.  For example, under the EFTA, Plaintiffs bear the burden of showing their alleged harm occurred as "a result of" the EFTA violation. *See* 15 U.S.C. § 1693m(a)(1); *Brown v. Bank of Am., N.A.*, 457 F. Supp. 2d 82, 90 (D. Mass. 2006).  SoulCycle, relying

on its expert, argued that Plaintiffs could not prove that every unused expired SoulCycle Class was the result of expiration dates.  According to SoulCycle's expert, it was not possible to assume that all consumers who failed to use their SoulCycle classes did so due to expiration dates.  Establishing causation was, therefore, a risk as to both liability and class certification.

The Court dismissed Plaintiffs' California's Gift Certificate Law claim finding it does not provide a private right of action.  *See* Dkt. 37 at 25; Dkt. 40 at 7. The Court allowed Plaintiffs to raise the issue later in the proceedings (Dkt. 40 at 7, n.8), but SoulCycle argued were the claim reinstated, the ordinary meaning of "gift certificate" contemplates something purchased intended as a gift for someone else. *See, e.g.*, *Reynolds v. Philip Morris USA, Inc.*, 332 F. App'x 397, 398 (9th Cir. 2009) (*quoting* Am. Heritage Dictionary of the English Language 742 (4th ed. 2000) ("gift certificate" is a "certificate, usually presented as a gift, that entitles the recipient to select merchandise of an indicated cash value at a commercial establishment")). SoulCycle argued Plaintiffs testified they did not buy their class to give away, and when riders want to buy a gift, they buy gift cards, not classes.

SoulCycle also asserted individual issues would render a class-action trial unmanageable and inappropriate for Rule 23(b)(3) certification.  First, SoulCycle argued an EFTA claim can only be brought on behalf of consumers defined as "natural person[s]."  15 U.S.C. § 1693a; *see also Kashanchi v. Texas Commerce Med. Bank, N.A.,* 703 F.2d 936, 939-42 (5th Cir. 1983) (citing 15 U.S.C. § 1693a(5)). Plaintiffs sought to certify a litigation class including businesses. Second, SoulCycle argued that determining whether a class is a "gift certificate" would require individual analyses, and thus preclude class certification.  A "gift certificate" is defined as "[i]ssued on a prepaid basis primarily for personal, family or household purposes to a consumer", and whether a gift certificate is so issued "will depend on the facts and circumstances", 12 C.F.R. § 1005.20(a)(1)(i); 12 C.F.R. § 1005, Supp. I.

1    Throughout the litigation, SoulCycle vigorously contested both its liability
2    and Plaintiffs' ability to certify the asserted claims for class treatment. The Court
3    could have adopted SoulCycle's positions on liability, as well as its position that a
4    class could not be certified for purposes of trial. Similarly, had the litigation
5    proceeded, a class been certified and a jury found in favor of the Plaintiffs on
6    liability, there remains a risk that limited damages – or even none at all – could
7    have been awarded.

8    Lastly, there is always not only the risk of losing a jury trial but, also the risk
9    that even if Plaintiffs are successful at trial, recovery may be delayed for years by
10   an appeal or even overturned. The Court noted this possibility during the hearing
11   on Plaintiffs' class certification motion. Hipskind Decl. Ex. C at 31 ("And maybe
12   the District Court has already committed error and maybe the risk of that will affect
13   a settlement value, or maybe the – it will go up to the Ninth Circuit and the Ninth
14   Circuit will decide one way or the other."). The Settlement, therefore, provides
15   substantial monetary and injunctive relief in the near term without the attendant
16   risks of unfavorable and, in some cases, dispositive, rulings on these and other
17   issues.

18   **III.  ARGUMENT**

19        **A.    The Requested Fee is Reasonable and Appropriate**

20        The Settlement Agreement provides that Class Counsel will apply for an
21   attorneys' fee award (inclusive of costs) of $1,790,000. Dkt. 221-2 at 19. Class
22   Counsel now ask the Court to grant this fee. Class Counsel have litigated this
23   challenging case for almost two years, and after surviving two motions to dismiss,
24   they obtained a strong settlement after two mediations before experienced
25   mediators and countless negotiations directly between counsel for the parties. The
26   Settlement provides significant economic consideration to SoulCycle customers
27   who had classes expire. All told, the value of the Settlement to Class Members is

28

CLASS COUNSEL'S MOTION FOR ATTORNEYS FEES
CASE NO. 15-CV-6457-MWF-JEM

between $6.9 million and $9.2 million.[2]  Importantly, for those Class Members who elect to receive reinstated SoulCycle classes in lieu of the Cash Option, the settlement is frictionless; these Class Members will not need to complete any claims process to obtain the economic benefits of the Settlement.  The Settlement further provides well-tailored and important changes to SoulCycle's business practices that will benefit and protect settlement Class Members – hundreds of thousands of other SoulCycle customers – going forward.

Class Counsel's request is reasonable in light of the value achieved for the class, particularly in light of Ninth Circuit law regarding attorneys' fees in class cases that are designed to ensure that class counsel have proper incentives to take on difficult cases and pursue class members' best interests.  Class Counsel assumed substantial risks and devoted substantial resources in pursuing a recovery for the Class, and Class Counsel litigated this case efficiently.

### 1.   <u>Class Counsel are Entitled to a Fee</u>

"Courts have long recognized the 'common fund' or 'common benefit' doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund."  *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998)).  "In the Ninth Circuit, a district court presiding over a common fund case may award attorneys' fees based on one of two methods: the lodestar method or the percentage method."  *Bravo v. Gale Triangle, Inc*., No. CV 16-03347 BRO (GJSx), 2017 U.S. Dist. LEXIS 77714, at *13 (C.D. Cal. Feb. 16, 2017) (citing *Hanlon*, 150 F.3d at 1029, *Staton v. Boeing Co*., 327 F.3d 938, 967-68 (9th Cir. 2003)).  Class Counsel's request is reasonable under either method. However, the percentage-of-the-fund method best aligns class counsel's interests with those of the class, and properly incentivizes capable

---

[2] There are 229,646 reimbursable classes in the settlement, which are valued between $30 and $40 each.

counsel, not to only accept challenging cases, but to push for the best result that can be achieved for the class.  *See*, *e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (percentage method "directly aligns the interests of the class and its counsel") (citation omitted).  While the Court has discretion to use either method, "the primary basis of the fee award remains the percentage method." *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1116 (C.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1050).

2.       **The Requested Fees Are Reasonable Under The Percentage Method**

The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees."  *Hanlon*, 150 F.3d at 1029.  As noted above, Class Counsel has achieved a settlement valued between $6.9 million and $9.2 million, and requested fees of $1,7900,000, including costs, for a total value of $8.69-$10.99 million.  *See Staton*, 327 F.3d at 966 (referring to a "hypothetical 'fund'" or the "'putative fund'" determined by aggregating the "damages to members of the class under the agreement, the amount of fees provided to various counsel, the costs of the class action notices paid for by Boeing, and a gross amount of money ascribed to all the injunctive relief contained in the agreement").

As a preliminary matter, the Settlement agreement negotiated by Class Counsel provides for SoulCycle to pay for class notice, which is a value to the Settlement Class of over $50,000.  Dkt. 221-2 at § VI(8); Declaration of Kelly Kratz Regarding Notice and Settlement Administration Activities Completed As Of August 28, 2017 at ¶ 21.  Further, Class Counsel do not ask the Court to quantify the economic value of the substantial injunctive relief delivered through this Settlement.  Accordingly, the $8.69-$10.99 million value of the hypothetical or putative total fund described herein understates the total value of the settlement.  25 percent of this range is between and $2.17-$2.75 million.  Class Counsel's request for $1,790,000 is therefore less than the Ninth Circuit's benchmark, and squarely in the range of reasonableness given the facts of this case, especially when considering

that the request is inclusive of costs, even though reasonable expenses may be separately requested. *See Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 U.S. Dist. LEXIS 18649, at *54 (N.D. Cal. Feb. 16, 2016) (finding that "Class Counsel effectively requests slightly less than the 25% benchmark" because "Class Counsel's request is inclusive of costs, even though reasonable expenses may be reimbursed separately in common fund cases." (citing *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).).

"When assessing the reasonableness of a fee award under the common fund theory, courts consider '(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.'" *In re Amgen Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *24-25 (C.D. Cal. Oct. 25, 2016) (citing *Vizcaino*, 290 F.3d at 1048-50). Applying these factors here confirms that Class Counsel's request is more than reasonable, and there is no downward pressure that would justify departure from the requested fees.

a. *Class Counsel Achieved Excellent Results For Class Members*

First, the results achieved for the Class in this case are very strong. "The result achieved is a significant factor to be considered in making a fee award." *Jones v. Bath & Body Works, Inc.*, No. CV 13-5206 FMO (AJWx), 2016 U.S. Dist. LEXIS 89681, at *24 (C.D. Cal. July 11, 2016) (citing *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, (C.D. Cal. 2005); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained")).

Ninth Circuit courts consistently have held that where, as here, class counsel achieves significant benefits that are not accounted for in the dollar value of the common settlement fund, the court "should consider the value of [such] relief as a relevant circumstance in determining what percentage of the common fund class

1  counsel should receive as attorneys' fees." *Staton*, 327 F.3d at 974; see also

2  *Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found

3  that counsel's performance generated benefits beyond the case settlement fund.");

4  *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC (JPRx), 2014 U.S. Dist.

5  LEXIS 162880, at *26 (C.D. Cal. Nov. 18, 2014) (finding 33 percent fees

6  appropriate when Class Counsel achieved significant non-economic benefits for the

7  class and others).

8        From the start, this litigation was driven by customers' negative reaction to

9  SoulCycle's expiration of classes that occurred despite these classes having the

10 hallmarks of other stored value instruments such as gift cards where expiration

11 dates are regulated by law.  The Settlement achieves a major shift in SoulCycle's

12 business practices that is designed to eliminate confusion over whether its class

13 offerings fall under the gift card laws Plaintiffs accused SoulCycle of violating.

14 These changes in business practices include eliminating denominating classes by

15 dollar value, eliminating class transfer features allowing value to be transferred to

16 other geographic regions, and changing SoulCycle's documentation to clarify how

17 classes expire.  These changes will positively affect the hundreds of thousands of

18 SoulCycle riders and millions of prospective consumers by eliminating confusion

19 about allegedly misleading business practices.

20       If the value of these benefits were considered, it would "reduce[] the overall

21 percentage of the fees that counsel" is requesting.  *See Boyd*, 2014 U.S. Dist.

22 LEXIS 162880 at *26 (finding 33 percent fees appropriate when Class Counsel

23 achieved significant non-economic benefits for the class and others); *Perkins v.*

24 *LinkedIn Corp.*, 2016 U.S. Dist. LEXIS 18649 at *50 (considering non-economic

25 benefits such as changes in disclosures and documentation to support award);

26 *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1263 (C.D. Cal. 2016) (noting

27 that in addition to large monetary reward, "class counsel secured non-monetary

28 relief in the form of changed pricing policies, a compliance program, and training

1   for defendant's employees.  In light of the exceptional result achieved by class

2   counsel for the class, the court finds that the requested fee award [27 percent of

3   fund plus almost $200,000 in costs] is fair and reasonable." (citation omitted)).

4        The Settlement also achieves substantial economic benefit to the Settlement

5   Class.  Each class member will receive up to two reinstated SoulCycle classes,

6   which have a value of $30-$40 per class.[3]  A settlement value of $30 to up to $80

7   for each individual class member is a noteworthy result, especially in light of the

8   uncertainties that remained in this case at the time of settlement.

9        Further, the Settlement was the product of arm's length, protracted, and

10   vigorous negotiations reached after two full-day mediation sessions before

11   experienced mediators.  The assistance of experienced mediators who helped the

12   parties overcome their substantial differences bolster the reasonableness of the fee

13   request.  *See, e.g. Perkins*, 2016 U.S. Dist. LEXIS 18649, at *51 (finding protracted

14   negotiations, "including two full-day mediations, with the assistance of two

15   different capable and experienced mediators" supported requested fee.).

16        Based on the strong result achieved for the class, the fees requested here are

17   reasonable.

18            *b.*   *The Risk Of Litigation Is High*

19        Second, the risk of continued litigation is high and the outcome uncertain.

20   The claims at issue in this case had little legal precedent, which made the outcome

21   of the case less certain and supports the award of the requested fee.  *See In re*

22   *Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2007) ("The risk that

23   further litigation might result in Plaintiffs not recovering at all, particularly a case

24   involving complicated legal issues, is a significant factor in the award of fees.");

25   *Spann*, 211 F. Supp. 3d at 1263 (finding that "plaintiff's results are exceptional

26   given that there was an absence of precedent. . . .").

27

28   [3] Class Members can also elect to receive a cash option, providing them $25 in cash per expired class up to $50 total. Dkt. 221, § IV.A.6.

   

As discussed *supra* § II.D, issues continued to abound in this case around whether SoulCycle's classes were issued in a "specific amount." For example, SoulCycle relied heavily on a case where yoga classes were not found to be covered by the EFTA because, in part, they were "not issued in a 'specified amount.'" Dkt. 40 at 12. Had this litigation progressed, there was significant risk that the Court or a jury would determine that SoulCycle's classes were not issued in a "specified amount," resulting in no benefits at all to the Settlement Class.

Other strong counter-arguments and defenses also created risk in this case. For example, under the EFTA, Plaintiffs bear the burden of showing their alleged harm occurred as "a result of" the EFTA violation. *See* 15 U.S.C. § 1693m(a)(1); *Brown*, 457 F. Supp. 2d at 90. SoulCycle's expert argued that it was not possible to assume that all consumers who failed to use their SoulCycle classes did so due to expiration dates. Consequently, establishing causation liability and even class certification would have been a significant risk had the litigation continued.

Risk also existed that the class would not be finally certified for trial. SoulCycle asserted that individual issues would render a class-action trial unmanageable and inappropriate for Rule 23(b)(3) certification. For example, a "gift certificate" is defined as "[i]ssued on a prepaid basis primarily for personal, family or household purposes to a consumer", and whether a gift certificate is so issued "will depend on the facts and circumstances", 12 C.F.R. § 1005.20(a)(1)(i); 12 C.F.R. § 1005, Supp. I. SoulCycle argued that it would require individualized analyses to determine whether its classes were sold as "gift certificates." The Court could have adopted SoulCycle's positions on liability, as well as its position that a class could not be certified. Even if a class was certified and a jury found in favor of the Plaintiffs on liability, there remains a risk that limited damages – or even none at all – could have been awarded. Courts often consider the substantial risks of obtaining final certification and the uncertainty of trial as factors supporting granting requested attorneys' fees. *See, e.g. Bravo v. Gale Triangle, Inc.*, No. CV

16-03347 BRO (GJSx), 2017 U.S. Dist. LEXIS 77714, at *47 (C.D. Cal. Feb. 16, 2017) (finding that "the high risks associated with this litigation weigh in favor of awarding Plaintiffs' counsel's requested fee.").

Finally, in addition to the risk of losing a jury trial, even had Plaintiffs succeeded, recovery could be reversed, or at a minimum, delayed for years by an appeal, which creates additional risks and postpones the significant gains achieved by the Settlement.  Given the risks, the results achieved by Class Counsel are substantial, and support the requested fee award.

### c.   The Issues In This Case Were Complex And Required Significant Skill To Prosecute

The effort and skill displayed by Class Counsel and the complexity of the issues involved are additional factors used in determining a proper fee.  *Vizcaino*, 290 F.3d at 1048; *In re Omnivision*, 559 F. Supp. 2d at 1046-47.  These factors also support the reasonableness of the fee requested here.

Class Counsel assembled a team of two law firms with the resources and abilities necessary to litigate these claims.  *See* Hipskind Decl. ¶¶ 1-7; Diamand Decl. ¶¶ 1-4, Ex. A.  As discussed *supra*, § II.D, little precedent exists for EFTA cases, making Class Counsel's navigation of the claims and complex issues all the more skilled.  *See, e.g. Spann*, 211 F. Supp. 3d at 1263 (C.D. Cal. 2016) (explaining that "plaintiff's results are exceptional given that there was an absence of precedent" and finding a 27 percent fee reasonable).  Class Counsel performed significant factual investigation prior to bringing these actions, engaged in motions practice including opposing two motions to dismiss as well as numerous discovery motions, engaged in written discovery, took 11 fact depositions and participated in three expert depositions that required significant analysis and preparation, engaged in protracted, challenging, and hard-fought negotiations with SoulCycle – including participating in two full-day mediations – and vigorously and successfully negotiated a strong settlement for the Class Members. In addition, given the limited

1  precedent regarding EFTA cases, the outcome achieved by Class Counsel required

2  sharp and creative lawyering.  Class Counsel successfully navigated the complex

3  factual and legal issues in this case to deliver an outstanding result for Class

4  Members. *See id.*

5     The complex subject matter of the case and strong prosecution by Class

6  Counsel support the requested award.

7  *d.*  *The Fee Was 100% Contingent*

8     Courts have long recognized that the public interest is served by rewarding

9  attorneys who assume representation on a contingent basis with an enhanced fee to

10  compensate them for the risk that they might be paid nothing at all for their work.

11  *Vizcaino*, 290 F.3d at 1051.  Class Counsel prosecuted this case on a purely

12  contingent basis, and agreed to advance all necessary expenses knowing that they

13  would only receive a fee if there were a recovery.  Class Counsel spent considerable

14  time and resources by, among other things: (1) investigating the action; (2)

15  conducting legal research and briefing oppositions to SoulCycle's two motions to

16  dismiss, as well as several discovery motions; (3) engaging in extensive discovery,

17  including 11 fact depositions that took counsel across the country and to Ireland,

18  along with three of expert depositions; (4) negotiating the Settlement over many

19  months, including by participating in two full-day mediation sessions; (5)

20  administering the Settlement; and (6) responding to Class Member inquiries.  These

21  resources were expended notwithstanding the risk that Class Counsel would not be

22  compensated.

23     This assumption of risk justifies a fee paid as a percent of recovery.  *See In re*

24  *Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *68 (C.D. Cal. June 10,

25  2005) ("Courts consistently recognize that the risk of non-payment or

26  reimbursement of expenses is a factor in determining the appropriateness of

27  counsel's fee award.").

28

> ### e.    A Comparison to Fee Awards in Other Cases Demonstrates the Reasonableness of the Fee Requested

A review of fee awards in other common fund cases underscores the reasonableness of the fee requested here.  Class Counsel's requested fee award is less than the fee frequently awarded in class actions.  *See, e.g. Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases, the award exceeds that [25%] benchmark."); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 457 (9th Cir. 2000) (affirming fee award of one third of common fund); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *29 (awarding one-third of fund); *Boyd*, 2014 U.S. Dist. LEXIS 162880 at *26 (finding 33 percent fees appropriate when Class Counsel achieved significant non-economic benefits for the class and others); *Spann*, 211 F. Supp. 3d at 1263 (awarding 27 percent fee plus almost $200,000 in costs); *Fernandez v. Vict. Secret Stores*, LLC, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, at *54 (C.D. Cal. July 21, 2008) (awarding 34 percent of fund).  Class Counsel's fee request falls below the 25 percent benchmark given the $8.69-$10.99 million hypothetical or putative fund consisting of $6.9-$9.2 million in economic benefits recovered for the Class and $1.79 million for attorneys' fees, and the reimbursement of costs.  The value of this hypothetical or putative fund does not include the significant, non-economic benefits that accrued to the Class, nor does it reflect the costs of implementing Class notice or the fact that Class Counsel is not making a separate request for costs.

All told, Class Counsel's request for attorneys' fees are reasonable in light of these factors.  Class Counsel respectfully requests the Court grant its request.

### B.    A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of the Fee

The lodestar method has been criticized because it encourages counsel to bill

time and to create opportunities to bill time.[4]  Calculating the fee here as a percentage-of-the-fund, rather than merely as a function of counsel's billed time, rewards class counsel for assuming the risks of this case and efficiently prosecuting it.

Nonetheless, the Court may engage in a lodestar "cross-check" when awarding a fee as a percentage of a common fund, *Vizcaino*, 290 F.3d at 1050-51, though it is not required.  *See Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. CV 12-3224 FMO (AGRx), 2017 U.S. Dist. LEXIS 116361, at *26 (C.D. Cal. July 25, 2017) (finding no reason to perform cross-check when awarding 25 percent baseline).

The purpose of a cross-check is not to re-calculate the fee, but is one of the tools used to ensure a reasonable fee.  *Vizcaino*, 290 F.3d at 1050 n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.").  The cross-check need not be precise to be informative.  "[T]he lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation."  *Fernandez*, 2008 U.S. Dist. LEXIS 123546, at *48 (citing *Young v. Polo Retail, LLC (Young II)*, No. C-

---

[4] The lodestar method's emphasis on time has drawn substantial criticism.  *In re Apple iPhone/iPod Warranty Litig.*, 2014 U.S. Dist. LEXIS 52050, at *8 (N.D. Cal. Apr. 14, 2014) ("Whatever merits the lodestar method might have, particularly outside the context of a common fund case, it has also been subject to heavy criticism by commentators and in the courts.") (citation omitted).  Among other things, awarding fees based on the lodestar method "does not encourage efficiency."  *In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).  Instead, as the Ninth Circuit observed, "the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee."  *Vizcaino*, 290 F.3d at 1050 n.5; *see also In re Activision*, 723 F. Supp. at 1378 (noting that lodestar approach "encourages abuses such as unjustified work and protracting the litigation").

02-4546 VRW, 2007 U.S. Dist. LEXIS 27269, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007)).  The "lodestar calculation serves as a point of comparison by which to assess the reasonableness of a percentage award. As a result, the lodestar can be approximate and still serve its purpose." *Id.*  Here, even a partial cross-check confirms the reasonableness of the fee.

    1. <u>The Lodestar Reflects Efficient Prosecution of This Action</u>

  The cumulative lodestar of Berger & Hipskind LLP and Lieff Cabraser Heimann & Bernstein, LLP to date is $1,700,998 using current billing rates. Hipskind Decl. Ex. B; Diamand Decl. Exs. B-C.  *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 900 (C.D. Cal. 2016) (finding it "appropriate to award class counsel attorney's fees based on their current hourly rates as compensation for the delay in payment."); *Vizcaino*, 290 F.3d at 1051 (affirming lodestar crosscheck using current billing rates).  The rates are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886 at 895-96 n.11 (1984). Class Counsel's customary rates have recently been approved as reasonable by another Court.  *Perkins*, 2016 U.S. Dist. LEXIS 18649, at *52-53 (Koh, J.) ("This Court has, within the last year, and other courts, have approved Class Counsel's customary rates used in calculating the lodestar here.") (citing *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2015 U.S. Dist. LEXIS 118052, at *9 (N.D. Cal. Sept. 2, 2015) (additional citations omitted).  The hours reflect the extremely hard work and the efficient manner in which Class Counsel prosecuted this case. *See* Hipskind Decl ¶ 17; Diamand Decl. ¶¶ 13-14.

    2. <u>Class Counsel's Lodestar is Reasonable</u>

  The supporting declarations of Class Counsel set out the hours of work and billing rates used to calculate the lodestar here.  As described therein, Class Counsel and their colleagues, including staff, have devoted a total of approximately 2,833.5 hours to this litigation and have a total lodestar to date of approximately

$1,700,998.  Hipskind Decl. Ex. B; Diamand Decl. Exs. B-C.  These amounts do not include the additional time that Class Counsel will spend going forward in seeking approval of, and implementing, the Settlement, including assisting Class Members with claims and overseeing claims administration generally.  These tasks can require substantial additional hours not reflected in a multiplier calculated on the current lodestar.  Class Counsel's lodestar will grow as the settlement process is finalized and the litigation comes to a close.  The claims period will last for several weeks, and Class Counsel's time and resources devoted to the case will continue until and past that date.  Based on prior experience, these responsibilities can demand substantial hours of work.

Class Counsel's time was spent primarily in the following tasks: (1) investigating the claims of the Plaintiffs; (2) conducting legal research and briefing oppositions to SoulCycle's two motions to dismiss; (3) engaging in extensive discovery, including reviewing almost 100,000 pages of documents, responding to 24 interrogatories and 138 Requests for Admissions, engaging in 11 fact depositions that took counsel across the country and to Ireland, along with three expert depositions; (4) engaging in numerous discovery motions; (5) negotiating the Settlement over many months, including by preparing for and participating in two full-day mediation sessions; (6) administering the Settlement; and (7) responding to Class Member inquiries.

Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue efficiently and effectively, actively seeking not to duplicate effort or assignments.  Tasks were reasonably divided among law firms and were delegated appropriately among partners, associates, paralegals and other staff according to the relevant complexity of the project.

Furthermore, Class Counsel's hourly rates are reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by

1  lawyers of reasonably comparable skill, experience and reputation." *Blum*, 456

2  U.S. at 895 n. 11 (1994).

3  **C.     The Requested Service Awards are Reasonable and Appropriate**

4       "In the Ninth Circuit, '[i]ncentive awards are fairly typical in class action

5  cases.' Such awards 'are intended to compensate class representatives for work

6  done on behalf of the class, to make up for financial or reputational risk undertaken

7  in bringing the action, and, sometimes, to recognize their willingness to act as a

8  private attorney general.'" *McNeal v. RCM Techs. (USA), Inc.*, No. 2:16-cv-05170-

9  ODW-SS, 2017 U.S. Dist. LEXIS 112137, at *1 (C.D. Cal. July 12, 2017) (granting

10  $10,000 service award to the two named plaintiffs) (internal citation omitted). *See*

11  *also Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable

12  incentive payments"); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit*

13  *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) ("it is well-

14  established that the court may grant a modest incentive award to class

15  representatives, both as an inducement to participate in the suit and as

16  compensation for time spent in litigation activities, including depositions.").

17       The requested service awards of $5,000 for each Class Representative are

18  reasonable and appropriate here. "Many courts in the Ninth Circuit have . . . held

19  that a $5,000 incentive award is 'presumptively reasonable.'" *Hawthorne v.*

20  *Umpqua Bank*, 2015 U.S. Dist. LEXIS 56370, 2015 WL 1927342, *8 (N.D. Cal.

21  2015) (citing *In re Toys R Us-Delaware*, 295 F.R.D. at 470-72). *See also Resnick*

22  *v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 947 (9th Cir.

23  2015) (approving $5,000 incentive award even though it was "roughly 417 times

24  larger than the $12 individual award" that unnamed class members would receive).

25       Here, the requested service awards are appropriate because the Class

26  Representatives have expended substantial time and effort in assisting Class

27  Counsel with the prosecution of the Class's claims, including relating the details of

28  their disappointment and dissatisfaction of losing the classes they paid for as a

result of SoulCycle's alleged conduct, preserving relevant documentation and evidence for discovery, assisting with discovery responses including document requests, interrogatories and requests for admissions, sitting for all-day depositions by opposing counsel, staying abreast of events in the litigation, and providing their opinions on the proposed settlement.  Dkt. 221-1, ¶ 16.

The requested service awards are also appropriate when compared to the recovery achieved.  Courts assessing the reasonableness of requests for service awards may compare the request against the size of the settlement fund.  *See*, *e.g.*, *Resnick*, 779 F.3d at 948 (finding $5,000 incentive award to each of nine named plaintiffs reasonable, and explaining that the "incentive awards makes up a mere .17% of the total settlement fund of $27,250,000, which is far less than the 6% of the settlement fund in *Staton* that went to incentive awards.").  Plaintiffs' requested service awards here collectively represent between 0.11 percent and 0.15 percent of the economic benefit achieved for the class, which is even lower.

Given the significant efforts expended by the class representatives, the presumptive reasonableness of the $5,000 service award request, and the extremely low amount that the service awards represent in light of the total settlement value, the service awards should be granted.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the motion in its entirety.

CLASS COUNSEL'S MOTION FOR ATTORNEYS FEES
CASE NO. 15-CV-6457-MWF-JEM

Dated: August 28, 2017                  Respectfully submitted,

                                        */s/  Daniel P. Hipskind*
                                        Daniel P. Hipskind (CA SB No. 266763)
                                        Dorian S. Berger (CA SB No. 264424)
                                        BERGER & HIPSKIND LLP
                                        1880 Century Park East, Ste. 815
                                        Los Angeles, CA 90067
                                        Telephone: 323-886-3430
                                        Facsimile: 323-978-5508
                                        E-mail: dph@bergerhipskind.com
                                        E-mail: dsb@bergerhipskind.com

                                        Nicholas R. Diamand (*pro hac vice*)
                                        LIEFF CABRASER HEIMANN &
                                        BERNSTEIN, LLP
                                        250 Hudson St, 8th Flr.
                                        New York, NY 10013
                                        Tel: 212-355-9500
                                        Fax: 212-355-9592
                                        Email: ndiamand@lchb.com

                                        *Class Counsel*